UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**STEPHEN M. GRUVER, ET AL.**                                                      **CIVIL ACTION**
v.
**STATE OF LOUISIANA THROUGH THE BOARD OF**           **NO. 3:18-cv-00772-SDD-EWD**
**SUPERVISORS OF LOUISIANA STATE**
**UNIVERSITY AND AGRICULTURAL AND**
**MECHANICAL COLLEGE, ET AL.**

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY
LSU'S APPEAL AS FRIVOLOUS AND DILATORY

INTRODUCTION AND BACKGROUND

On October 10, 2018, LSU filed a Motion to Dismiss seeking, *inter alia*, dismissal of Plaintiff's claims against LSU, pursuant to Rule 12(b)(1), based on the argument that LSU is immune from suit under Title IX in federal court pursuant to the Eleventh Amendment. (Rec. Doc. 70). On July 19, 2019, the Court denied that aspect of LSU's Motion to Dismiss (the "Ruling"). (Rec. Doc. 116.)

In its Ruling, the Court noted that LSU "asserted this defense in a case brought under Title IX in *Pederson v. Louisiana State University*," and "makes the same arguments in the present lawsuit that were rejected by the Fifth Circuit in *Pederson*." (*Id.* at 8.) The Court found that "[b]ased on a wealth of binding jurisprudence … LSU is not entitled to sovereign immunity from suits brought under Title IX." (*Id.* at 13.) The Court further held, "[i]n keeping with Fifth Circuit precedent," that "LSU is not shielded from suit under Title IX by Eleventh Amendment Sovereign Immunity." (*Id.* at 16.)

The "wealth of binding jurisprudence" since *Pederson* was decided almost 20 years ago includes the Fifth Circuit's 2005 decision in *Pace v. Bogalusa City School Board*, 403 F.3d 272 (5th Cir. 2005). In *Pace*, Louisiana argued, as it did in its Motion to Dismiss in this case, that Congress could not permissibly condition receipt of federal education funds on a state's waiver

1

of Eleventh Amendment immunity. *Id.* at 285. The *Pace* court called LSU's line of argument "**little more than frivolous**," *id.* at 281 (emphasis added), and dispensed with it in one short paragraph, noting that the Fifth Circuit has "consistently interpreted Supreme Court guidance as permitting such conditional spending programs, as have every other circuit that has squarely addressed the issue." *Id.* at 285. The *Pace* court also reiterated that it "remain[s] convinced" that *Pederson* "was correctly decided." *Id.* at 281-82.

Apparently undeterred by this "wealth of binding jurisprudence," and this Court's well-reasoned Ruling, on August 18, 2019, LSU filed a Notice of Appeal appealing the Ruling and seeking to relitigate its "little more than frivolous" argument for a third time. (Rec. Doc. 124.) What was once judicially deemed "little more than frivolous" is now completely and categorically frivolous, and the Court should certify LSU's appeal as such.

## ARGUMENT

### I.   This Court Has Authority to Certify LSU's Appeal as Frivolous and Dilatory

Although, as a general matter, district courts are "divested of jurisdiction while an interlocutory appeal of immunity is pending, such divestment is neither automatic nor absolute." *Salcido v. Harris Cty.*, No. 15-2155 2018 U.S. Dist. LEXIS 212983, at *32 (S.D. Tex. Dec. 18, 2018) (citing *BancPass, Inc. v. Highway Toll Administration, L.L.C.*, 863 F.3d 391 (5th Cir. 2017)). In *BancPass*, the Fifth Circuit reaffirmed that "a district court may certify to the court of appeals that an interlocutory appeal of the denial of a … motion is frivolous and then proceed with trial rather than relinquish jurisdiction." *BancPass*, 863 F.3d at 398. The Fifth Circuit held that "a district court is permitted to maintain jurisdiction over an interlocutory appeal of an immunity denial after certifying that the appeal is frivolous or dilatory." *Id.* at 400. Although

"[s]uch power must be used with restraint," *id.*, the exercise of such power by this Court under these circumstances is plainly warranted.

