UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**STEPHEN M. GRUVER, ET AL.**                                   **CIVIL ACTION**

v.

**STATE OF LOUISIANA THROUGH THE BOARD OF**      **NO. 3:18-cv-00772-SDD-EWD**
**SUPERVISORS OF LOUISIANA STATE**
**UNIVERSITY AND AGRICULTURAL AND**
**MECHANICAL COLLEGE, ET AL.**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT BABINEAUX'S MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Plaintiffs, Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of their son, Maxwell R. Gruver ("Max"), respectfully submit this Memorandum in Opposition to the untimely Motion to Dismiss filed by Defendant Daltin Babineaux (Rec. Doc. 186) after the Clerk had entered a default against him (Rec. Doc. 185).

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On October 15, 2019, the Court granted Plaintiffs leave to file a First Amended Complaint,[1] which the Clerk filed into the record on the same day.[2] Through their First Amended Complaint, Plaintiffs named six new Individual Defendants, including Defendant Babineaux, who "participated in, gave material support to, authorized, encouraged, permitted and/or failed to prohibit or stop the hazing and misconduct that harmed and imperiled" Max and led to his death on September 14, 2017.[3]

Defendant Babineaux served as the President of LSU's chapter of the Phi Delta Theta Fraternity ("Phi Delt") in the fall of 2017,[4] and the First Amended Complaint details various acts

---

[1] *See* Oct. 15, 2019 Order (Rec. Doc. 140).
[2] *See generally* First Amended Complaint (Rec. Doc. 141) (hereinafter, "First Amend. Compl.").
[3] *See id.* ¶¶ 37-42, 83(a).
[4] *See id.* ¶ 37.

1

and failures to act by him that caused or contributed to cause Max's death. For example, two days before the Bible Study hazing ritual where Max was forced by Matthew Naquin, and other fraternity members, to consume dangerous – and ultimately, lethal – amounts of alcohol, Defendant Babineaux and the other Executive Board members of the Chapter met to discuss how Naquin's ongoing actions with the pledges were extreme and dangerous.[5] The Executive Board members, including Defendant Babineaux, agreed to address the issue at a chapter meeting later that day.[6] They also discussed imposing penalties on Naquin if his conduct and actions toward the pledges continued, including possible suspensions, fines, or expulsion from the fraternity, but none of those penalties were ever imposed.[7] During the meeting, the Executive Board members warned Naquin that his ongoing actions with the pledges were extreme and dangerous.[8] After the meeting, Defendant Philip Clark addressed Naquin individually about his conduct, and told him it was unacceptable.[9] Naquin blew off Defendant Clark and told him he would do what he wanted.[10]

In addition to knowing about – and being alarmed by – Naquin's conduct toward the pledges, Defendant Babineaux and the other Executive Board members also were aware that another fraternity member – Defendant Sean Paul Gott – was engaging in dangerous behavior toward the pledges. Despite this knowledge – and despite the fact that, as Executive Board members, they had positions of authority within the fraternity and had agreed to abide by, enforce, and uphold Phi Delt's and the chapter's purported prohibitions on hazing, misuse and

---

[5] *See id.* ¶ 68.
[6] *See id.* ¶ 73.
[7] *Id.*
[8] *See id.* ¶ 74.
[9] *Id.*
[10] *Id.*

abuse of alcohol, and other related misconduct – Defendant Babineaux and the other Executive Board members knowingly and recklessly permitted Naquin and Defendant Gott to participate in, and direct a significant portion of, the Bible Study hazing ritual on September 13, 2017.[11] These decisions and failures to act by Defendant Babineaux (and others) had tragic consequences for Max.

