# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**STEPHEN M. GRUVER, ET AL.**                              **CIVIL ACTION**

**v.**

**STATE OF LOUISIANA THROUGH THE BOARD OF**      **NO. 3:18-cv-00772-SDD-EWD**
**SUPERVISORS OF LOUISIANA STATE**
**UNIVERSITY AND AGRICULTURAL AND**
**MECHANICAL COLLEGE, ET AL.**

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT LAGHARI'S MOTION TO DISMISS PURSUANT TO
### FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Plaintiffs, Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of their son, Maxwell R. Gruver ("Max"), respectfully submit this Memorandum in Opposition to the Motion to Dismiss filed twice by Defendant Haider Laghari (Rec. Doc. 188 and 189).

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2019, the Court granted Plaintiffs leave to file a First Amended Complaint,[1] which the Clerk filed into the record on the same day.[2]  Through their First Amended Complaint, Plaintiffs named six new Individual Defendants, including Defendant Laghari, who "participated in, gave material support to, authorized, encouraged, permitted and/or failed to prohibit or stop the hazing and misconduct that harmed and imperiled" Max and led to his death on September 14, 2017.[3]

Defendant Laghari was an Executive Board member of LSU's chapter of the Phi Delta Theta Fraternity ("Phi Delt") in the fall of 2017,[4] and the First Amended Complaint details various acts and failures to act by him that caused or contributed to cause Max's death.  For

---

[1] *See* Oct. 15, 2019 Order (Rec. Doc. 140).
[2] *See generally* First Amended Complaint (Rec. Doc. 141) (hereinafter, "First Amend. Compl.").
[3] *See id.* ¶¶ 37-42, 83(a).
[4] *See id.* ¶ 41.

1

example, two days before the Bible Study hazing ritual where Max was forced by Matthew Naquin, and other fraternity members, to consume dangerous – and ultimately, lethal – amounts of alcohol, Defendant Laghari and the other Executive Board members met to discuss how Naquin's ongoing actions with the pledges were extreme and dangerous.[5]  The Executive Board members, including Defendant Laghari, agreed to address the issue at a chapter meeting later that day.[6]  They also discussed imposing penalties on Naquin if his conduct and actions toward the pledges continued, including possible suspensions, fines, or expulsion from the fraternity, but none of those penalties were ever imposed.[7]  During the meeting, the Executive Board members warned Naquin that his ongoing actions with the pledges were extreme and dangerous.[8]  After the meeting, Defendant Philip Clark addressed Naquin individually about his conduct, and told him it was unacceptable.[9]  Naquin blew off Defendant Clark and told him he would do what he wanted.[10]

In addition to knowing about – and being alarmed by – Naquin's conduct toward the pledges, Defendant Laghari and the other Executive Board members also were aware that another fraternity member – Defendant Sean Paul Gott – was engaging in dangerous behavior toward the pledges.  Despite this knowledge – and despite the fact that, as Executive Board members, they had positions of authority within the fraternity and had agreed to abide by, enforce, and uphold Phi Delt's and the chapter's purported prohibitions on hazing, misuse and abuse of alcohol, and other related misconduct – Defendant Laghari and the other Executive

---

[5] *See id.* ¶ 68.
[6] *See id.* ¶ 73.
[7] *Id.*
[8] *See id.* ¶ 74.
[9] *Id.*
[10] *Id.*

Board members knowingly and recklessly permitted Naquin and Defendant Gott to participate in, and direct a significant portion of, the Bible Study hazing ritual on September 13, 2017.[11] Indeed, before Defendant Gott sent out a GroupMe message to the Phi Delt pledges summoning them to the Phi Delt house for the September 13, 2017 Bible Study hazing ritual, Defendant Gott conferred with, and sought advice from, Defendant Laghari to determine the date, time, and location of the Bible Study ritual.[12]  This collaboration and these decisions and failures to act by Defendant Laghari (and others) had tragic consequences for Max.

