UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**STEPHEN M. GRUVER, ET AL.**                                                                 **CIVIL ACTION**

v.

**STATE OF LOUISIANA THROUGH THE BOARD OF**         **NO. 3:18-cv-00772-SDD-EWD**
**SUPERVISORS OF LOUISIANA STATE**
**UNIVERSITY AND AGRICULTURAL AND**
**MECHANICAL COLLEGE, ET AL.**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ST. GERMAIN'S MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Plaintiffs, Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of their son, Maxwell R. Gruver ("Max"), respectfully submit this Memorandum in Opposition to the Motion to Dismiss filed by Defendant Luke St. Germain (Rec. Doc. 197).

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On October 15, 2019, the Court granted Plaintiffs leave to file a First Amended Complaint,[1] which the Clerk filed into the record on the same day.[2] Through their First Amended Complaint, Plaintiffs named six new Individual Defendants, including Defendant St. Germain, who "participated in, gave material support to, authorized, encouraged, permitted and/or failed to prohibit or stop the hazing and misconduct that harmed and imperiled" Max and led to his death on September 14, 2017.[3]

Defendant St. Germain served as the Treasurer of the Louisiana State University ("LSU") chapter of the Phi Delta Theta Fraternity ("Phi Delt"), Louisiana Beta, in the fall of 2017,[4] and the First Amended Complaint details various acts and failures to act by him that caused or

---

[1] *See* Oct. 15, 2019 Order (Rec. Doc. 140).
[2] *See generally* First Amended Complaint (Rec. Doc. 141) (hereinafter, "First Amend. Compl.").
[3] *See id.* ¶¶ 37-42, 83(a).
[4] *See id.* ¶ 40.

1

contributed to cause Max's death. For example, two days before the Bible Study hazing ritual where Max was forced by Matthew Naquin, and other fraternity members, to consume dangerous – and ultimately, lethal – amounts of alcohol, Defendant St. Germain and the other Executive Board members of the Louisiana Beta met to discuss how Naquin's ongoing actions with the pledges were extreme and dangerous.[5] The Executive Board members, including Defendant St. Germain, agreed to address the issue at a chapter meeting later that day.[6] They also discussed imposing penalties on Naquin if his conduct and actions toward the pledges continued, including possible suspensions, fines, or expulsion from the fraternity, but none of those penalties were ever imposed.[7] During the meeting, the Executive Board members warned Naquin that his ongoing actions with the pledges were extreme and dangerous.[8] After the meeting, Defendant Philip Clark addressed Naquin individually about his conduct, and told him it was unacceptable.[9] Naquin blew off Defendant Clark and told him he would do what he wanted.[10]

In addition to knowing about – and being alarmed by – Naquin's conduct toward the pledges, Defendant St. Germain and the other Executive Board members also were aware that another fraternity member – Defendant Sean Paul Gott – was engaging in dangerous behavior toward the pledges.[11] Despite this knowledge – and despite the fact that, as Executive Board members, they had positions of authority within the fraternity and had agreed to abide by, enforce, and uphold Phi Delt's and the chapter's purported prohibitions on hazing, misuse and abuse of alcohol, and other related misconduct – Defendant St. Germain and the other Executive

---

[5] *See id.* ¶ 68.
[6] *See id.* ¶ 73.
[7] *Id.*
[8] *See id.* ¶ 74.
[9] *Id.*
[10] *Id.*
[11] *See id.* ¶ 75.

Board members knowingly and recklessly permitted Naquin and Defendant Gott to participate in, and direct a significant portion of, the Bible Study hazing ritual on September 13, 2017.[12] These decisions and failures to act by Defendant St. Germain (and others) had tragic consequences for Max.

During the Bible Study, fraternity members ordered Max to take a pull from a bottle of 190-proof Diesel alcohol whenever he incorrectly answered a question about the fraternity or the Greek alphabet.[13] While most of the pledges were made to take three or four pulls during Bible Study, Max was compelled to take at least 10 to 12 pulls.[14] Naquin and Defendant Gott were two of the most aggressive participants in the hazing.[15]

By the time Bible Study ended, Max was incapacitated and in visible need of emergency medical or other responsible care.[16] Max was placed unconscious on a couch.[17] Fraternity members placed a bucket beside him to catch vomit and kept watch over him for a few hours but then, eventually, abandoned him, alone and unconscious.[18]

Sometime around 9:00 a.m. on September 14, 2017, fraternity members summoned some of Max's pledge brothers to the fraternity house,[19] where Max was still on the couch, unresponsive.[20] Max's pledge brothers wanted to immediately call 911, but the fraternity members told them not to call.[21] Some fraternity members deliberately decided not to call 911 or

