## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**STEPHEN M. GRUVER, ET AL.**                                    CIVIL ACTION

**v.**

**STATE OF LOUISIANA THROUGH THE BOARD OF**         NO. 3:18-cv-00772-SDD-EWD
**SUPERVISORS OF LOUISIANA STATE**
**UNIVERSITY AND AGRICULTURAL AND**
**MECHANICAL COLLEGE, ET AL.**

## FOURTH STATUS REPORT

**A.    JURISDICTION**

**What is the basis for the jurisdiction of the Court?**

**Plaintiffs' Position:** This Court has subject matter jurisdiction over this matter pursuant

to 28 U.S.C. § 1331, because this litigation involves claims arising under Title IX of the

Education Amendments of 1972, 20 U.S.C § 1681, *et seq.*  This Court has supplemental

jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as they are so

related to Plaintiffs' claims made under Title IX, 20 U.S.C. § 1681, *et seq.*, that they form part of

the same case or controversy under Article III of the United States Constitution.

**Defendants' Position(s):**

•        **Defendant State of Louisiana through the Board of Supervisors of Louisiana**

**State University and Agricultural and Mechanical College ("LSU"):**  LSU contends it is

immune from suit in this or any Federal Court pursuant to the Eleventh Amendment to the

United States Constitution for the reasons more fully described in its Motion to Dismiss pursuant

to Rule 12(b) of the Federal Rules of Civil Procedure (Rec. Doc. 51).  On August 18, 2019, LSU

filed a Notice of Appeal to the U.S. Court of Appeals for the Fifth Circuit, appealing the Court's

Ruling Granting in Part and Denying in Part LSU's Motion to Dismiss (Rec. Doc. 116), insofar

as the Ruling denied LSU's Motion to Dismiss for Lack of Jurisdiction pursuant to Fed. R. Civ.

P. 12(b)(1) and the Eleventh Amendment to the U.S. Constitution (Rec. Doc. 124).  On May 12, 2020, the U.S. Court of Appeals for the Fifth Circuit, in an opinion by the Honorable Circuit Judge Costa that was joined by the Honorable Circuit Judges Southwick and Duncan, affirmed the Court's denial of LSU's motion to dismiss for lack of jurisdiction.  LSU intends to file a Petition for a Writ of Certiorari in the United States Supreme Court on this issue and maintains that this Court is deprived of jurisdiction over Plaintiffs' claims against LSU while LSU's appeal is pending. *See Williams v. Brooks*, 996 F.2d 728, 730 n.2 (5th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985)).

- **Defendant Hall:**  Hall contends that there is no federal jurisdiction over the claims against him based on the Title IX claims, and that the claims against him do not arise out of, nor are they related to plaintiffs' claims under Title IX, 20 U.S.C. § 1681, *et seq.*

- **Defendant Comeaux:** Michael Comeaux, Jr. contends that there is no federal jurisdiction over the claims against him based on Title IX claims, and that the claims against him do not arise of, nor are they related to plaintiffs' claims under Title IX, 20 U.S.C. § 1681, *et seq.*

- **Defendant Clark:** Philip Clark contends that there is no federal jurisdiction over the claims against him based on Title IX claims, and that the claims against him do not arise of, nor are they related to plaintiffs' claims under Title IX, 20 U.S.C. § 1681, *et seq.*

- **Defendant Pennison:** Sean Pennison contends that there is no federal jurisdiction over the claims against him based on Title IX claims, and that the claims against him do not arise of, nor are they related to plaintiffs' claims under Title IX, 20 U.S.C. § 1681, *et seq.*

## B.    BRIEF EXPLANATION OF THE CASE

1.    **Plaintiffs' Response:**  This case arises out of the tragic death of Plaintiffs' son, Maxwell R. Gruver, who died on September 14, 2017, from alcohol poisoning as a result of

being hazed by his LSU-recognized fraternity and its members.  At the time of his death, Max

was a freshman at LSU and a fraternity pledge of Defendants Phi Delta Theta Fraternity and

Louisiana Beta Chapter of Phi Delta Theta Fraternity.  Plaintiffs assert claims arising under Title

IX of the Education Amendments of 1972, 20 U.S.C. 1681, *et seq*., against Defendant Board of

Supervisors of Louisiana State University and Agricultural and Mechanical College, and state

law claims for negligence resulting in wrongful death against all of the other Defendants.