## II.      LSU's Appeal Is Not Warranted by Existing Law or by a Nonfrivolous Argument[1]

As this Court recognized in its Ruling, there is a "wealth of binding jurisprudence" rejecting the same immunity arguments LSU plans to relitigate – yet again – on appeal. LSU raised, fully and vigorously litigated, and lost on the same sovereign immunity argument in *Pederson* that it made in its Motion to Dismiss, arguing that the waiver embodied in 42 U.S.C. § 2000d-7 is at odds with Supreme Court precedent. *Pederson*, 213 F.3d at 876, 883 ("We HOLD that this suit is not barred by the Eleventh Amendment."). In *Pederson*, the Fifth Circuit found that in § 2000d-7, "Congress has successfully codified a statute which clearly, unambiguously, and unequivocally conditions receipt of federal funds under Title IX on the State's waiver of Eleventh Amendment Immunity." *Pederson*, 213 F.3d at 876 (citing *Litman v. George Mason Univ.*, 186 F.3d 544, 554 (4th Cir. 1999)). As such, by accepting federal funds after the enactment of § 2000d-7, "LSU waived its Eleventh Amendment sovereign immunity" to Title IX claims. *Id.* This has been settled law in the Fifth Circuit since *Pederson*.

It is Motion to Dismiss, LSU argued that *Pederson* should be "closely re-examined in light of" *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012). (Rec. Doc. No. 70-1 at 16.) This argument is not a new one. Since *Pederson*, LSU has routinely attempted to re-litigate *Pederson*'s well-settled holding based on claims that "new" Supreme Court jurisprudence warrants revisiting it. The Fifth Circuit has rejected those attempts each time, labelling one of LSU's latest efforts as being "little more than frivolous." *See Pace*, 403 F.3d at 281-82; *Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 345 (5th Cir. 2005),

---

[1] *See* Fed. R. Civ. P. 11(b)(2).

3

*cert. denied by La. Dep't of Educ. v. Johnson*, 2006 U.S. LEXIS 1156 (U.S. Feb. 21, 2006) (finding "no merit in appellants' arguments" and reaffirming its conclusions in *Pace* that acceptance of "federal funds that are granted by Congress under authority of the Constitution's Spending Clause and expressly conditioned on waiver of immunity" from "suit in federal court under § 504 of the Rehabilitation Act of 1973," "operates to waive a State's Eleventh Amendment immunity under the express conditions of 42 U.S.C. § 2000d-7"). The Ruling challenged by LSU is firmly grounded in this precedent, finding that "*Sebelius* did not announce a new rule on conditional spending programs but simply applied [*South Dakota v. Dole*, 483 U.S. 203 (1987)] and other established precedent." (Rec. Doc. 116 at 16.)

Clearly, LSU does not have any legitimate grounds to challenge the Ruling or to request – once again – that the Fifth Circuit revisit its prior holdings on this issue. Indeed, if Louisiana's appeal in *Pace* was "little more than frivolous," it is unquestionably frivolous here, nearly 15 years later, during which the above-discussed precedent has not changed.

### III.  LSU's Appeal Appears to Be Principally Aimed at Strengthening Its Motion for Certification and Delaying Discovery[2]

In addition to being frivolous, LSU's appeal appears to be a litigation tactic aimed at causing Plaintiffs to expend fees and endure more delays, while creating a platform for LSU to further delay discovery and seek certification of its hoped-for interlocutory appeal of that portion of the Ruling denying LSU's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Title IX claim. On August 19, 2019, one day after it filed its Notice of Appeal, LSU filed a Motion for Certification of Ruling for Interlocutory Appeal Pursuant to 28 U.S.C. 1292(b).[3] (Rec. Doc. 125.) In that motion, LSU argues that "[j]udicial economy would be served by certifying the denial of LSU's

---

[2] *See* Fed. R. Civ. P. 11(b)(1).
[3] Plaintiffs will be formally opposing that motion through a separate Memorandum in Opposition to be filed within the time limits set forth in this Court's Local Rules.

4

12(b)(6) motion for interlocutory appeal because the interlocutory appeal could be consolidated with LSU's appeal of the denial of 11th Amendment immunity." (*Id.* at 3.) This argument is ironic, at best, and fundamentally meritless. LSU should not be permitted to piggyback one dubious, premature appeal on top of a frivolous one and delay these proceedings indefinitely.