During the Bible Study, fraternity members ordered Max to take a pull from a bottle of 190-proof Diesel alcohol whenever he incorrectly answered a question about the fraternity or the Greek alphabet.[12] While most of the pledges were made to take three or four pulls during Bible Study, Max was compelled to take at least 10 to 12 pulls.[13] Naquin and Defendant Gott were two of the most aggressive participants in the hazing.[14]

By the time Bible Study ended, Max was incapacitated and in visible need of emergency medical or other responsible care.[15] Max was placed unconscious on a couch.[16] Fraternity members placed a bucket beside him to catch vomit and kept watch over him for a few hours but then, eventually, abandoned him, alone and unconscious.[17]

Sometime around 9:00 a.m. on September 14, 2017, fraternity members summoned some of Max's pledge brothers to the fraternity house,[18] where Max was still on the couch, unresponsive.[19] Max's pledge brothers wanted to immediately call 911, but the fraternity

---

[11] *See id.* ¶¶ 69, 76-77.
[12] *See id.* ¶ 80.
[13] *See id.* ¶ 81.
[14] *See id.* ¶ 78.
[15] *See id.* ¶ 82.
[16] *See id.* ¶ 84.
[17] *See id.* ¶¶ 84-85.
[18] *See id.* ¶ 87.
[19] *Id.*

3

members told them not to call.[20]  Some fraternity members deliberately decided not to call 911 or bring Max to a hospital – and/or instructed other fraternity members not to call 911 or bring Max to a hospital – because they were worried about getting in trouble for the hazing that put Max in his incapacitated and imperiled condition.[21]

After further unreasonable delay, the pledges finally took Max to a hospital, where he was pronounced dead.[22]  His blood alcohol content was 0.495 when it was measured during his autopsy one-and-a-half days later.[23]  A coroner later determined that Max died from acute alcohol intoxication with aspiration.  Had Max been given reasonable and proper care when he lost consciousness on the evening of September 13, 2017, and/or during the hours before he was taken to the hospital in the late morning of September 14, 2017, he would have survived.[24]

On October 26, 2019, Defendant Babineaux was served with a summons and a copy of the First Amended Complaint in accordance with Fed. R. Civ. 4(e)(2)(B).  *See* Returned Summons (Rec. Doc. 153).  On February 13, 2020, Plaintiffs filed a Request for Entry of Default against Defendant Babineaux, who by that date still had not answered or otherwise responded to the First Amended Complaint.  *See* Plaintiffs' Request for Entry of Default against Daltin W. Babineaux (Rec. Doc. 183).  On that same day, at 2:36 p.m. CST, Honorable Clerk of Court entered a default against Defendant Babineaux.  More than nine (9) hours later, at 11:46 p.m. CST, Defendant Babineaux, while in default, filed a Motion to Dismiss, seeking to have all of Plaintiffs' claims against him dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Rec. Doc. 186.

---

[20] *See id.* ¶ 88.
[21] *Id.*
[22] *See id.* ¶¶ 90-91.
[23] *Id.*
[24] *See id.* ¶ 92.

As a party in default, Defendant Babineaux has waived the right to file a Rule 12(b) motion. The only permissible pleading Defendant Babineaux can file while in default is a motion to set aside the default. As such, Defendant Babineaux's Motion to Dismiss is untimely, is procedurally improper, and should be stricken.

Moreover, even if Defendant Babineaux's Motion to Dismiss were properly before the Court, it would fail on the merits. In his Motion to Dismiss, Defendant Babineaux makes the same central assertion made by Defendants Philip Clark and Michael Comeaux, Jr. in previously filed – and pending – motions to dismiss – i.e., that Plaintiffs' claims are barred by prescription because (purportedly) they do not relate back to the date of Plaintiffs' original Complaint under Federal Rule of Civil Procedure 15(c)(1)(C).[25] Plaintiffs already detailed in their Memorandum in Opposition to Defendant Clark's and Defendant Comeaux's Motions to Dismiss (Rec. Doc. 167) the various reasons why Defendants Clark's and Comeaux's – and now, by extension, Defendant Babineaux's – reliance on Rule 15(c)(1)(C) is misplaced. Plaintiffs incorporate that earlier Memorandum in Opposition by reference and, in the abundance of caution and in accordance with LR7(f), reiterate those reasons, along with authority in support, below.