During the Bible Study, fraternity members ordered Max to take a pull from a bottle of 190-proof Diesel alcohol whenever he incorrectly answered a question about the fraternity or the Greek alphabet.[13]  While most of the pledges were made to take three or four pulls during Bible Study, Max was compelled to take at least 10 to 12 pulls.[14]  Naquin and Defendant Gott were two of the most aggressive participants in the hazing.[15]

By the time Bible Study ended, Max was incapacitated and in visible need of emergency medical or other responsible care.[16]  Max was placed unconscious on a couch.[17]  Fraternity members placed a bucket beside him to catch vomit and kept watch over him for a few hours but then, eventually, abandoned him, alone and unconscious.[18]

Sometime around 9:00 a.m. on September 14, 2017, fraternity members summoned some of Max's pledge brothers to the fraternity house,[19] where Max was still on the couch,

---

[11] *See id.* ¶¶ 69, 76-77.
[12] *See id.* ¶¶ 56-57.
[13] *See id.* ¶ 80.
[14] *See id.* ¶ 81.
[15] *See id.* ¶ 78.
[16] *See id.* ¶ 82.
[17] *See id.* ¶ 84.
[18] *See id.* ¶¶ 84-85.
[19] *See id.* ¶ 87.

unresponsive.[20]  Max's pledge brothers wanted to immediately call 911, but the fraternity members told them not to call.[21]  Some fraternity members deliberately decided not to call 911 or bring Max to a hospital – and/or instructed other fraternity members not to call 911 or bring Max to a hospital – because they were worried about getting in trouble for the hazing that put Max in his incapacitated and imperiled condition.[22]

After further unreasonable delay, the pledges finally took Max to a hospital, where he was pronounced dead.[23]  His blood alcohol content was 0.495 when it was measured during his autopsy one-and-a-half days later.[24]  A coroner later determined that Max died from acute alcohol intoxication with aspiration.  Had Max been given reasonable and proper care when he lost consciousness on the evening of September 13, 2017, and/or during the hours before he was taken to the hospital in the late morning of September 14, 2017, he would have survived.[25]

On February 24, 2020, Defendant Laghari filed two identical Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b), seeking to have Plaintiffs' claims against him dismissed, with prejudice.  Defendant Laghari first filed his Motion to Dismiss at 1:54 p.m. CST as part of a combined Answer to Plaintiffs' First Amended Complaint and Motion to Dismiss.  *See* Rec. Doc. 188.  Less than two hours later, at 3:35 p.m. CST, Defendant Laghari filed his Motion to Dismiss as a standalone document (Rec. Doc. 189), with Memorandum in Support (Rec. Doc. 189-1).[26]  Although filed at different times, the Motions to Dismiss and Memoranda in Support

---

[20] *Id.*
[21] *See id.* ¶ 88.
[22] *Id.*
[23] *See id.* ¶¶ 90-91.
[24] *Id.*
[25] *See id.* ¶ 92.
[26] Defendant Laghari's Answer precedes his Motion to Dismiss in his combined Answer and Motion to Dismiss.  *See* Rec. Doc. 188.  As such, under Fed. R. Civ. P. 12(b)(6), his Motion to Dismiss is technically untimely.  *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these

that Defendant Laghari filed with them appear to be identical in substance and, accordingly, are referred to jointly herein as the "Motion to Dismiss."

Defendant Laghari's Motion to Dismiss and Memorandum in Support also appear to be identical in substance to the Motion to Dismiss and Memorandum in Support filed by Defendant Clark on December 5, 2019.[27]  *See* Rec. Doc. 166 and 166-1.  In fact, Defendant Laghari copies Defendant Clark's Motion to Dismiss and Memorandum in Support verbatim – down to the footnotes – and repeats Defendant Clark's argument that Plaintiffs' claims are barred by prescription because (purportedly) they do not relate back to the date of Plaintiffs' original Complaint under Federal Rule of Civil Procedure 15(c)(1)(C).[28]  Plaintiffs already detailed in their Memorandum in Opposition to Defendant Clark's Motion to Dismiss (Rec. Doc. 167) the various reasons why Defendant Clark's – and now, by extension, Defendant Laghari's – reliance on Rule 15(c)(1)(C) is misplaced.  Plaintiffs incorporate that earlier Memorandum in Opposition by reference and, in the abundance of caution and in accordance with LR7(f), reiterate those reasons, along with authority in support, below.