---

[12] *See id.* ¶¶ 69, 76-77.
[13] *See id.* ¶ 80.
[14] *See id.* ¶ 81.
[15] *See id.* ¶ 78.
[16] *See id.* ¶ 82.
[17] *See id.* ¶ 84.
[18] *See id.* ¶¶ 84-85.
[19] *See id.* ¶ 87.
[20] *Id.*
[21] *See id.* ¶ 88.

bring Max to a hospital – and/or instructed other fraternity members not to call 911 or bring Max to a hospital – because they were worried about getting in trouble for the hazing that put Max in his incapacitated and imperiled condition.[22]

After further unreasonable delay, the pledges finally took Max to a hospital, where he was pronounced dead.[23] His blood alcohol content was 0.495 when it was measured during his autopsy one-and-a-half days later.[24] A coroner later determined that Max died from acute alcohol intoxication with aspiration. Had Max been given reasonable and proper care when he lost consciousness on the evening of September 13, 2017, and/or during the hours before he was taken to the hospital in the late morning of September 14, 2017, he would have survived.[25]

On April 13, 2020, Defendant St. Germain filed a Motion to Dismiss, arguing that the claims against him should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), because (1) Plaintiffs' claims against him (purportedly) are untimely;[26] (2) "there is an absence of factual allegations" that would "create" liability against Defendant St. Germain "in his individual capacity"; and (3) "the Amended Complaint lacks any facts to support the conclusory allegations

---

[22] *Id.*
[23] *See id.* ¶¶ 90-91.
[24] *Id.*
[25] *See id.* ¶ 92.
[26] Defendant St. Germain makes the same central assertion that Defendants Philip Clark, Michael Comeaux, Jr., and Haider Lahari made in their previously filed – and pending – motions to dismiss – *i.e.*, that Plaintiffs' claims are barred by prescription because they (purportedly) do not relate back to the date of Plaintiffs' original Complaint under Fed. R. Civ. 15(c)(1)(C). *See* St. Germain Mem. (Rec. Doc. 197-1) at 6-8; Clark Mem. (Rec. Doc. 166-1) at 3-7; Comeaux Mem. (Rec. Doc. 161-1) at 2-6; Lahari Mem. (Rec. Doc. 189-1) at 3-7. In their Memoranda in Opposition to Defendant Clark's, Comeaux's, and Lahari's Motions to Dismiss, Plaintiffs explained why Defendants Clark's, Comeaux's, and Lahari's reliance on Rule 15(c)(1)(C) is misplaced. *See* Rec. Doc. 167 and Rec. Doc. 191 That reasoning applies equally to Defendant St. Germain's arguments regarding Rule 15(c)(1)(C). Plaintiffs incorporate their previous Memoranda in Opposition by reference and, in the abundance of caution and in accordance with LR7(f), reiterate those reasons, along with authority in support, below.

pled against Mr. St. Germain in his capacity as an officer of Phi Delt."[27]  All three of these arguments fail.

First, under Louisiana law, which applies to determine the timeliness of Plaintiffs' claims, interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.  Plaintiffs filed their original Complaint within the one-year prescription period applicable to Plaintiffs' wrongful death and survival claims.  The allegations in the First Amended Complaint plainly treat Defendant St. Germain as a joint tortfeasor with the Defendants named in the original Complaint.  Plaintiffs' original Complaint therefore interrupted the relevant prescription period against Defendant St. Germain.  Accordingly, Plaintiffs' claims against Defendant St. Germain are timely under Louisiana law, which applies here, and also relate back to Plaintiffs' original Complaint under Federal Rule of Civil Procedure 15(c)(1)(A), which Defendant St. Germain completely ignores.

Second, Plaintiffs' allegations against Defendant St. Germain are more than sufficient to state claims for relief against him under Louisiana law, which applies to Plaintiffs' state law wrongful death and survival claims.  That conclusion is underscored by a recent decision from the Court of Appeal of Louisiana, Third Circuit – which the Louisiana Supreme Court expressly declined to review – holding that executive officers of local chapters of national fraternities who agree to abide by and uphold their fraternities' rules against hazing and related misconduct have a duty to do so and can be personally liable for breaches of that duty that cause harm or damage to others.[28]

---

[27] *See* St. Germain Mem. (Rec. Doc. 197-1) at 5.
[28] *See Nizamutdinova v. Kappa Sigma Fraternity*, 18-886, p.11 (La. App. 3 Cir. 10/02/19), 2019 La. App. LEXIS 1764, at *16-17, *writ application denied*, 2019-01774 (La. 01/14/20), 2020 La. LEXIS 87.

Third, it is inapposite that Plaintiffs have failed to state a claim against Defendant St. Germain in his capacity as an officer of Phi Delt fraternity, because Plaintiffs do not assert "official capacity" claims against Defendant St. Germain in this case.