      **2.**      **Response of Defendant Zachary T. Hall:**  As set forth in his answer, Zachary

Hall denies that he is responsible for the death of Mr. Gruver.

      **3.**      **Response of Defendant Sean Paul Gott:**  As set forth in his answer, Sean Paul

Gott denies that he is responsible for the death of Mr. Gruver.

      **4.**      **Response of Defendant LSU:**  LSU denies the substance of Plaintiff's

allegations insofar as they are directed at LSU. Further, LSU maintains that it is inappropriate to

reach the merits of Plaintiffs' case because Plaintiffs' have failed to state a claim upon which

relief may be granted under Title IX, the only proffered basis for federal jurisdiction against

LSU. Moreover, LSU is immune from suit in Federal Court pursuant to the Eleventh

Amendment of the United States Constitution. Although this Court denied LSU's Motions to

Dismiss on these grounds, and the United States Court of Appeals for the Fifth Circuit affirmed

this Court's ruling on May 12, 2020, LSU intends to file a Petition for a Writ of Certiorari in the

United States Supreme Court.

      **5.**      **Response of Defendant Ryan M. Isto:**  Ryan Isto denies that he was responsible

for the death of Mr. Gruver.

      **6.**      **Response of Defendant Michael Comeaux, Jr.:**  Michael Comeaux, Jr. denies

that he was responsible for the death of Max Gruver. In truth and in fact, he was not even present

at the fraternity house during the alleged hazing, but was studying at the library.

7.     **Response of Defendant Philip Clark:** As this Court is aware, a Motion to Dismiss filed by Mr. Clark is pending. However, for the avoidance of doubt, Philip Clark denies that he was responsible in any way for the death of Mr. Gruver. Furthermore, Mr. Clark was not present at the fraternity house on the night in question.

8.     **Response of Defendant Daltin Babineaux:** Daltin Babineaux denies that he was responsible for the death of Max Gruver. In truth and in fact, he was not present at the fraternity house during the alleged hazing.

9.     **Response of Defendant St. Germain:** As set forth in his Motion to Dismiss, Luke St. Germain asserts that plaintiffs have failed to state a cause of action against him both because the claims asserted against him are prescribed and because plaintiffs' Complaint lacks facts to support a plausible cause of action against Mr. St. Germain. Further, Mr. St. Germain denies that he was responsible for the death of Mr. Gruver.

10.    **Response of Defendant Sean Pennison:** Sean Pennison adopts and reiterates the answer he filed to Plaintiffs' amended complaint.

C.    **PENDING MOTIONS**

**List any pending motion(s), the date filed, and the basis of the motion(s):**

1.     **LSU's Notice of Appeal:**  On August 18, 2019, LSU filed a Notice of Appeal from the Court's July 19, 2019 Ruling Granting in Part and Denying in Part LSU's Motion to Dismiss, insofar as the Ruling denied LSU's Motion to Dismiss for Lack of Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (Rec. Doc. 124).  As noted above, on May 12, 2020, the U.S. Court of Appeals for the Fifth Circuit, in an opinion by the Honorable Circuit Judge Costa that was joined by the Honorable Circuit Judges Southwick and Duncan, affirmed the Court's denial of LSU's

motion to dismiss for lack of jurisdiction.  LSU intends to file a Petition for a Writ of Certiorari in the United States Supreme Court.

2.    **Defendants Comeaux, Clark's, Laghari's, and St. Germain's Motions to Dismiss:**  Defendants Comeaux, Clark, Laghari, and St. Germain filed Motions to Dismiss on November 29, 2019, December 5, 2019, February 24, 2020, and April 13, 2020,  respectively, on the purported grounds that Plaintiffs' claims against them are time barred.  Rec. Doc. 161, 166, 189, and 197.  Defendant St. Germain asserted the additional ground that the allegations in the First Amended Petition are insufficient to state a cause of action against him in his individual capacity or as an Executive Board member of the Louisiana Beta Chapter of Phi Delta Theta Fraternity.  *See* Rec. Doc. 197.  Plaintiffs filed oppositions to all of those motions (Rec. Doc. 167, 191, and 202), which remain pending.