Plaintiffs filed their Complaint more than a year ago, on August 16, 2018. (Rec. Doc. 1.) They are entitled to move this case forward and conduct discovery relevant to their well-pled Title IX claim against LSU and their negligence claims against the other Defendants. LSU undoubtedly knows that discovery on the Title IX claim will reveal damning evidence, and, thus, hopes to manufacture some platform to get before the Fifth Circuit before such evidence bolsters the allegations in the Complaint, as it certainly will. Indeed, recent reporting by *The Advocate* documented that LSU routinely received complaints about dangerous hazing involving male students in Greek Life, including reports of fraternity men being forced to drink until they vomited, but crackdowns by LSU on fraternities "have happened only more recently, after Phi Delta Theta Fraternity Max Gruver died after a night of forced drinking at his fraternity house in 2017."[4] This disparate and unlawful mistreatment of men is confirmed by LSU's own Associate Dean/Director of Greek Life, who wrote Plaintiffs on November 26, 2017, shortly after Max's death, and admitted, in relevant part:

> Our country witnessed three alcohol related deaths in fraternities in 1997 to include Ben Wynne, an LSU student. I attended AFA [Association of Fraternity Advisors] that year and there was discussion about change, but

---

[4] *See* Exhibit A, "The hazing filings: LSU frats, some now shuttered, have amassed dozens of official complaints," *The Advocate*, Aug. 17, 2019 (also available at: https://www.theadvocate.com/baton_rouge/news/article_ c4c88d82-c04d -11e9-a390-bfe2c2c70732.html). The evidence of numerous similar incidents of fraternity hazing underlying this reporting further supports Plaintiffs' allegations that LSU was on notice that Max faced a significant and real threat of being hazed as Phi Delt pledge, and that LSU's discriminatory policy and practice of treating male hazing differently than female hazing effectively condoned male hazing at Phi Delt and within LSU Greek Life.

5

> no ground swell for change or real conversations.  Since their deaths, a young man has passed from us every year in the name of pledging.  They have occurred from either alcohol or injury related to pledging.
>
> To me the question is simple, "why are those young men deceased?"  The answer is easy, 'because we, who have responsibility, do not take the strongest action within our purview.'"

(*See* Exhibit B at 4.)  Hence, a central purpose of LSU's legally unfounded Notice of Appeal is apparent:  Get to the Circuit Court now, somehow, before the well-founded allegations of the Complaint are reinforced by the mounds of evidence waiting to be uncovered in discovery.  Such tactics neither justify nor mask the frivolous nature of the appeal.

Accordingly, it is in the interest of fairness and judicial economy for this Court to exercise its authority and certify to the Fifth Circuit Court of Appeals that LSU's appeal is frivolous and dilatory.  It is also in the interest of fairness and judicial economy for this Court to direct the parties that discovery in this case as to all issues and as to all parties – with the exception of Defendant Forde while criminal charges remain pending against him – can proceed immediately and throughout the duration of LSU's appeal.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (1) certifying LSU's interlocutory appeal as frivolous and dilatory; (2) expressly retaining jurisdiction over all matters in this case; and (3) directing the parties that discovery can proceed on all issues and as to all parties while LSU's interlocutory appeal is pending, with the exception of Defendant Forde while criminal charges remain pending against him.

Dated: August 21, 2019                                              Respectfully submitted,

/s/ Jonathon N. Fazzola
Douglas E. Fierberg* – Lead Attorney
Jonathon N. Fazzola*
The Fierberg National Law Group, PLLC

6

161 East Front Street, Suite 200
Traverse City, MI 49684
Telephone: (231) 933-0180
Facsimile: (231) 252-8100
Email: dfierberg@tfnlgroup.com
Email: jfazzola@tfnlgroup.com
*Admitted Pro Hac Vice*

/s/ J. Lane Ewing, Jr.
Donald J. Cazayoux, Jr. (LBN 20742)
J. Lane Ewing, Jr. (LBN 29854)
Cazayoux Ewing Law Firm
257 Maximilian Street
Baton Rouge, LA 70802
Telephone: (225) 650-7400
Facsimile: (225) 650-7401
Email: don@cazayouxewing.com
Email: lane@cazayouxewing.com

*Counsel for Plaintiffs Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of Maxwell R. Gruver, deceased*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on this date a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

Dated:  August 21, 2019                                      **CAZAYOUX EWING LAW FIRM**

/s/ J. Lane Ewing, Jr.
Donald J. Cazayoux, Jr. (LBN 20742)
J. Lane Ewing, Jr. (LBN 29854)
257 Maximilian Street
Baton Rouge, LA  70802
Telephone: (225) 650-7400
Facsimile: (225) 650-7401
Email: don@cazayouxewing.com
Email: lane@cazayouxewing.com

*Attorneys for Plaintiffs Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of Maxwell R. Gruver, deceased*