As Plaintiffs explained in their Memorandum in Opposition to Defendants Clark's and Comeaux's Motions to Dismiss, under Louisiana law, which applies to determine the timeliness of Plaintiffs' claims, interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors. Plaintiffs filed their original Complaint within the one-year prescription periods applicable to Plaintiffs' wrongful death and survival claims. The allegations in the First Amended Complaint plainly treat Defendant Babineaux as a joint tortfeasor with the Defendants

---

[25] *See* Babineaux Mem. (Rec. Doc. 186-1) at 3-6; Clark Mem. (Rec. Doc. 166-1) at 3-7; Comeaux Mem. (Rec. Doc. 161-1) at 2-6.

named in the original Complaint. Plaintiffs' original Complaint therefore interrupted the relevant prescription period against Defendant Babineaux. Accordingly, Plaintiffs' claims against Defendant Babineaux are timely under Louisiana law, which applies here, and also relate back to Plaintiffs' original Complaint under Federal Rule of Civil Procedure 15(c)(1)(A), which Defendant Babineaux completely ignores.

For these reasons and the reasons that follow, Defendant Babineaux's Motion to Dismiss should be stricken in its entirety or, at a minimum, denied on the merits.

## ARGUMENT

### I.  Defendant Babineaux's Motion to Dismiss Should Be Stricken

"The Fifth Circuit has explained that a party who has defaulted must succeed in setting aside the default before they can file motions that go to the merits of the case."[26] Thus, because Defendant Babineaux was in default before he filed his Motion to Dismiss, his Motion to Dismiss is procedurally improper and should be stricken.[27]

---

[26] *Wilhite v. Reg'l Emplrs.' Assur. Leagues Veba Trust*, No. B-11-059, 2011 U.S. Dist. LEXIS 165554, at *10-11 (S.D. Tex. Nov. 15, 2011) (citing *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996); *Twist and Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 783 (E.D. Tex. 2006); *J&J Sports Productions, Inc. v. Pei Chuan Kuo*, No. 07-CA-075, 2007 U.S. Dist. LEXIS 86822, at *9 (W.D. Tex. Nov. 15, 2007)). In *Brown*, the Fifth Circuit held that a party in default had to succeed in setting aside a default entered against him before he could respond to a motion for summary judgment. *Brown*, 84 F.3d at 143.

[27] *See, e.g.*, *MCR Mktg., L.L.C. v. Regency Worldwide Servs., L.L.C.*, No. 08-1137, 2009 U.S. Dist. LEXIS 109213, at *4 (W.D. La. Nov. 20, 2009) ("The only permissible pleading from a party in default is a motion to set aside the default."); *Thomas v. JVM Realty Corp.*, No. 1:08-CV-493, 2008 U.S. Dist. LEXIS 113147, at *4 (W.D. Mich. June 19, 2008) (striking the answer of a defendant in default because that defendant was "barred … from filing an answer, unless the entry of default was set aside"); *J&J Sports Productions, Inc.*, 2007 U.S. Dist. LEXIS 86822, at *9 ("The record shows that the Clerk made an entry of default as to [Defendants] on September 17, 2007. [Defendants] therefore had no right to file any document other than a motion to set aside the entry of default. The Court will accordingly direct the Clerk to strike their Answer from the record in this cause"). The default entered against Defendant Babineaux means that he has waived the right to file any Rule 12(b) motions, even if the default against him is eventually set aside. *See Wilhite*, 2011 U.S. Dist. LEXIS 165554, at *11 ("Moreover, not only is a

6

II.     **Plaintiffs' Claims Against Defendant Babineaux Are Not Time Barred**

   A.   **The One-Year Limitation Periods for Plaintiffs' Wrongful Death and Survival Claims Are Prescriptive and Subject to Interruption**