---

defense must be made before pleading if a responsive pleading is allowed."); *see also Jones v. Greniger*, 188 F.3d 322, 325 (5th Cir. 1999) (reiterating that "a rule 12(b) motion must be filed before responsive pleadings" or the motion is "untimely").  However, at least one Louisiana district court has recognized that "[w]hen a 12(b) motion to dismiss and answer are filed simultaneously … courts generally view the motion as having proceeded the answer and thus been timely filed."  *Carter v. City of Thibodaux Police Dep't*, No. 13-105, 2013 U.S. Dist. LEXIS 148184, at *5 (E.D. La. Oct. 15, 2013) (citations omitted).  Because the arguments set forth in Defendant Laghari's Motion to Dismiss fail on the merits, Plaintiffs have no objection to the Court deciding the Motion to Dismiss on the merits, without first addressing whether the Motion to Dismiss was timely.

[27] Like Defendant Clark, Defendant Laghari does not argue that the allegations in the First Amended Complaint are insufficient as a matter of law to state wrongful death or survival claims against him.

[28] *Compare* Laghari Mem. (Rec. Doc. 189-1) at 3-7) *with* Clark Mem. (Rec. Doc. 166-1) at 3-7.

As Plaintiffs explained in their Memorandum in Opposition to Defendant Clark's Motion to Dismiss, under Louisiana law, which applies to determine the timeliness of Plaintiffs' claims, interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors. Plaintiffs filed their original Complaint within the one-year prescription periods applicable to Plaintiffs' wrongful death and survival claims. The allegations in the First Amended Complaint plainly treat Defendant Laghari as a joint tortfeasor with the Defendants named in the original Complaint. Plaintiffs' original Complaint therefore interrupted the relevant prescription period against Defendant Laghari.

Accordingly, Plaintiffs' claims against Defendant Laghari are timely under Louisiana law, which applies here, and also relate back to Plaintiffs' original Complaint under Federal Rule of Civil Procedure 15(c)(1)(A), which Defendant Laghari completely ignores. Defendant Laghari's Motion to Dismiss should be denied.

## **ARGUMENT**

## I.     **Plaintiffs' Claims Against Defendant Laghari Are Not Time Barred**

### A.     **The One-Year Limitation Periods for Plaintiffs' Wrongful Death and Survival Claims Are Prescriptive and Subject to Interruption**

Louisiana law controls the statute of limitations – or prescription periods – applicable to Plaintiffs' wrongful death and survival claims. Plaintiffs assert those state law causes of action within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[29] As such, the Court "must follow state law where it would be required to do so if the action were based on diversity of citizenship."[30] "In diversity cases … federal courts apply state statutes of limitations and

---

[29] First Amend. Compl. ¶ 46.

[30] *Byes v. Accelerated Cash Flow*, No. 95-200, 1996 U.S. Dist. LEXIS 8790, at *5 (E.D. La. June 18, 1996) (citation omitted); *accord Henderson v. Turner*, No. 11-39, 2012 U.S. Dist. LEXIS 106629, at *19 (M.D. La. July 31, 2012) (applying the one-year prescription periods set out in La. Civ. Code art. 2315.1 and 2315.2 to plaintiffs' wrongful death and survival claims, which

6

related state laws governing the tolling of the limitations period."[31]

"Louisiana's prescriptive period for survival and wrongful death actions is one year from the date of death."[32] In 2014, the Louisiana Supreme Court held that the one-year time limitation for asserting a survival action under La. Civ. Code art. 2315.1(A) – like the one-year time limitation for asserting a wrongful death claim under La. Civ. Code art. 2315.2(B) – "is a period of liberative prescription rather than a period of preemption."[33] Accordingly, the prescription periods for wrongful death and survival claims are both subject to interruption or suspension.[34]

Pursuant to Louisiana Civil Code article 2324(C), "[i]nterruption of prescription against one joint tortfeasors is effective against all joint tortfeasors."[35] A suit that is timely filed against one joint tortfeasor interrupts prescription as to all other joint tortfeasors.[36] Louisiana Civil Code

---

plaintiffs asserted together with federal civil rights claims under 42 U.S.C. § 1988 and 42 U.S.C. § 1983).

[31] *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989); *see also In re Frank*, 828 F. Supp. 2d 835 (E.D. La. 2011) ("As a threshold matter, the Court recognizes that Louisiana law controls … a federal court sitting in diversity will apply state prescription periods as substantive law.") (citations and internal quotations omitted).

[32] *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 542 (5th Cir. 2012) (citing La. Civ. Code arts. 2315.1(A), 2315.1(B)).