For these reasons and the reasons that follow, Defendant St. Germain's Motion to Dismiss should be denied.

## ARGUMENT

### I.  Legal Standard for a Rule 12(b)(6) Motion

When deciding a Rule 12(b)(6) motion to dismiss, a "court 'accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### II.  Plaintiffs' Claims Against Defendant St. Germain Are Not Time Barred

#### A.  The One-Year Limitation Periods for Plaintiffs' Wrongful Death and Survival Claims Are Prescriptive and Subject to Interruption

Louisiana law controls the statute of limitations – or prescription periods – applicable to Plaintiffs' wrongful death and survival claims. Plaintiffs assert those state law causes of action within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[29] As such, the Court "must follow state law where it would be required to do so if the action were based on diversity

---

[29] First Amend. Compl. ¶ 46.

6

of citizenship."[30]  "In diversity cases … federal courts apply state statutes of limitations and related state laws governing the tolling of the limitations period."[31]

"Louisiana's prescriptive period for survival and wrongful death actions is one year from the date of death."[32]  In 2014, the Louisiana Supreme Court held that the one-year time limitation for asserting a survival action under La. Civ. Code art. 2315.1(A) – like the one-year time limitation for asserting a wrongful death claim under La. Civ. Code art. 2315.2(B) – "is a period of liberative prescription rather than a period of preemption."[33]  Accordingly, the prescription periods for wrongful death and survival claims are both subject to interruption or suspension.[34]

Pursuant to Louisiana Civil Code article 2324(C), "[i]nterruption of prescription against one joint tortfeasors is effective against all joint tortfeasors."[35]  A suit that is timely filed against

---

[30] *Byes v. Accelerated Cash Flow*, No. 95-200, 1996 U.S. Dist. LEXIS 8790, at *5 (E.D. La. June 18, 1996) (citation omitted); *accord Henderson v. Turner*, No. 11-39, 2012 U.S. Dist. LEXIS 106629, at *19 (M.D. La. July 31, 2012) (applying the one-year prescription periods set out in La. Civ. Code art. 2315.1 and 2315.2 to plaintiffs' wrongful death and survival claims, which plaintiffs asserted together with federal civil rights claims under 42 U.S.C. § 1988 and 42 U.S.C. § 1983).
[31] *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989); *see also In re Frank*, 828 F. Supp. 2d 835 (E.D. La. 2011) ("As a threshold matter, the Court recognizes that Louisiana law controls … a federal court sitting in diversity will apply state prescription periods as substantive law.") (citations and internal quotations omitted).
[32] *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 542 (5th Cir. 2012) (citing La. Civ. Code arts. 2315.1(A), 2315.1(B)).
[33] *Watkins v. Exxon Mobil Corp.*, 2013-1545. P.12 (La. 05/07/14), 145 So. 3d 237, 244 (citing La. Civ. Code art. 2315.1(C); *see also Coleman v. OFS, Inc.*, 771 F.3d 815, 818(5th Cir. 2014) ("In *Watkins v. Excon Mobil Corp.*, the Supreme Court of Louisiana clearly held that the time period in Article 2315.1 is prescriptive and not preemptive.").
[34] *See Lennie v. Exxon Mobil Corp.*, 17-204 (La. App. 5 Cir. 06/27/18), 251 So. 3d 637, 649 n.9 ("In *Watkins*, the Supreme Court determined, under a plain language analysis of the statute, that the one-year period [for survival claims] is prescriptive rather than preemptive, and thus subject to interruption or suspension."); *Evans v. CanadianOxy Offshore Prod. Co.*, 98-835 (La. App. 3 Cir. 12/09/98), 730 So. 2d 466, 470 ("The one-year period for bringing a wrongful death action is prescriptive.  It can be interrupted or suspended.") (citation omitted).
[35] La. Civ. Code art. 2324(c).

one joint tortfeasor interrupts prescription as to all other joint tortfeasors.[36] Louisiana Civil Code article 2324(C) clearly applies to interrupt the prescription periods applicable to Plaintiffs' wrongful death and survival action claims against Defendant St. Germain.