3.    **Defendant Babineaux's Motion to Set Aside Default:**  On February 13, 2020, upon a Request for Entry of Default from Plaintiffs (Rec. Doc. 183), the Clerk entered a default against Defendant Daltin Babineaux.  *See* Rec. Doc. 183.  On March 13, 2020, Defendant Babineaux filed a Consent Motion to Set Aside Clerk's Entry of Default and Withdrawal of Motion to Dismiss Pursuant to FRCP 12(b)(6).  As indicated in the motion, Plaintiffs do not oppose that motion and consent to the relief requested therein.

D.    **ISSUES**

**List the principal legal issues involved and indicate whether or not any of those issues are in dispute:**

1.    **Plaintiffs' Response:**

Plaintiffs contend the principal legal issues involved in this case are as follows:

i.    Whether Defendant LSU violated Title IX by engaging in a systematic, intentional, and differential treatment of male students seeking the educational opportunities and benefits of LSU Greek Life and, if so,

whether such discrimination was a proximate cause of Max Gruver's hazing and/or death.

ii.    Whether any negligence and/or fault of each of the non-LSU Defendants were the cause in fact of Max Gruver's hazing and/or death.

iii.    Whether the non-LSU Defendants are jointly and solidarily liable for their conduct under federal law or Louisiana Civil Code article 2324.

iv.    The extent of damages sustained by, and owed to, Plaintiffs, individually and on behalf of Max Gruver, as a result of the hazing and/or death of Max.

v.    Whether any negligence and/or fault of any third parties were the cause in fact of Max Gruver's hazing and/or death.

vi.    Whether Max Gruver was comparatively or contributorily negligent or at fault in his hazing and/or death.

vii.    Whether any negligence and/or fault of Max Gruver, and/or responsible third parties, were the cause in fact of Max Gruver's hazing and/or death.

**2.    Defendant LSU's Response:[1]**

i.    Whether the Eleventh Amendment of the United States Constitution bars the prosecution of Plaintiffs' claims under Title IX and Louisiana State Law in this or any Federal Court.

**3.    Defendant Hall's Response:**

i.    Whether Hall was an agent of the fraternity.

ii.    Whether Hall participated in any hazing of the decedent.

iii.    Whether Hall owed any duty to Max Gruver and whether any such duty was breached.

iv.    Whether Hall was negligent and whether such negligence was a cause of plaintiffs' injuries.

---

[1] LSU submits this preliminary legal issue, which is fully briefed in LSU's Motion to Dismiss (Rec. Doc. 51) and the parties' briefing in the United States Court of Appeals for the Fifth Circuit, at this time. The myriad other legal issues implicated by Plaintiffs' claims will be addressed once these threshold issues of jurisdiction and Constitutional immunity are resolved by the Fifth Circuit.

      v.      The extent of the negligence, if any, of the decedent and any other persons or entities.

**4.      Defendant Gott's Response:**

      i.      Whether Gott was an agent of the fraternity.

      ii.      Whether Gott participated in hazing of the decedent.

      iii.      Whether Gott owed any duty to Max Gruver and whether any such duty was breached.

      iv.      Whether Gott was negligent and whether such negligence was a cause of plaintiffs' injuries.

      v.      The extent of the negligence, if any, of the decent and any other persons or entities.

**5.      Defendant Isto's Response:**

      i.      Whether Isto participated in any hazing of Mr. Gruver.

      ii.      Whether Isto breached any duty owed to Mr. Gruver.

      iii.      Whether Isto was negligent in any manner.

      iv.      Whether Isto caused Mr. Gruver to drink any alcohol on the night in question.

      v.      Whether Mr. Gruver was comparatively or contributorily negligent or at fault in his death.

      vi.      Whether any negligence and/or fault of Mr. Gruver, and/or responsible third parties and co-defendants were the cause in fact of Mr. Gruver's death.