Louisiana law controls the statute of limitations – or prescription periods – applicable to Plaintiffs' wrongful death and survival claims. Plaintiffs assert those state law causes of action within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[28] As such, the Court "must follow state law where it would be required to do so if the action were based on diversity of citizenship."[29] "In diversity cases … federal courts apply state statutes of limitations and related state laws governing the tolling of the limitations period."[30]

"Louisiana's prescriptive period for survival and wrongful death actions is one year from the date of death."[31] In 2014, the Louisiana Supreme Court held that the one-year time limitation for asserting a survival action under La. Civ. Code art. 2315.1(A) – like the one-year time limitation for asserting a wrongful death claim under La. Civ. Code art. 2315.2(B) – "is a period of liberative prescription rather than a period of preemption."[32] Accordingly, the prescription

---

defendant prohibited from attacking the merits of a claim after a default until that default has been set aside, but also Rule 12(b) motions are waived after a defendant has had an entry of default entered against him.") (citing *James S. Bavouset v. Shaw's of San Franciso*, 43 F.R.D. 296, 298-99 (S.D. Tex. 1967)).

[28] First Amend. Compl. ¶ 46.

[29] *Byes v. Accelerated Cash Flow*, No. 95-200, 1996 U.S. Dist. LEXIS 8790, at *5 (E.D. La. June 18, 1996) (citation omitted); *accord Henderson v. Turner*, No. 11-39, 2012 U.S. Dist. LEXIS 106629, at *19 (M.D. La. July 31, 2012) (applying the one-year prescription periods set out in La. Civ. Code art. 2315.1 and 2315.2 to plaintiffs' wrongful death and survival claims, which plaintiffs asserted together with federal civil rights claims under 42 U.S.C. § 1988 and 42 U.S.C. § 1983).

[30] *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989); *see also In re Frank*, 828 F. Supp. 2d 835 (E.D. La. 2011) ("As a threshold matter, the Court recognizes that Louisiana law controls … a federal court sitting in diversity will apply state prescription periods as substantive law.") (citations and internal quotations omitted).

[31] *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 542 (5th Cir. 2012) (citing La. Civ. Code arts. 2315.1(A), 2315.1(B)).

[32] *Watkins v. Exxon Mobil Corp.*, 2013-1545. P.12 (La. 05/07/14), 145 So. 3d 237, 244 (citing La. Civ. Code art. 2315.1(C); *see also Coleman v. OFS, Inc.*, 771 F.3d 815, 818(5th Cir. 2014)

periods for wrongful death and survival claims are both subject to interruption or suspension.[33]

Pursuant to Louisiana Civil Code article 2324(C), "[i]nterruption of prescription against one joint tortfeasors is effective against all joint tortfeasors."[34] A suit that is timely filed against one joint tortfeasor interrupts prescription as to all other joint tortfeasors.[35] Louisiana Civil Code article 2324(C) clearly applies to interrupt the prescription periods applicable to Plaintiffs' wrongful death and survival action claims against Defendant Babineaux.

### B.   Defendant Babineaux Is a Joint Tortfeasor With the Other Defendants in This Action

"Under Louisiana law, joint and several liability may be imposed on 'persons whose separate wrongful actions, not done in concert, contribute in unknown proportions … to cause indivisible injury.'"[36] Similarly, "[u]nder Civil Code articles 2103 and 2324, and settled case law, joint tort-feasors are deemed solidary obligors, even though their concurrent negligence