[33] *Watkins v. Exxon Mobil Corp.*, 2013-1545. P.12 (La. 05/07/14), 145 So. 3d 237, 244 (citing La. Civ. Code art. 2315.1(C); *see also Coleman v. OFS, Inc.*, 771 F.3d 815, 818(5th Cir. 2014) ("In *Watkins v. Excon Mobil Corp.*, the Supreme Court of Louisiana clearly held that the time period in Article 2315.1 is prescriptive and not preemptive.").

[34] *See Lennie v. Exxon Mobil Corp.*, 17-204 (La. App. 5 Cir. 06/27/18), 251 So. 3d 637, 649 n.9 ("In *Watkins*, the Supreme Court determined, under a plain language analysis of the statute, that the one-year period [for survival claims] is prescriptive rather than preemptive, and thus subject to interruption or suspension."); *Evans v. CanadianOxy Offshore Prod. Co.*, 98-835 (La. App. 3 Cir. 12/09/98), 730 So. 2d 466, 470 ("The one-year period for bringing a wrongful death action is prescriptive. It can be interrupted or suspended.") (citation omitted).

[35] La. Civ. Code art. 2324(c).

[36] *See Shepard ex rel. James v. Coleman*, 15-922, p. 11-12 (La. App. 3 Cir. 04/06/16), 189 So. 3d 552, 561 ("Thus, we find [La. Civ. Code art. 2324(C)] controls in the instant matter and conclude that the timely filed suit against State Farm acted to interrupt prescription as to all defendants … since they are joint tortfeasors."); *McKenzie v. Imperial Fire & Cas. Ins. Co.*, 12-1648, p. 9 (La. App. 1 Cir. 07/30/13), 122 So. 3d 42, 49 (finding that "interruption of prescription was effective against all joint tortfeasors," and "this interruption continues as long as the suit is pending."),

article 2324(C) clearly applies to interrupt the prescription periods applicable to Plaintiffs'

wrongful death and survival action claims against Defendant Laghari.

### B. Defendant Laghari Is a Joint Tortfeasor with the Other Defendants in This Action

"Under Louisiana law, joint and several liability may be imposed on 'persons whose

separate wrongful actions, not done in concert, contribute in unknown proportions … to cause

indivisible injury.'"[37]  Similarly, "[u]nder Civil Code articles 2103 and 2324, and settled case

law, joint tort-feasors are deemed solidary obligors, even though their concurrent negligence

results from different acts or breaches of different obligations."[38]

The allegations in the First Amended Complaint clearly treat all of the Defendants –

including Defendant Laghari – as joint tortfeasors, and Plaintiffs seek a judgment against the

Defendants "jointly and severally."[39]  Indeed, the indivisible injuries at issue – Max's hazing,

suffering, and death – were the result of various acts or failures to act by all of the Individual

Defendants (and others, including LSU), as detailed in the First Amended Complaint.[40]

---

*writ denied*, 129 So. 3d 534 (La. 2013); *Smith v. Fred's Stores of Tenn., Inc.*, No. 07-1496, 2007 U.S. Dist. LEXIS 81492, at *5-6 (E.D. La. Nov. 2, 2007) ("Thus it is well established under Louisiana law that if prescription is interrupted for one joint tortfeasor/solidary obligor it is interrupted for all joint tortfeasors/solidary obligor[s].").

[37] *Ford v. Murphy Oil U.S.A., Inc.*, 750 F. Supp. 766, 772 (5th Cir. 1990) (quoting *Thompson v. Johns-Manville Sales Corp.*, 714 F.2d 581, 582 (5th Cir. 1983)).

[38] *Duplechain v. Clausing Machine Tools*, 420 So.2d 720, 722 (La. App. 4th Cir. 1982) (citations omitted).

[39] First Amend. Compl., p. 66 (Prayer for Relief).

[40] *See, e.g.*, *id.* ¶¶ 56-97, 244-246, 249.  Defendant Laghari, like Defendant Clark, whose memorandum in support he copied, characterizes the allegations against him as "essentially state law claims of negligence suggesting that he failed to stop the behavior of several other fraternity members." Laghari Mem. (Rec. Doc. 189-1) at 2; *see also* Clark Mem. (Rec. Doc. 166-1) at 2 (same).  Even if that characterization were accurate (and it is not), it is clear that even under that characterization Defendant Laghari would be fairly considered a joint tortfeasor with the other Defendants.  Indeed, the Third Circuit Court of Appeal of Louisiana recently held that executive officers of local chapters of national fraternities – like Defendant Laghari – have a duty to prevent and not engage in the hazing of pledges where – like Defendant Laghari – they voluntarily assume the responsibilities of executive officers and agree to abide by the chapters'