### B. Defendant St. Germain Is a Joint Tortfeasor With the Other Defendants in This Action

"Under Louisiana law, joint and several liability may be imposed on 'persons whose separate wrongful actions, not done in concert, contribute in unknown proportions … to cause indivisible injury.'"[37] Similarly, "[u]nder Civil Code articles 2103 and 2324, and settled case law, joint tort-feasors are deemed solidary obligors, even though their concurrent negligence results from different acts or breaches of different obligations."[38]

The allegations in the First Amended Complaint clearly treat all of the Defendants – including Defendant St. Germain – as joint tortfeasors, and Plaintiffs seek a judgment against the Defendants "jointly and severally."[39] Indeed, the indivisible injuries at issue – Max's hazing, suffering, and death – were the result of various acts or failures to act by all of the Individual Defendants (and others, including LSU), as detailed in the First Amended Complaint.[40]

---

[36] *See Shepard ex rel. James v. Coleman*, 15-922, p. 11-12 (La. App. 3 Cir. 04/06/16), 189 So. 3d 552, 561 ("Thus, we find [La. Civ. Code art. 2324(C)] controls in the instant matter and conclude that the timely filed suit against State Farm acted to interrupt prescription as to all defendants … since they are joint tortfeasors."); *McKenzie v. Imperial Fire & Cas. Ins. Co.*, 12-1648, p. 9 (La. App. 1 Cir. 07/30/13), 122 So. 3d 42, 49 (finding that "interruption of prescription was effective against all joint tortfeasors," and "this interruption continues as long as the suit is pending."), *writ denied*, 129 So. 3d 534 (La. 2013); *Smith v. Fred's Stores of Tenn., Inc.*, No. 07-1496, 2007 U.S. Dist. LEXIS 81492, at *5-6 (E.D. La. Nov. 2, 2007) ("Thus it is well established under Louisiana law that if prescription is interrupted for one joint tortfeasor/solidary obligor it is interrupted for all joint tortfeasors/solidary obligor[s].").
[37] *Ford v. Murphy Oil U.S.A., Inc.*, 750 F. Supp. 766, 772 (5th Cir. 1990) (quoting *Thompson v. Johns-Manville Sales Corp.*, 714 F.2d 581, 582 (5th Cir. 1983)).
[38] *Duplechain v. Clausing Machine Tools*, 420 So.2d 720, 722 (La. App. 4th Cir. 1982) (citations omitted).
[39] First Amend. Compl., p. 66 (Prayer for Relief).
[40] *See, e.g.*, *id.* ¶¶ 56-97, 244-246, 249.

Thus, because the allegations treat the newly-added Individual Defendants and originally named Defendants as joint tortfeasors, Plaintiffs' timely filed original Complaint against the original Defendants interrupted prescription of Plaintiffs' wrongful death and survival claims against the newly-added Individual Defendants – including Defendant St. Germain.[41] It is therefore immaterial that Plaintiffs' claims do not relate back to the filing of the original Complaint under Rule 15(c)(1)(C),[42] because Plaintiffs do not need to rely upon Rule 15(c)(1)(C) for their claims against Defendant St. Germain to be timely.[43]

---

[41] *See Authement v. Wilkinson*, No. 1:16-CV-00151, 2017 U.S. Dist. LEXIS 130030, at *13 (W.D. La. July 11, 2017) (finding that because "the allegations treat Defendants as joint tortfeasors," a plaintiff's claim against a defendant named for the first time in an amended complaint filed after the expiration of the prescription period was not prescribed because the "timely filing of [the plaintiff's] original complaint against [the other defendants] interrupts prescription of [the plaintiff's] claims" against the newly named defendant) *report and recommendation adopted*, No. 1:16-CV-00151, 2017 U.S. Dist. LEXIS 129527 (W.D. La. Aug. 14, 2017); *Matthews v. Tangipahoa Par. Police Jury*, No. 16-2938, 2019 U.S. LEXIS 37562, at *16 (E.D. La. March 8, 2019) ("Thus, when Plaintiff filed his Original Complaint on April 7, 2016 suing certain named defendants, he interrupted prescription as to the remaining unnamed joint tortfeasors."); *Hultgren v. Construction South*, No. 99-3459, 2000 U.S. Dist. LEXIS 7908, at *2-3 (E.D. La. June 1, 2000).

[42] *See* St. Germain Mem. (Rec. Doc. 197-1) at 6-8.

[43] *See Sanchez v. Tangipahoa Parish Sheriff's Office*, No. 08-1227, 2010 U.S. Dist. LEXIS 504493, at *6-7 (E.D. La. April 22, 2010) (holding that the plaintiffs did "not need to rely upon relation back under Rule 15(c) for their claims" against police officers the plaintiffs proposed to add as defendants through a first amended complaint because "the plaintiffs' timely filing their complaint" against other joint tortfeasors "interrupted prescription of plaintiffs' claims" against the officers); *see also Furr v. City of Baker*, No. 15-426, 2017 U.S. Dist. LEXIS 129667, at *36-37 (M.D. La. Aug. 15, 2017) ("It is of no significance that Plaintiff's amendment substituting the John Does for named defendants does not relate back under Rule 15(c), because under arts. 1799 and 3503, it does not need to relate back, as the timely filing of suit against the City interrupted prescription and Plaintiff was free to name additional defendants that are solidarily liable with the City, even in the absence of John Doe placeholders."). Indeed, this Court made clear in *Pendarvis v. American Bankers Insurance Company of Florida* that "[a]ppellate courts have held that state laws determine the timeliness of state law claims and related issues such as which events commence an action ***or toll the statute of limitations***." *Pendarvis v. Am. Bankers Ins. Co.*, No. 06-772, 2008 U.S. Dist. LEXIS 123439, at *7 (M.D. La. Jan. 24, 2008) (emphasis added) (citing *Hensgens v. Deere & Company*, 869 F.2d 879 (5th Cir. 1989)).