**6.      Defendant Comeaux's Response:**

      i.      Whether Comeaux participated in any hazing of Mr. Gruver.

      ii.      Whether Comeaux breached any duty owed to Mr. Gruver.

      iii.      Whether Comeaux was negligent in any manner.

      iv.      Whether Mr. Gruver was comparatively or contributorily negligence or at fault in his death.

v.      Whether any negligence and/or fault of Mr. Gruver, and/or responsible third parties and co-defendants were the cause in fact of Mr. Gruver's death.

vii.    Whether the claims against Comeaux are time barred.

**7.      Defendant Clark's Response:**

i.      Whether Clark was an agent of the fraternity.

ii.     Whether Clark participated in any alleged hazing of Max Gruver or any pledge.

iii.    Whether Clark owed any duty to Max Gruver and whether any such duty was breached.

iv.     Whether Clark was negligent and whether such negligence was a cause of plaintiffs' injuries.

v.      Whether Clark caused any pledge to drink any alcohol on the night in question.

vi.     The extent of the negligence, if any, of Max Gruver and any other persons or entities, and whether any such negligence was the cause in fact of Mr. Gruver's death.

vii.    Whether the claims against Clark are time barred.

viii.   Other issues listed by any other party.

**8.      Defendant Babineaux's Response:**

i.      Whether Babineaux was an agent of the fraternity.

ii.     Whether Babineaux participated in any alleged hazing of Max Gruver or any pledge.

iii.    Whether Babineaux owed any duty to Max Gruver and whether any such duty was breached.

iv.     Whether Babineaux was negligent and whether such negligence was a cause of Plaintiff's injuries.

v.      Whether Babineaux caused any pledge to drink any alcohol on the night in question.

    vi.     The extent of the negligence, if any, of Max Gruver and any other persons or entities, and whether any such negligence was the cause in fact of Mr. Gruver's death.

    vii.    Whether the claims against Babineaux are time barred.

**9.    Defendant St. Germain's Response:**

    i.      Whether St. Germain was an agent of the fraternity.

    ii.     Whether St. Germain participated in hazing of Max Gruver.

    iii.    Whether St. Germain owed any duty to Max Gruver and whether any such duty was breached.

    iv.    Whether St. Germain was negligent and whether such negligence was a cause of plaintiffs' injuries.

    v.     The extent of the negligence, if any, of Max Gruver and any other persons or entities.

    vi.     Whether the claims against St. Germain are time barred.

    vii.    Whether St. Germain caused any pledge to drink any alcohol on the night in question.

    viii.   Other issues listed by any other party.

**1.    Defendant Pennison's Response:**

    i.      Whether Pennison participated in any hazing of Mr. Gruver.

    ii.     Whether Pennison breached any duty owed to Mr. Gruver.

    iii.    Whether Pennison was negligent in any manner.

    iv.    Whether Mr. Gruver was comparatively or contributorily negligent or at fault in his death.

    v.     Whether any negligence or fault of Mr. Gruver or of third-parties and co-defendants were the cause in fact of Mr. Gruver's death.

    vii.    Whether the claims against Pennison are time barred.

E.    **DAMAGES**

**Separately, for each party who claims damages or an offset, set forth the computation of damages or the offset:**

1.    **Plaintiffs' calculation of damages:**  The amount of Plaintiffs' monetary damages will be established through discovery and at the trial of this matter.  If Plaintiffs prevail on their claims under Title IX of the Education Amendments of 1972, 20 U.S.C § 1681, *et seq*., against Defendant LSU, they will seek attorneys' fees and costs under applicable law.

2.    **Defendants' calculation of offset and/or Plaintiffs' damages:**

•    **Defendant Hall's Response:**  Defendant Hall has asserted that the negligence of the decedent and of others was the cause of plaintiffs' loss, and that he is not responsible for the negligence or fault of others.  Defendant contends that there is no evidence to support an award for decedent's conscious pain and suffering.