---

("In *Watkins v. Excon Mobil Corp.*, the Supreme Court of Louisiana clearly held that the time period in Article 2315.1 is prescriptive and not preemptive.").
[33] *See Lennie v. Exxon Mobil Corp.*, 17-204 (La. App. 5 Cir. 06/27/18), 251 So. 3d 637, 649 n.9 ("In *Watkins*, the Supreme Court determined, under a plain language analysis of the statute, that the one-year period [for survival claims] is prescriptive rather than preemptive, and thus subject to interruption or suspension."); *Evans v. CanadianOxy Offshore Prod. Co.*, 98-835 (La. App. 3 Cir. 12/09/98), 730 So. 2d 466, 470 ("The one-year period for bringing a wrongful death action is prescriptive. It can be interrupted or suspended.") (citation omitted).
[34] La. Civ. Code art. 2324(c).
[35] *See Shepard ex rel. James v. Coleman*, 15-922, p. 11-12 (La. App. 3 Cir. 04/06/16), 189 So. 3d 552, 561 ("Thus, we find [La. Civ. Code art. 2324(C)] controls in the instant matter and conclude that the timely filed suit against State Farm acted to interrupt prescription as to all defendants … since they are joint tortfeasors."); *McKenzie v. Imperial Fire & Cas. Ins. Co.*, 12-1648, p. 9 (La. App. 1 Cir. 07/30/13), 122 So. 3d 42, 49 (finding that "interruption of prescription was effective against all joint tortfeasors," and "this interruption continues as long as the suit is pending."), *writ denied*, 129 So. 3d 534 (La. 2013); *Smith v. Fred's Stores of Tenn., Inc.*, No. 07-1496, 2007 U.S. Dist. LEXIS 81492, at *5-6 (E.D. La. Nov. 2, 2007) ("Thus it is well established under Louisiana law that if prescription is interrupted for one joint tortfeasor/solidary obligor it is interrupted for all joint tortfeasors/solidary obligor[s].").
[36] *Ford v. Murphy Oil U.S.A., Inc.*, 750 F. Supp. 766, 772 (5th Cir. 1990) (quoting *Thompson v. Johns-Manville Sales Corp.*, 714 F.2d 581, 582 (5th Cir. 1983)).

8

results from different acts or breaches of different obligations."[37]

The allegations in the First Amended Complaint clearly treat all of the Defendants – including Defendant Babineaux – as joint tortfeasors, and Plaintiffs seek a judgment against the Defendants "jointly and severally."[38]  Indeed, the indivisible injuries at issue – Max's hazing, suffering, and death – were the result of various acts or failures to act by all of the Individual Defendants (and others, including LSU), as detailed in the First Amended Complaint.[39]

Thus, because the allegations treat the newly-added Individual Defendants and originally named Defendants as joint tortfeasors, Plaintiffs' timely filed original Complaint against the original Defendants interrupted prescription of Plaintiffs' wrongful death and survival claims against the newly-added Individual Defendants – including Defendant Babineaux.[40]  It is therefore immaterial that Plaintiffs' claims do not relate back to the filing of the original

---

[37] *Duplechain v. Clausing Machine Tools*, 420 So.2d 720, 722 (La. App. 4th Cir. 1982) (citations omitted).

[38] First Amend. Compl., p. 66 (Prayer for Relief).

[39] *See, e.g.*, *id.* ¶¶ 56-97, 244-246, 249.  Instructively, the Third Circuit Court of Appeal of Louisiana recently held that executive officers of local chapters of national fraternities – like Defendant Babineaux – have a duty to prevent and not engage in the hazing of pledges where – like Defendant Babineaux – they voluntarily assume the responsibilities of executive officers and agree to abide by the chapters' and fraternities' rules against hazing and related misconduct.  *See Nizamutdinova v. Kappa Sigma Fraternity*, 18-886, p.11 (La. App. 3 Cir. 10/02/19), 2019 La. App. LEXIS 1764, at *16-17, *writ application denied*, 2019-01774 (La. 01/14/20), 2020 La. LEXIS 87.