Thus, because the allegations treat the newly-added Individual Defendants and originally named Defendants as joint tortfeasors, Plaintiffs' timely filed original Complaint against the original Defendants interrupted prescription of Plaintiffs' wrongful death and survival claims against the newly-added Individual Defendants – including Defendant Laghari.[41]  It is therefore immaterial that Plaintiffs' claims do not relate back to the filing of the original Complaint under Rule 15(c)(1)(C),[42] because Plaintiffs do not need to rely upon Rule 15(c)(1)(C) for their claims against Defendant Laghari to be timely.[43]

---

and fraternities' rules against hazing and related misconduct.  *See Nizamutdinova v. Kappa Sigma Fraternity*, 18-886, p.11 (La. App. 3 Cir. 10/02/19), 2019 La. App. LEXIS 1764, at *16-17, *writ application denied*, 2019-01774 (La. 01/14/20), 2020 La. LEXIS 87.

[41] *See Authement v. Wilkinson*, No. 1:16-CV-00151, 2017 U.S. Dist. LEXIS 130030, at *13 (W.D. La. July 11, 2017) (finding that because "the allegations treat Defendants as joint tortfeasors," a plaintiff's claim against a defendant named for the first time in an amended complaint filed after the expiration of the prescription period was not prescribed because the "timely filing of [the plaintiff's] original complaint against [the other defendants] interrupts prescription of [the plaintiff's] claims" against the newly named defendant) *report and recommendation adopted*, No. 1:16-CV-00151, 2017 U.S. Dist. LEXIS 129527 (W.D. La. Aug. 14, 2017); *Matthews v. Tangipahoa Par. Police Jury*, No. 16-2938, 2019 U.S. LEXIS 37562, at *16 (E.D. La. March 8, 2019) ("Thus, when Plaintiff filed his Original Complaint on April 7, 2016 suing certain named defendants, he interrupted prescription as to the remaining unnamed joint tortfeasors."); *Hultgren v. Construction South*, No. 99-3459, 2000 U.S. Dist. LEXIS 7908, at *2-3 (E.D. La. June 1, 2000).

[42] *See* Laghari Mem. (Rec. Doc. 189-1) at 3-7; *see also* Clark Mem. (Rec. Doc. 166-1) at 4-6 (same).

[43] *See Sanchez v. Tangipahoa Parish Sheriff's Office*, No. 08-1227, 2010 U.S. Dist. LEXIS 504493, at *6-7 (E.D. La. April 22, 2010) (holding that the plaintiffs did "not need to rely upon relation back under Rule 15(c) for their claims" against police officers the plaintiffs proposed to add as defendants through a first amended complaint because "the plaintiffs' timely filing their complaint" against other joint tortfeasors "interrupted prescription of plaintiffs' claims" against the officers); *see also Furr v. City of Baker*, No. 15-426, 2017 U.S. Dist. LEXIS 129667, at *36-37 (M.D. La. Aug. 15, 2017) ("It is of no significance that Plaintiff's amendment substituting the John Does for named defendants does not relate back under Rule 15(c), because under arts. 1799 and 3503, it does not need to relate back, as the timely filing of suit against the City interrupted prescription and Plaintiff was free to name additional defendants that are solidarily liable with the City, even in the absence of John Doe placeholders.").

### C.    Plaintiffs' Claims Against Defendant Laghari Relate Back to the Original Complaint Pursuant to Fed. R. Civ. P. 15(c)(1)(A)

Further, even if relation back under Rule 15(c) was the proper standard, Plaintiffs have met it here.  Under Rule 15(c)(1)(A), "[a]n amendment to a pleading relates back to the date of the original pleading when … (A) the law that provides the applicable statute of limitations allows relation back.[44]"  The applicable Louisiana law – Louisiana Civil Code article 2324(C) – allows relation back under these circumstances.[45]  This means, in turn, that Plaintiffs' claims against Defendant Laghari relate back to Plaintiffs' original Complaint pursuant to Rule 15(c)(1)(A), a subsection of Rule 15(c) that Defendant Laghari (like Defendant Clark before him) overlooks.[46]