### C. Plaintiffs' Claims Against Defendant St. Germain Relate Back to the Original Complaint Pursuant to Fed. R. Civ. P. 15(c)(1)(A)

Further, even if relation back under Rule 15(c) was the proper standard, Plaintiffs have met it here. Under Rule 15(c)(1)(A), "[a]n amendment to a pleading relates back to the date of the original pleading when … (A) the law that provides the applicable statute of limitations allows relation back.[44]" The applicable Louisiana law – Louisiana Civil Code article 2324(C) – allows relation back under these circumstances.[45] This means, in turn, that Plaintiffs' claims against Defendant St. Germain relate back to Plaintiffs' original Complaint pursuant to Rule 15(c)(1)(A), a subsection of Rule 15(c) that Defendant St. Germain (like Defendants Clark, Comeaux, and Lahari before him) overlooks.[46]

### III. Plaintiffs' Allegations Are More Than Sufficient to State a Claim for Relief Against Defendant St. Germain That Is Plausible on Its Face

Plaintiffs' allegations against Defendant St. Germain are more than sufficient to state claims for relief against him under Louisiana law, which applies to Plaintiffs' state law wrongful death and survival claims. It is simply not true, as Defendant St. Germain asserts, that "[P]laintiffs make no factual allegations that would give rise to … individual liability."[47]

---

[44] Fed. R. Civ. P. 15(c)(1)(A); *see also* Fed. R. Civ. P. 15 Advisory Committee Notes, 1991 Amendment ("**Paragraph (c)(1)**. This provision is new. It is intended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law. Generally, the applicable limitations law will be state law.").

[45] *See Boquet v. SWDI, LLC*, 07-0738, p. 6 (La. App. 1 Cir. 06/06/08), 992 So. 2d 1059, 1063 ("Louisiana Civil Code article 2324 provides that interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors. ***Thus, the addition of additional defendants in a suit will relate back to the date of the original if the defendants are joint tortfeasors***.") (emphasis added).

[46] *See, e.g.*, *Maronge v. Hunt Petro. Co.*, No. 08-4959, 2009 U.S. Dist. LEXIS 141358, at *5-6 (E.D. La. April 29, 2009) (agreeing with plaintiff's contention "that prescription was interrupted as to [a new defendant] when he filed this lawsuit, and that his amendment relates back to that date under Rule 15(c)(1)(A), because [the new defendant] is solidarily liable with the existing defendants under substantive Louisiana law").

[47] *See* St. Germain Mem. (Rec. Doc. 197-1) at 9.

10

As the Third Circuit Court of Appeal of Louisiana in *Nizamutdinova v. Kappa Sigma Fraternity* recently held, executive officers of local chapters of national fraternities – like Defendant St. Germain – have a duty to abide by and uphold their fraternities' rules against hazing and related misconduct by preventing and not engaging in the hazing of pledges when – like Defendant St. Germain – they voluntarily assume the responsibilities of executive officers and agree to abide by those rules.[48] In such circumstances, executive officers of local chapters of national fraternities – like Defendant St. Germain – can be held personally liable for breaches of that duty when those breaches contribute to cause harm or damage to others.[49]

In reaching that holding, the court in *Nizamutdinova* squarely rejected the notion that an executive officer's leadership position in a fraternity chapter immunizes him from personal liability.[50] The Court of Appeal held:

> Plaintiff has also, by alleging that the hazing activities are proscribed by the national fraternity and even the by-laws of the chapter, pled facts sufficient to impose personal liability on the officers for conduct explicitly prohibited by the organizations for which they serve as officers. Rather than shielding an officer or agent in such circumstances,
>
>> [t]he law is settled that if an officer or agent of a corporation through his fault injures another to whom he owes a personal duty, whether or not the act culminating in the injury is committed by or for the corporation, the officer or agent is liable personally to the injured third person, and it does not matter that liability might also attach to the corporation.
>
> *H. B. Buster Hughes, Inc. v. Bernard*, 318 So.2d 9, 12 (La.1975). Moreover, to allow the Individual Defendants to escape a potential duty and concomitant liability solely because of membership in a fraternity would allow them to perform any prohibited act with impunity. No disincentive would exist because the Individual

---

[48] *See Nizamutdinova v. Kappa Sigma Fraternity*, 18-886, p.11 (La. App. 3 Cir. 10/02/19), 2019 La. App. LEXIS 1764, at *16-17, *writ application denied*, 2019-01774 (La. 01/14/20), 2020 La. LEXIS 87.
[49] *See id.*
[50] *Id.* at *16.