•    **Defendant Gott's Response:**  Defendant, Sean Paul Gott, has asserted that Max Gruver was comparatively negligent which serves to bar or reduce any recovery by his parents.  Defendant, Sean Paul Gott, also asserts that he is not responsible for any damages attributable to a violation of Title IX of the Education Amendments of 1972, 20 U.S.C. section 1681, *et seq.* nor can he be held solidarily liable with any defendant in this proceeding.  Sean Paul Gott asserts that the plaintiff's monetary demand would suggest a claim for punitive damages which is not authorized under any State or Federal statute insofar as this matter is concerned.  Finally, Sean Paul Gott asserts that other parties for whom he is not responsible, are responsible for the plaintiffs' damages.

•    **Defendant LSU's Response:** Defendant LSU denies that it is liable for any portion of Plaintiffs' damages. Even assuming Plaintiffs succeed on their Title IX claim,

Plaintiffs' damages resulted from intervening and superseding causes, including but not limited to, the criminal actions of third parties and Plaintiffs' decedent's own actions.

> **Defendant Isto's Response:**  Defendant, Isto, denies liability for any damages of any kind.

> **Defendant Comeaux's Response:** Defendant, Comeaux, denies liability for any damages of any kind.

> **Defendant Clark's Response:** Defendant, Clark, denies liability for any damages of any kind.

> **Defendant Babineaux's Response:** Defendant Babineaux denies liability for any damages of any kind.

> **Defendant St. Germain's Response:** Defendant, Luke St. Germain, denies liability for any damages of any kind and asserts that he is entitled to his costs for defending this litigation.

> **Response of Defendant Sean Pennison:** Sean Pennison adopts and reiterates the answer he filed to Plaintiffs' amended complaint.

## F.    SERVICE

> **Identify any unresolved issues as to waiver or service of process, personal jurisdiction, or venue:**

> **Plaintiffs' Response:**  There are no unresolved issues as to waiver or service of process, personal jurisdiction, or venue.

> **Defendants' Response(s):**  None.

**G.    DISCOVERY**

    **1.    Initial Disclosures:**

        **A.    Have the initial disclosures required under FRCP 26(a)(1) been completed?**

            [  ] YES    [X] NO

        **B.    Do any parties object to initial disclosures?**

            [X] YES    [  ] NO

For any party who answered *yes*, please explain your reasons for objecting.

Please see Section C, above, regarding LSU's Notice of Appeal.  LSU contends that given its appeal, discovery, including the exchange of initial disclosures, is inappropriate at this time.

*        *        *        *        *

The parties have agreed to refrain from exchanging initial disclosures until the Court has an opportunity to provide guidance on the issue.

    **2.    Briefly describe any discovery that has been completed or is in progress:**

**By Plaintiffs:**  On November 2, 2018, Plaintiffs served Requests for Production on Phi Delta Theta Fraternity and the Louisiana Beta House Corporation (the "Fraternity Defendants").  After Plaintiffs served that discovery, Plaintiffs and the Fraternity Defendants agreed to mediate and, as noted below, during that mediation Plaintiffs reached an agreement in principle to settle their claims against the Fraternity Defendants.  As a result of that mediation and the settlement in principle that resulted from it, the Fraternity Defendants did not respond to Plaintiffs' Requests for Production.

In addition, Plaintiffs served LSU with limited written discovery in connection with LSU's Motion to Dismiss, for which LSU provided timely responses.

**By Defendants:**

- None.

3. **Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery.**

**Plaintiffs' Response:** Plaintiffs contend that, subject to Court approval, it is appropriate for the parties to enter into a stipulated confidentiality and protective order at the outset of discovery to protect sensitive information and records that will be sought and exchanged in discovery, including information and records protected by the privacy rules under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), *see* 45 CFR § 164.512(e), and the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g *et seq.*

**Defendants' Response(s):**

- **Defendant Isto's Response:** Defendant Isto agrees with the Plaintiffs' position.

- **Defendant Clark's Response:** Defendant Clark agrees with the Plaintiffs' position.