[40] *See Authement v. Wilkinson*, No. 1:16-CV-00151, 2017 U.S. Dist. LEXIS 130030, at *13 (W.D. La. July 11, 2017) (finding that because "the allegations treat Defendants as joint tortfeasors," a plaintiff's claim against a defendant named for the first time in an amended complaint filed after the expiration of the prescription period was not prescribed because the "timely filing of [the plaintiff's] original complaint against [the other defendants] interrupts prescription of [the plaintiff's] claims" against the newly named defendant) *report and recommendation adopted*, No. 1:16-CV-00151, 2017 U.S. Dist. LEXIS 129527 (W.D. La. Aug. 14, 2017); *Matthews v. Tangipahoa Par. Police Jury*, No. 16-2938, 2019 U.S. LEXIS 37562, at *16 (E.D. La. March 8, 2019) ("Thus, when Plaintiff filed his Original Complaint on April 7, 2016 suing certain named defendants, he interrupted prescription as to the remaining unnamed joint tortfeasors."); *Hultgren v. Construction South*, No. 99-3459, 2000 U.S. Dist. LEXIS 7908, at *2-3 (E.D. La. June 1, 2000).

Complaint under Rule 15(c)(1)(C),[41] because Plaintiffs do not need to rely upon Rule 15(c)(1)(C) for their claims against Defendant Babineaux to be timely.[42]

### C. Plaintiffs' Claims Against Defendant Babineaux Relate Back to the Original Complaint Pursuant to Fed. R. Civ. P. 15(c)(1)(A)

Further, even if relation back under Rule 15(c) was the proper standard, Plaintiffs have met it here. Under Rule 15(c)(1)(A), "[a]n amendment to a pleading relates back to the date of the original pleading when … (A) the law that provides the applicable statute of limitations allows relation back.[43]" The applicable Louisiana law – Louisiana Civil Code article 2324(C) – allows relation back under these circumstances.[44] This means, in turn, that Plaintiffs' claims against Defendant Babineaux relate back to Plaintiffs' original Complaint pursuant to Rule

---

[41] *See* Babineaux Mem. (Rec. Doc. 186-1) at 4-6.

[42] *See Sanchez v. Tangipahoa Parish Sheriff's Office*, No. 08-1227, 2010 U.S. Dist. LEXIS 504493, at *6-7 (E.D. La. April 22, 2010) (holding that the plaintiffs did "not need to rely upon relation back under Rule 15(c) for their claims" against police officers the plaintiffs proposed to add as defendants through a first amended complaint because "the plaintiffs' timely filing their complaint" against other joint tortfeasors "interrupted prescription of plaintiffs' claims" against the officers); *see also Furr v. City of Baker*, No. 15-426, 2017 U.S. Dist. LEXIS 129667, at *36-37 (M.D. La. Aug. 15, 2017) ("It is of no significance that Plaintiff's amendment substituting the John Does for named defendants does not relate back under Rule 15(c), because under arts. 1799 and 3503, it does not need to relate back, as the timely filing of suit against the City interrupted prescription and Plaintiff was free to name additional defendants that are solidarily liable with the City, even in the absence of John Doe placeholders."). Indeed, this Court made clear in *Pendarvis v. American Bankers Insurance Company of Florida*, a case Defendant Babineaux purports to rely on, that "[a]ppellate courts have held that state laws determine the timeliness of state law claims and related issues such as which events commence an action ***or toll the statute of limitations***." *Pendarvis v. Am. Bankers Ins. Co.*, No. 06-772, 2008 U.S. Dist. LEXIS 123439, at *7 (M.D. La. Jan. 24, 2008) (emphasis added) (citing *Hensgens v. Deere & Company*, 869 F.2d 879 (5th Cir. 1989)).

[43] Fed. R. Civ. P. 15(c)(1)(A); *see also* Fed. R. Civ. P. 15 Advisory Committee Notes, 1991 Amendment ("**Paragraph (c)(1)**. This provision is new. It is intended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law. Generally, the applicable limitations law will be state law.").

[44] *See Boquet v. SWDI, LLC*, 07-0738, p. 6 (La. App. 1 Cir. 06/06/08), 992 So. 2d 1059, 1063 ("Louisiana Civil Code article 2324 provides that interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors. ***Thus, the addition of additional defendants in a suit will relate back to the date of the original if the defendants are joint tortfeasors***.") (emphasis added).