### CONCLUSION

Ultimately, Defendant Laghari's sole argument for dismissal – that Plaintiffs' claims against him do not relate back under Rule 15(c)(1)(C) – is inapposite, and the single case he relies upon to support that argument is factually and legally distinguishable.  *Winzer v. Kaufman* was a § 1983 action arising from the shooting of a young man in Texas by law enforcement officers responding to a 911 call.[47]  Because the shooting occurred in Texas, the Fifth Circuit

---

[44] Fed. R. Civ. P. 15(c)(1)(A); *see also* Fed. R. Civ. P. 15 Advisory Committee Notes, 1991 Amendment ("**Paragraph (c)(1)**.  This provision is new.  It is intended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law.  Generally, the applicable limitations law will be state law.").

[45] *See Boquet v. SWDI, LLC*, 07-0738, p. 6 (La. App. 1 Cir. 06/06/08), 992 So. 2d 1059, 1063 ("Louisiana Civil Code article 2324 provides that interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors. ***Thus, the addition of additional defendants in a suit will relate back to the date of the original if the defendants are joint tortfeasors***.") (emphasis added).

[46] *See, e.g.*, *Maronge v. Hunt Petro. Co.*, No. 08-4959, 2009 U.S. Dist. LEXIS 141358, at *5-6 (E.D. La. April 29, 2009) (agreeing with plaintiff's contention "that prescription was interrupted as to [a new defendant] when he filed this lawsuit, and that his amendment relates back to that date under Rule 15(c)(1)(A), because [the new defendant] is solidarily liable with the existing defendants under substantive Louisiana law").

[47] *Winzer v. Kaufman*, 916 F.3d 464, 467 (5th Cir. 2019)

Court of Appeals applied Texas' two-year limitations period – *not* Louisiana's prescription period – in assessing whether claims against two police officers added after the expiration of the limitations period were time barred.[48]

The *Winzer* court's holding that those claims did not relate back under Rule 15(c) therefore has no bearing on the operative question at issue here – whether Plaintiffs' claims against Defendant Laghari are timely because the original Complaint interrupted the prescription periods for those claims.  Louisiana law, on the other hand, clearly and unequivocally resolves that operative question in Plaintiffs' favor.  Defendant Laghari's Motion to Dismiss should be denied.

Dated:  February 27, 2020                           Respectfully submitted,

                                                    /s/ Jonathon N. Fazzola
                                                    **THE FIERBERG NATIONAL LAW GROUP**
                                                    Douglas E. Fierberg* – Lead Attorney
                                                    Jonathon N. Fazzola*
                                                    Lisa N. Cloutier*
                                                    161 East Front Street, Suite 200
                                                    Traverse City, MI  49684
                                                    Telephone: (231) 933-0180
                                                    Facsimile: (231) 252-8100
                                                    Email: dfierberg@tfnlgroup.com
                                                    Email: jfazzola@tfnlgroup.com
                                                    Email: lcloutier@tfnlgroup.com
                                                    *Admitted Pro Hac Vice*

                                                    /s/ J. Lane Ewing, Jr.
                                                    **CAZAYOUX EWING LAW FIRM**
                                                    Donald J. Cazayoux, Jr. (LBN 20742)
                                                    J. Lane Ewing, Jr. (LBN 29854)
                                                    257 Maximilian Street
                                                    Baton Rouge, LA  70802
                                                    Telephone: (225) 650-7400
                                                    Facsimile: (225) 650-7401
                                                    Email: don@cazayouxewing.com
                                                    Email: lane@cazayouxewing.com

---

[48] *Id.* at 470.

*Attorneys for Plaintiffs Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of Maxwell R. Gruver, deceased*

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

Dated:  February 27, 2020                    **CAZAYOUX EWING LAW FIRM**

                                   /s/ J. Lane Ewing, Jr.
                                   Donald J. Cazayoux, Jr. (LBN 20742)
                                   J. Lane Ewing, Jr. (LBN 29854)
                                   257 Maximilian Street
                                   Baton Rouge, LA  70802
                                   Telephone: (225) 650-7400
                                   Facsimile: (225) 650-7401
                                   Email: don@cazayouxewing.com
                                   Email: lane@cazayouxewing.com

                                   *Attorneys for Plaintiffs Stephen M. Gruver*
                                   *and Rae Ann Gruver, individually and on*
                                   *behalf of Maxwell R. Gruver, deceased*