11

>  Defendants' alleged egregious conduct, if proven, would be immunized.[51]

The holding in *Nizamutdinova* is directly applicable to Plaintiffs' claims against Defendant St. Germain. As discussed above, here, similar to the allegations in *Nizamutdinova*, Plaintiffs allege that Defendant St. Germain, as an Executive Board member of Louisiana Beta, had a position of authority within Louisiana Beta, and "had agreed to abide by, enforce, and uphold Phi Delt's and Louisiana Beta's purported prohibitions on hazing, misuse and abuse of alcohol, and other related misconduct, including Phi Delt's Risk Management Policies."[52] Phi Delt's Risk Management Policies, which were intended to provide education and guidance to chapter officers – like Defendant St. Germain – in performing their responsibilities, stated that "[i]t is not in conformity with Phi Delta Theta expectations that any member or Phikeia [i.e., pledge] would engage in abusive behavior against anyone."[53] Phi Delt's Risk Management Polices also expressly prohibited hazing and the misuse of alcohol and drugs, and mandated alcohol-free fraternity housing.[54]

Plaintiffs' allegations therefore plainly support a finding, well-grounded in Louisiana law, that by voluntarily assuming the responsibilities of an Executive Board member of Louisiana Beta, Defendant St. Germain "had a duty to abide by, enforce, and uphold Phi Delt's and Louisiana Beta's purported prohibitions on hazing, misuse and abuse of alcohol, and other related misconduct, including Phi Delt's Risk Management Policies, by preventing the misuse of

---

[51] *Nizamutdinova*, 2019 La. App. LEXIS 1764, at *19-20.
[52] *See* First Amend. Compl., ¶ 69.
[53] *See id.* ¶ 70.
[54] *See id.* ¶ 71.

alcohol in fraternity activities and at the fraternity house, and by preventing and not engaging in the hazing of pledges, like Max."[55]

Plaintiffs also allege more than sufficient facts to allow the Court to draw the reasonable inference that Defendant St. Germain breached that duty, and was negligent, when he, *inter alia*: (1) failed to abide by, enforce, and uphold Phi Delt's and Louisiana Beta's purported prohibitions on hazing, misuse and abuse of alcohol, and other related misconduct, including by failing to prevent the misuse of alcohol in fraternity activities and at the fraternity house and the hazing of pledges, which were the very activities that would ultimately harm and imperil Max; and (2) permitted Naquin and Defendant Gott to participate in and direct a significant portion of Bible Study on September 13, 2017, despite having specific knowledge that Naquin's and Defendant Gott's conduct toward the pledges was extreme and dangerous.[56]

Indeed, Defendant St. Germain is wrong that "the Complaint lacks any facts to support the conclusion that Mr. St. Germain knew or should have known of the alleged risks" to Max and his fellow pledges of failing to prohibit or stop the hazing of pledges or the misuse of alcohol in fraternity activities, and/or of permitting Naquin and Defendant Gott to participate in the September 13, 2017 Bible Study.[57] There is nothing conclusory about Plaintiffs' allegations regarding Defendant St. Germain's knowledge of Naquin's and Defendant Gott's dangerous conduct toward the pledges, or the dangers attendant to failing to exercise reasonable care to uphold Phi Delt's and Louisiana Beta's prohibitions on hazing, misuse and abuse of alcohol, and

---

[55] *See* First Amend. Compl., ¶ 242; *see also Nizamutdinova*, 2019 La. App. LEXIS 1764, at *16-17 ("By voluntarily assuming the responsibilities of executive officers, these men would further have had a duty to abide by and uphold Kappa Sig's Code of Conduct and Standards of Conduct as well as Epsilon-Chi's chapter by-laws by preventing and not engaging in the hazing of pledges, like Mr. Gallagher.").
[56] *See* First Amend. Compl., ¶¶ 246(a)-(d).
[57] *See* St. Germain Mem. (Rec. Doc. 197-1) at 5.

13

other related misconduct. Plaintiffs allege specific facts demonstrating that Defendant St. Germain was acutely aware of those risks and their foreseeable consequences.