- **Defendant Comeaux's Response:** Defendant Comeaux agrees with the Plaintiffs' position.

- **Defendant Pennison's Response:** Defendant Pennison agrees with Plaintiffs' position.

4. Discovery from experts:

**Identify the subject matter(s) as to which expert testimony will be offered:**

**By Plaintiffs:** Plaintiffs anticipate that expert testimony will be offered regarding (1) the cause of Max Gruver's death and whether Max would have survived had he been timely provided with emergency medical treatment after he became dangerously intoxicated as a result of compelled alcohol consumption; (2) the conscious pain and suffering Max endured while he

was being hazed and during the hours he struggled to stay alive after becoming dangerously intoxicated as a result of compelled alcohol consumption; and (3) the loss of comfort, services and support Plaintiffs suffered as a result of the death of their son.

**By Defendants:**

- **By Defendant Gott:**  Defendant, Sean Paul Gott, may present expert testimony that will establish that Max Gruver did not experience conscious pain and suffering after he fell asleep on the sofa at the fraternity home.  Sean Paul Gott may also present expert testimony as noted by other Defendants to this proceeding.

- **By Defendant LSU:**  LSU may present expert testimony to address the cause of Max Gruver's death and other issues surrounding Mr. Gruver's medical condition. LSU reserves the right to supplement this response.

- **By Defendant Isto:**  Isto may present expert testimony to address the cause of Max Gruver's death and other issues surrounding Mr. Gruver's medical condition.  Isto reserves the right to supplement this response.

- **By Defendant Comeaux:** Comeaux may present expert testimony to address the cause of Max Gruver's death and other issues surrounding Mr. Gruver's medical conditions. Comeaux reserves the right to supplement this response.

- **By Defendant Clark:** Clark may present expert testimony to address the cause of Max Gruver's death and other issues surrounding Mr. Gruver's medical conditions. Clark reserves the right to supplement this response.

- **By Defendant Babineaux:** Babineaux may present expert testimony to address the cause of Max Gruver's death and other issues surrounding Mr. Gruver's medical conditions. Comeaux reserves the right to supplement this response.

- **Defendant St. Germain:** St. Germain may present expert testimony to address the cause of Max Gruver's death and other issues surrounding Mr. Gruver's medical conditions, including assertions of conscious pain and suffering. St. Germain reserves the right to supplement this response.

- **Defendant Sean Pennison:** Pennison may present expert testimony to address the cause of Max Gruver's death and other issues surrounding Mr. Gruver's medical conditions. Pennison reserves the right to supplement this response.

## H.    PROPOSED SCHEDULING ORDER

**Plaintiffs' Response:**  In light of LSU's appeal, Defendant Comeaux's, Defendant Clark's, Defendant Laghari's, and Defendant St. Germain's Motions to Dismiss, and the current COVID-19 pandemic, the parties have not had substantive discussions regarding a proposed scheduling order.  The COVID-19 pandemic and the outcomes of LSU's appeal and the pending motions to dismiss could impact the scheduling of discovery and other matters in this case. Counsel for Plaintiffs have drafted the proposed scheduling order that follows below in case the Court determines that a stay of discovery, in any form, is not appropriate at this time.  Plaintiffs reserve the right to modify or withdraw this proposal should the Court order that discovery be stayed, in whole or part.

**LSU's Response:**  LSU objects to the entry of a scheduling order at this time.

**St. Germain's Response:**  St. Germain asserts that a scheduling order should not be issued at this time.  If a scheduling order is issued, then St. Germain asserts that those dates provided by plaintiffs are too ambitious given the Covid 19 issues, the pending Motion to Dismiss, and the fact that St. Germain was only recently added as a defendant.