10

15(c)(1)(A), a subsection of Rule 15(c) that Defendant Babineaux (like Defendants Clark and Comeaux before him) overlooks.[45]

## CONCLUSION

Ultimately, Defendant Babineaux's sole argument for dismissal – that Plaintiffs' claims against him do not relate back under Rule 15(c)(1)(C) – is inapposite, and the single case he relies upon to support that argument is factually and legally distinguishable.  *Winzer v. Kaufman* was a § 1983 action arising from the shooting of a young man in Texas by law enforcement officers responding to a 911 call.[46]  Because the shooting occurred in Texas, the Fifth Circuit Court of Appeals applied Texas' two-year limitations period – *not* Louisiana's prescription period – in assessing whether claims against two police officers added after the expiration of the limitations period were time barred.[47]

The *Winzer* court's holding that those claims did not relate back under Rule 15(c) therefore has no bearing on the operative question at issue here – whether Plaintiffs' claims against Defendant Babineaux are timely because the original Complaint interrupted the prescription periods for those claims.  Louisiana law, on the other hand, clearly and unequivocally resolves that operative question in Plaintiffs' favor.  To the extent the Court elects not to strike Defendant Babineaux's Motion to Dismiss in its entirety, Defendant Babineaux's Motion to Dismiss should be denied.

---

[45] *See, e.g.*, *Maronge v. Hunt Petro. Co.*, No. 08-4959, 2009 U.S. Dist. LEXIS 141358, at *5-6 (E.D. La. April 29, 2009) (agreeing with plaintiff's contention "that prescription was interrupted as to [a new defendant] when he filed this lawsuit, and that his amendment relates back to that date under Rule 15(c)(1)(A), because [the new defendant] is solidarily liable with the existing defendants under substantive Louisiana law").
[46] *Winzer v. Kaufman*, 916 F.3d 464, 467 (5th Cir. 2019)
[47] *Id.* at 470.

11

Dated: February 27, 2020

Respectfully submitted,

/s/ Jonathon N. Fazzola
**THE FIERBERG NATIONAL LAW GROUP**
Douglas E. Fierberg* – Lead Attorney
Jonathon N. Fazzola*
Lisa N. Cloutier*
161 East Front Street, Suite 200
Traverse City, MI  49684
Telephone: (231) 933-0180
Facsimile: (231) 252-8100
Email: dfierberg@tfnlgroup.com
Email: jfazzola@tfnlgroup.com
Email: lcloutier@tfnlgroup.com
*Admitted Pro Hac Vice*

/s/ J. Lane Ewing, Jr.
**CAZAYOUX EWING LAW FIRM**
Donald J. Cazayoux, Jr. (LBN 20742)
J. Lane Ewing, Jr. (LBN 29854)
257 Maximilian Street
Baton Rouge, LA  70802
Telephone: (225) 650-7400
Facsimile: (225) 650-7401
Email: don@cazayouxewing.com
Email: lane@cazayouxewing.com

*Attorneys for Plaintiffs Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of Maxwell R. Gruver, deceased*

## CERTIFICATE OF SERVICE

  I hereby certify that on this date a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

Dated:  February 27, 2020            **CAZAYOUX EWING LAW FIRM**

                     /s/ J. Lane Ewing, Jr.
                     Donald J. Cazayoux, Jr. (LBN 20742)
                     J. Lane Ewing, Jr. (LBN 29854)
                     257 Maximilian Street
                     Baton Rouge, LA  70802
                     Telephone: (225) 650-7400
                     Facsimile: (225) 650-7401
                     Email: don@cazayouxewing.com
                     Email: lane@cazayouxewing.com

                     *Attorneys for Plaintiffs Stephen M. Gruver*
                     *and Rae Ann Gruver, individually and on*
                     *behalf of Maxwell R. Gruver, deceased*