For example, the Executive Board of Louisiana Beta, including Defendant St. Germain, was so concerned about Naquin's conduct toward the pledges that, on September 11, 2017, two days before Bible Study, they met specifically to discuss the issue.[58] The Executive Board members, including Defendant St. Germain, were sufficiently concerned about Naquin's actions that they "agreed to address the issue at a Louisiana Beta chapter meeting later that day and discussed imposing penalties on Naquin if his conduct and actions toward the pledges continued, including possible suspension, fines, or expulsion from the fraternity."[59] During the meeting, the Executive Board members warned Naquin that his ongoing actions with the pledges were extreme and dangerous.[60] However, despite their evident concern about the risks to pledges if Naquin's behavior continued, the Executive Board members, including Defendant St. Germain, did not impose any penalties on Naquin, and instead knowingly and recklessly permitted him to participate in and direct a significant portion of the Bible Study on September 13, 2017.[61]

Similarly, Defendant St. Germain, as well as the other Executive Board members, also were aware that Defendant Gott's conduct toward the pledges was dangerous, and involved the same risks that, left unchecked, ultimately resulted in the death of Max. In particular:

> Upon information and belief, five days before the September 11, 2017, meeting, on or around September 6, 2017, Naquin and Defendant Gott, among other fraternity members, had summoned the pledges to the Phi Delt fraternity house and ordered them to clean and to take pulls from a 1.75-liter bottle of alcohol. As a result of this compelled, excessive alcohol consumption, which was primarily instigated by Defendant Gott, at least one pledge lost

---

[58] *See* First Amend. Compl., ¶ 68.
[59] *Id.* ¶ 73.
[60] *See id.* ¶ 74.
[61] *See id.* ¶ 76.

14

> consciousness and had to be monitored throughout the night. Upon information and belief, the Individual Defendants [including Defendant St. Germain] were aware of these circumstances.[62]

As with Naquin, despite knowing that Defendant Gott's ongoing actions with the pledges were dangerous – and violated the fraternity's rules regarding hazing and alcohol – Defendant St. Germain (and others) knowingly and recklessly permitted Defendant Gott to participate in and direct a significant portion of Bible Study on September 13, 2017.[63]

These detailed and specific factual allegations are wholly distinguishable from the "legal conclusions and conclusory allegations" in *Norton v. Livingston Parish Detention Center*,[64] which Defendant St. Germain attempts to analogize to Plaintiffs' allegations.[65] As in *Nizamutdinova*, Plaintiffs' allegations clearly support a finding that Defendant St. Germain's actions and failures to act were necessary antecedents to Max's hazing and death. The only reasonable inferences to be drawn from Plaintiffs' well-pled allegations are that had Defendant St. Germain acted reasonably and exercised his authority as an Executive Board member of Louisiana Beta to enforce the fraternity's rules and policies against hazing, and taken appropriate, reasonable steps to ensure Naquin and Defendant Gott were not permitted to participate in or direct activities involving Louisiana Beta's pledges, the Bible Study would have

---

[62] *See id.* ¶ 75.
[63] *See id.* ¶ 77.
[64] *Norton v. Livingston Parish Det. Ctr.*, No. 13-437, 2013 U.S. Dist. LEXIS 142507, at *18 (M.D. La. Oct. 2, 2013). In *Livingston*, this Court held that the plaintiffs had failed to state a Section 1983 municipal liability claim based on an alleged "official policy" when there were "no factual allegation as to what these policies and procedures were, and whether or not they constituted an 'official policy' so as to hold [the defendant sheriff] liable in his official capacity." *Id.* at *14. Nonetheless, in granting the defendant's Rule 12(b)(6) motion, this Court granted the plaintiffs leave "to file a Second Amended Complaint remedying the deficiencies within 21 days." *Id.* at *25. As noted below, should the Court be inclined to grant Defendant St. Germain's Motion to Dismiss, in whole or in part, Plaintiffs request leave to amend to cure any purported deficiencies.
[65] *See* St. Germain Mem. (Rec. Doc. 197-1) at 12-14.

15

never occurred on September 13, 2017, Naquin and Defendant Gott would not have participated in and/or directed the Bible Study, and Max would not have been hazed or forced to consume dangerous (and ultimately lethal) amounts of alcohol on September 13, 2017. Under *Nizamutdinova*, these facts, when proven, will be more than sufficient to support a finding that Defendant St. Germain was negligent and liable to Plaintiffs for the death of their son.[66]

**IV.     Defendant St. Germain's Arguments Concerning "Official Capacity" Claims Are Inapposite Because Plaintiffs Do Not Assert "Official Capacity" Claims Against Defendant St. Germain**

Finally, Plaintiffs do not assert "official capacity" claims against Defendant St. Germain in his capacity as an officer of Louisiana Beta. Plaintiffs have not alleged that Defendant St. Germain is a public official. Nor have Plaintiffs named Defendant St. Germain as a Defendant as an alternative means of pleading a cause of action against a governmental entity.[67] Plaintiffs named Defendant St. Germain as a Defendant "individually and as an agent of Phi Delta Theta Fraternity and Louisiana Beta Chapter of Phi Delta Theta Fraternity," because his role as an Executive Director of Louisiana Beta, and as an agent of Louisiana Beta and Phi Delt, provide an

---

[66] *See Nizamutdinova*, 2019 La. App. LEXIS 1764, at *20-21 ("Accordingly, Plaintiff, through her amended petition, has alleged the breach of a duty on the part of the Individual Defendants that was allegedly imposed to protect against the harm sustained and that was a contributing cause thereto. If Plaintiff can prove these allegations by a preponderance of the evidence, then a jury could reasonably find the Individual Defendants were negligent and liable to Plaintiff for the death of her son.").