**<u>Plaintiffs' Proposed Scheduling Order</u>:**

1.      If the parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline:  <u>N/A.</u>

2.      Recommended deadlines to join other parties or to amend the pleadings: <u>October 27, 2020</u>.

3.      Filing all discovery motions and completing all discovery except experts: <u>May 5, 2021</u>.

4.      Disclosure of identities and resumes of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

       **Plaintiff(s):** <u>June 7, 2021</u>.

       **Defendant(s):** <u>July 19, 2021</u>.

5.      Exchange of expert reports:

       **Plaintiff(s):** <u>June 21, 2021</u>.

       **Defendant(s):** <u>August 3, 2021</u>.

       **Plaintiffs' Rebuttal Expert(s):** <u>August 31, 2021</u>.

6.      Completion of discovery from experts: <u>September 30, 2021</u>.

7.      Filing dispositive motions and Daubert motions: <u>November 1, 2021</u>.

8.      All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order.  The deadlines will be determined based on the presiding judge's schedule, within the following general parameters.  The parties should not provide any proposed dates for these remaining deadlines.

    a.      Deadline to file pre-trial order (approximately 16 weeks after dispositive motion deadline).

      b.      Deadline to file motions in limine (approximately 20-22 weeks after dispositive motion deadline).

      c.      Deadline to file responses to motions in limine (approximately 22-24 weeks after dispositive motion deadline).

      d.      Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline).

      e.      Deadline to submit joint jury instructions, voir dire, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline).

      f.      Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline).

      g.      Trial date (approximately 27-29 weeks after dispositive motion deadline).

9.      If the general outline of proposed deadlines does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case.

## I.    TRIAL

1.    Has a demand for trial by jury been made?

                [X] YES    [ ] NO

2.      Estimate the number of days that trial will require.

      **Plaintiffs' Response:**  Plaintiffs estimate the trial in this matter will require between 10 and 14 days.

**Defendants' Response:**

- **Defendant Isto's Response:**  Defendant Isto estimates the defense case will require 5 days.

- **Defendant Babineaux's Response:** Defendant Babineaux estimates the defense case will require 3 days.

- **Defendant Comeaux's Response:** Defendant Comeaux estimates that the trial will take between 7 and 10 days.

- **Defendant St. Germain's Response:** St. Germain estimates that the entire trial will take between 10-14 days.

- **Defendant Pennison's Response:**  Defendant Pennison estimates the trial will require 10 to 14 days.

## J.    OTHER MATTERS

Are there any specific problems the parties wish to address at the scheduling conference?

[X] YES    [ ] NO

i.    If the answer is *yes*, please explain:

The current COVID-19 pandemic and the Court's rulings on the motions to dismiss filed by Defendants Comeaux, Clark, Laghari, and St. Germain, discussed in Section C, above, could impact the timing, sequence, and scope of discovery in this case.  To the extent the pending motions have not been resolved before the scheduling conference, the parties would like to address those issues at the scheduling conference, including any unresolved issues related to the timing, sequence, and scope of discovery related to the COVID-19 pandemic and/or that may arise out of the rulings on the motions.

      ii.     If the answer is *no*, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report?  **CHECK "NO" IF YOU HAVE NOT SUBMITTED JOINT PROPOSED DEADLINES.**

                [ ] YES    [ ] NO

**K.**    **SETTLEMENT**

    1.     Please set forth what efforts, if any, the parties have made to settle this case to date.

        **Plaintiffs' Response:**  Plaintiffs have settled their claims against Hudson B. Kirkpatrick, Elliott D. Eaton, Matthew A. Naquin, Zachary A. Castillo, Patrick A. Forde, Phi Delta Theta Fraternity, Louisiana Beta House Corporation, and Louisiana Beta Chapter of Phi Delta Theta Fraternity, and those Defendants have been dismissed from this case.  Plaintiffs also have reached a partial settlement with Ryan M. Isto, in accordance with *Gasquet v. Commercial Union Insurance Company*, 391 So. 2d 466 (La. App. 4th 1980), *writ denied*, 396 So. 2d 921 (La. 1981), pursuant to which Plaintiffs have agreed, in exchange for monetary consideration paid to Plaintiffs, to release Mr. Isto's primary insurance carrier and Mr. Isto from all claims which might be recovered from Mr. Isto directly, while specifically reserving all claims against Mr. Isto to the extent any other collectible insurance coverage is afforded to Mr. Isto by any insurance carrier or company other than Mr. Isto's primary insurance carrier.  *See* Rec. Doc. 203 (Joint Notice of Partial Settlement).