[67] *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability against a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and internal quotations omitted); *Latiolais v. Cravins*, 484 Fed. Appx. 983, 989 (5th Cir. 2012) ("Generally, an official-capacity suit is just another way of pleading an action against an entity of which an officer is an agent and are treated as suits against the State.") (citation omitted); *Bluitt v. Houston Indep. Sch. Dist. & Steven Amstutz*, 236 F. Supp. 2d 703, 726 (S.D. Tex. 2012) (explaining that "[o]fficial capacity lawsuits are typically an alternative means of pleading an action against the governmental entity involved").

additional, alternative basis for holding Louisiana Beta and Phi Delt liable for the negligent acts of Defendant St. Germain, as their agent.[68]

Moreover, Defendant St. Germain's liability in this case is *not*, as he contends, "strictly derivative of his position as an officer of the organization."[69] Plaintiffs are *not* seeking to hold Defendant St. Germain liable simply because he was serving as an Executive Director of Louisiana Beta at the time Max was hazed and killed. Defendant St. Germain's liability arises directly from his own negligent acts and omissions, as explained above and detailed in the First Amended Complaint. As the court in *Nizamutdinova* made clear, the fact that Defendant St. Germain was an officer of Louisiana Beta at the time of those negligent acts and omissions does not shield him from personal liability in this case.[70]

## CONCLUSION

For the foregoing reasons, Defendant St. Germain's Motion to Dismiss should be denied. At a minimum, should the Court be inclined to grant Defendant St. Germain's Motion to Dismiss, in whole or in part, Plaintiffs request leave to amend to cure any purported deficiencies.[71]

Dated: May 1, 2020                              Respectfully submitted,

/s/ Jonathon N. Fazzola
**THE FIERBERG NATIONAL LAW GROUP**
Douglas E. Fierberg* – Lead Attorney
Jonathon N. Fazzola*
Lisa N. Cloutier*
161 East Front Street, Suite 200

---

[68] *See, e.g.*, La. C.C. art. 2320.
[69] *See* St. Germain Mem. (Rec. Doc. 197-1) at 10.
[70] *Nizamutdinova*, 2019 La. App. LEXIS 1764, at *19-20.
[71] *See, e.g.*, *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("Although a court may dismiss [a deficient] claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.").

17

Traverse City, MI  49684
Telephone: (231) 933-0180
Facsimile: (231) 252-8100
Email: dfierberg@tfnlgroup.com
Email: jfazzola@tfnlgroup.com
Email: lcloutier@tfnlgroup.com
**Admitted Pro Hac Vice*

/s/ J. Lane Ewing, Jr.
**CAZAYOUX EWING LAW FIRM**
Donald J. Cazayoux, Jr. (LBN 20742)
J. Lane Ewing, Jr. (LBN 29854)
257 Maximilian Street
Baton Rouge, LA  70802
Telephone: (225) 650-7400
Facsimile: (225) 650-7401
Email: don@cazayouxewing.com
Email: lane@cazayouxewing.com

*Attorneys for Plaintiffs Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of Maxwell R. Gruver, deceased*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

Dated: May 1, 2020                               Respectfully submitted,

/s/ Jonathon N. Fazzola
**THE FIERBERG NATIONAL LAW GROUP**
Douglas E. Fierberg* – Lead Attorney
Jonathon N. Fazzola*
Lisa N. Cloutier*
161 East Front Street, Suite 200
Traverse City, MI  49684
Telephone: (231) 933-0180
Facsimile: (231) 252-8100
Email: dfierberg@tfnlgroup.com
Email: jfazzola@tfnlgroup.com
Email: lcloutier@tfnlgroup.com
*Admitted Pro Hac Vice

/s/ J. Lane Ewing, Jr.
**CAZAYOUX EWING LAW FIRM**
Donald J. Cazayoux, Jr. (LBN 20742)
J. Lane Ewing, Jr. (LBN 29854)
257 Maximilian Street
Baton Rouge, LA  70802
Telephone: (225) 650-7400
Facsimile: (225) 650-7401
Email: don@cazayouxewing.com
Email: lane@cazayouxewing.com

*Attorneys for Plaintiffs Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of Maxwell R. Gruver, deceased*