        In addition, Counsel for Plaintiffs has had preliminary settlement-related discussions with counsel for certain of the other Defendants in this case.

**Defendants' Response(s):**

- **Defendant Hall's Response:**  Hall requests that plaintiff voluntarily dismiss him from this case.

- **Defendant Gott's Response:**  Counsel for Sean Paul Gott has had preliminary settlement related discussions with counsel for Plaintiffs in this case.

- **Defendant Babineaux's Response:** Babineaux requests that Plaintiff voluntarily dismiss him from the case.

- **Defendant Comeaux's Response:** Comeaux requests that plaintiff voluntarily dismiss him from this case.

- **Defendant St. Germain's Response:** There have been no settlement discussions between defendant St. Germain and plaintiffs.

2.    Do the parties wish to have a settlement conference:

[  ] YES    [X] NO

If your answer is *yes,* at what stage of litigation would a settlement conference be most beneficial?

**L.    CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

All parties agree to jurisdiction by a Magistrate Judge of this court:

[ ] Yes    [X] No

//

//

//

//

//

//

20

Report dated:  May 14, 2020

Respectfully submitted,

/s/ Jonathon N. Fazzola
**THE FIERBERG NATIONAL**
**LAW GROUP, PLLC**
Douglas E. Fierberg* – Lead Attorney
Jonathon N. Fazzola*
Lisa N. Cloutier*
161 East Front Street, Suite 200
Traverse City, MI  49684
Telephone: (231) 933-0180
Facsimile: (231) 252-8100
Email: dfierberg@tfnlgroup.com
Email: jfazzola@tfnlgroup.com
Email: lcloutier@tfnlgroup.com
*Admitted Pro Hac Vice*

/s/ J. Lane Ewing, Jr.
**CAZAYOUX EWING LAW FIRM**
Donald J. Cazayoux, Jr. (LBN 20742)
J. Lane Ewing, Jr. (LBN 29854)
257 Maximilian Street
Baton Rouge, LA  70802
Telephone: (225) 650-7400
Facsimile: (225) 650-7401
Email: don@cazayouxewing.com
Email: lane@cazayouxewing.com

*Attorneys for Plaintiffs Stephen M. Gruver*
*and Rae Ann Gruver, individually and on*
*behalf of Maxwell R. Gruver, deceased*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**STEPHEN M. GRUVER, ET AL.**                                              **CIVIL ACTION**

**v.**

**STATE OF LOUISIANA THROUGH THE BOARD OF**          **NO. 3:18-cv-00772-SDD-EWD**
**SUPERVISORS OF LOUISIANA STATE**
**UNIVERSITY AND AGRICULTURAL AND**
**MECHANICAL COLLEGE, ET AL.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certify that on this date a true and correct copy of the foregoing

was filed electronically with the Clerk of Court using the CM/ECF system.  Service of this filing

will be made on all ECF-registered counsel by operation of the court's electronic filing system.

Parties may access this filing through the court's system.

Dated:  May 14, 2020                                      Respectfully submitted,

/s/ Jonathon N. Fazzola
**THE FIERBERG NATIONAL**
**LAW GROUP, PLLC**
Jonathon N. Fazzola*
161 East Front Street, Suite 200
Traverse City, MI  49684
Telephone: (231) 933-0180
Facsimile: (231) 252-8100
Email: jfazzola@tfnlgroup.com
*Admitted Pro Hac Vice*

/s/ J. Lane Ewing, Jr.
**CAZAYOUX EWING LAW FIRM**
J. Lane Ewing, Jr. (LBN 29854)
257 Maximilian Street
Baton Rouge, LA  70802
Telephone: (225) 650-7400
Facsimile: (225) 650-7401
Email: lane@cazayouxewing.com

*Attorneys for Plaintiffs Stephen M. Gruver*
*and Rae Ann Gruver, individually and on*
*behalf of Maxwell R. Gruver, deceased*