# United States Court of Appeals
## FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 03, 2020

Mr. Michael L. McConnell
Middle District of Louisiana, Baton Rouge
United States District Court
777 Florida Street
Room 139
Baton Rouge, LA 70801

    No. 19-30670    Stephen Gruver, et al v. Louisiana Board of Supervisors
                             USDC No. 3:18-CV-772

Dear Mr. McConnell,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Enclosed for the district court and counsel is the approved bill of costs.

                Sincerely,

                LYLE W. CAYCE, Clerk

                By: _____
                Majella A. Sutton, Deputy Clerk
                504-310-7680

cc:
    Mr. David Mark Bienvenu Jr.
    Mr. Donald J. Cazayoux Jr.
    Ms. Lisa Nicole Cloutier
    Mr. John Lane Ewing Jr.
    Mr. Jonathon N. Fazzola
    Mr. Patrick Hayes Hunt



# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-30670

D.C. Docket No. 3:18-CV-772

**United States Court of Appeals**
**Fifth Circuit**
**FILED**
May 12, 2020
Lyle W. Cayce
Clerk

**Certified as a true copy and issued as the mandate on Jun 03, 2020**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

STEPHEN M. GRUVER, individually and on behalf of Maxwell R. Gruver; RAE ANN GRUVER, individually and on behalf of Maxwell R. Gruver,

    Plaintiffs - Appellees

v.

LOUISIANA BOARD OF SUPERVISORS FOR THE LOUISIANA STATE UNIVERSITY AGRICULTURAL AND MECHANICAL COLLEGE,

    Defendant - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before SOUTHWICK, COSTA, and DUNCAN, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that appellant pay to appellees the costs on appeal to be taxed by the Clerk of this Court.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
May 12, 2020
Lyle W. Cayce
Clerk

No. 19-30670

STEPHEN M. GRUVER, individually and on behalf of Maxwell R. Gruver; RAE ANN GRUVER, individually and on behalf of Maxwell R. Gruver,

      Plaintiffs - Appellees

v.

LOUISIANA BOARD OF SUPERVISORS FOR THE LOUISIANA STATE UNIVERSITY AGRICULTURAL AND MECHANICAL COLLEGE,

      Defendant - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before SOUTHWICK, COSTA, and DUNCAN, Circuit Judges.

GREGG COSTA, Circuit Judge:

    Two decades ago we held that state recipients of Title IX funding waive their Eleventh Amendment immunity against suits alleging sex discrimination. *Pederson v. La. State Univ.*, 213 F.3d 858, 876 (5th Cir. 2000). Louisiana's flagship university was the defendant in that case, and it is back to again invoke Eleventh Amendment immunity against a Title IX claim. The state has not forgotten its loss on this issue but argues that an intervening Supreme Court decision allows us to reexamine our precedent. We disagree.

No. 19-30670

I.

This case arises from the tragic death of Maxwell Gruver after a fraternity hazing event at Louisiana State University. His parents sued LSU for violations of Title IX and state law. In support of the federal claim, they allege that LSU discriminated against male students by policing hazing in fraternities more leniently than hazing in sororities.

LSU moved to dismiss the Gruvers' complaint for lack of jurisdiction and for failure to state a claim. It argued that Eleventh Amendment immunity deprived the district court of jurisdiction. The district court denied the motion as to the Title IX claim. Although it dismissed the state-law claims on Eleventh Amendment grounds, it held that LSU had waived immunity to Title IX suits under Fifth Circuit precedent. The court then ruled that the Gruvers had sufficiently alleged a Title IX violation.

LSU cannot bring an interlocutory appeal of the ruling that the Gruvers stated a claim, but it can appeal the denial of Eleventh Amendment immunity before the case goes further, *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993). It has done so.

II.

The Eleventh Amendment bars suits that individuals file against states in federal court. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). As with just about every rule, there are exceptions. One is that a state may waive its immunity, and Congress can induce a state to do so by making waiver a condition of accepting federal funds. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 277–79 (5th Cir. 2005) (en banc).[1]

---

[1] Congress can also unilaterally abrogate a state's Eleventh Amendment immunity by enacting legislation under Section Five of the Fourteenth Amendment. *Pace*, 403 F.3d at 277. The Gruvers contend that abrogation allows their lawsuit too, but we need not reach the question because of our precedent permitting it to proceed on waiver grounds. *Id.* at 287; *Pederson*, 213 F.3d at 875 n.15.

We held twenty years ago that this type of Spending Clause waiver exists for Title IX. *Pederson*, 213 F.3d at 876. *Pederson* concluded that the following statute—enacted in 1986 as the Civil Rights Remedies Equalization Act—validly conditioned Title IX funding on a recipient's waiver of Eleventh Amendment immunity:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d–7(a)(1); *see also Pederson*, 213 F.3d at 876. In exchange for receiving federal funds, LSU subjected itself to the *Pederson* suit challenging its failure to field women's soccer and softball teams. 213 F.3d at 876.

We have since reaffirmed that holding in cases dealing with other antidiscrimination statutes mentioned in section 2000d–7. *See Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 347–52 (5th Cir. 2005) (en banc) (Rehabilitation Act); *Pace*, 403 F.3d at 280–87 (same). We are not alone. Every circuit to consider the question—and all but one regional circuit has—agrees that section 2000d–7 validly conditions federal funds on a recipient's waiver of its Eleventh Amendment immunity.[2]

---

[2] *See Barbour v. Wash. Metro. Area Transit Auth.*, 374 F.3d 1161, 1170 (D.C. Cir. 2004); *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 129 (1st Cir. 2003); *Koslow v. Pennsylvania*, 302 F.3d 161, 176 (3d Cir. 2002); *Robinson v. Kansas*, 295 F.3d 1183, 1190 (10th Cir. 2002), *abrogated on other grounds by Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159 (10th Cir. 2012); *Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 628 (6th Cir. 2001); *Cherry v. Univ. of Wis. Sys. Bd. of Regents*, 265 F.3d 541, 555 (7th Cir. 2001); *Jim C. v. United States*, 235 F.3d 1079, 1082 (8th Cir. 2000) (en banc); *Sandoval v. Hagan*, 197 F.3d 484, 500 (11th Cir. 1999), *rev'd on other grounds*, 532 U.S. 275 (2001); *Litman v. George Mason Univ.*, 186 F.3d 544, 555 (4th Cir. 1999); *Clark v. California*, 123 F.3d 1267, 1271 (9th Cir. 1997).

No. 19-30670

LSU acknowledges that precedent stands in the way of its immunity claim. Indeed, it sought initial hearing en banc because, under the rule of orderliness, only our full court can "overturn another panel's decision." *See Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) (per curiam) (citation omitted). That request had no takers.

LSU nevertheless presses on. It invokes another way to avoid one of our precedents: an intervening ruling from the Supreme Court. The bar it faces is high. For a Supreme Court decision to constitute a change in the law that enables a panel to take a fresh look at an issue, it must mark an "unequivocal" change, "not a mere 'hint' of how the Court might rule in the future." *Id.* at 279 (citation omitted). The decision LSU cites, *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012), does not meet that standard when it comes to the analysis that *Pederson* and our other cases used in finding waivers of sovereign immunity from states' acceptance of federal funds.[3]

Some background on the inquiry for determining when the receipt of funds amounts to an Eleventh Amendment waiver is warranted at this point. Congress can use its Spending Power to entice states to implement its policy objectives, even if it could not impose those policies directly through legislation. *South Dakota v. Dole*, 483 U.S. 203, 206–207 (1987). It does so by granting funds to the states and conditioning the receipt of those funds on compliance

---

[3] We thus need not address the Gruvers' contention that preclusion bars LSU from relitigating the Eleventh Amendment issue it lost in *Pederson*. While Eleventh Amendment immunity is a jurisdictional matter, *Watson v. Texas*, 261 F.3d 436, 440 n.5 (5th Cir. 2001), preclusion is not, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). Indeed, a reason why issue preclusion does not typically apply to pure questions of law is that the more flexible doctrine of stare decisis provides enough stability and protection against unnecessary litigation burdens. *See* 18 RESTATEMENT (SECOND) OF JUDGMENTS § 29(7) & cmt. i (AM. LAW. INST. 1982); CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4425 (3d ed. 2019).

4

with federal mandates. *Id.* If a state accepts federal funds, it can be held to conditions attached to those funds so long as the grant and conditions comply with the five-part test laid out in *South Dakota v. Dole*, 483 U.S. 203. That test is: (1) a federal expenditure must benefit the general welfare; (2) any condition on the receipt of federal funds must be unambiguous; (3) any condition must be reasonably related to the purpose of the federal grant; (4) the grant and any conditions attached to it cannot violate an independent constitutional provision; and (5) the grant and its conditions cannot amount to coercion as opposed to encouragement. *Id.* at 207–08, 210.

One condition Congress can attach to funds is a recipient's waiver of its Eleventh Amendment immunity. *Pace*, 403 F.3d at 278–79. As is usually true for waivers, any such waiver must be knowing and voluntary. *Id.* at 277–78 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999)). So when it comes to a condition waiving sovereign immunity, *Dole*'s second and fifth requirements serve dual roles: they ensure not only that Congress's exercise of the Spending Power is valid but also that a state's immunity waiver is knowing and voluntary. *Id.* at 277–79. If a waiver condition is unambiguous, then a state knows the consequence of accepting any associated funds. *Id.* at 279. Likewise, if a waiver condition is not coercive, then the state's acceptance of conditioned funds is voluntary. *Id.*

LSU's appeal centers on *Dole*'s "no coercion" requirement.[4] *Pace* held that section 2000d–7's waiver condition is not coercive, noting that a state

---

[4] LSU also argues that Congress cannot use its Article I powers to force a state to constructively waive its Eleventh Amendment immunity based on its presence in a regulated field. That argument comes from *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666. But we rejected the same challenge to section 2000d–7 in *Pace*. We pointed out that *College Savings* "expressly distinguished conditional-spending waivers of Eleventh Amendment immunity" as "'fundamentally different from' illegitimate constructive waivers." 403 F.3d at 285 (quoting *College Savings*, 527 U.S. at 686). LSU does not cite to an intervening change of law on this point, so *Pace* controls.

agency could retain its Eleventh Amendment immunity by declining federal funding without affecting other state agencies' funding eligibility. *Id.* at 287.

According to LSU, *NFIB* shows that our caselaw is wrong about the absence of coercion. *NFIB* held that Congress's threat to withhold all Medicaid funding from states that did not agree to dramatically expand Medicaid under the Affordable Care Act was unconstitutionally coercive. 567 U.S. at 575–85.[5] LSU contends that *NFIB* identified two situations, present here, when conditional spending rises to the level of coercion. First, it claims that *NFIB* recognized it is coercive for Congress to attach conditions "that do not . . . govern the use of the funds." *See NFIB*, 567 U.S. at 580.[6] That would pose a problem for section 2000d–7 because its Eleventh Amendment waiver does not "govern the use of funds" but instead allows suit alleging sex discrimination in any programs the recipient administers. Second, LSU asserts *NFIB* held that Congress cannot surprise states with post-acceptance conditions. *See id.* at 584. And yet, LSU says, Congress did exactly that when it enacted section 2000d–7 fourteen years after passing Title IX.

LSU's first argument misreads *NFIB*. Its "govern the use of the funds" language merely delineates between two types of spending conditions. Both can be constitutional, but they are subject to different scrutiny. The easier situation is when Congress places a direct restriction on how a state uses federal funds. *Id.* at 580. A restriction of that sort is constitutional because it

---

[5] Chief Justice Roberts wrote for a plurality on this point. But because the plurality struck down Medicaid expansion on narrower grounds than the joint dissent, the plurality opinion is binding. *Miss. Comm'n on Envtl. Quality v. E.P.A.*, 790 F.3d 138, 176 & n.22 (D.C. Cir. 2015) (per curiam); *Mayhew v. Burwell*, 772 F.3d 80, 88–89 (1st Cir. 2014); *see also Marks v. United States*, 430 U.S. 188, 193 (1977).

[6] LSU suggests that this argument also pertains to *Dole*'s relatedness inquiry. But *NFIB* focused on the coercion inquiry; it "did not address the 'relatedness' element." *Arbogast v. Kan., Dep't of Labor*, 789 F.3d 1174, 1187 n.5 (10th Cir. 2015). Our holding that section 2000d–7's waiver condition is sufficiently related to Title IX's antidiscrimination goals thus stands. *See Miller*, 421 F.3d at 350.

"ensures that the funds are spent according to [Congress's] view of the 'general Welfare.'" *Id.* But, the Chief Justice explained, Congress can also impose conditions that do not directly "govern the use of the funds" and instead attempt to "pressur[e] the States to accept policy changes." *Id.* Such a condition may, for instance, "threat[en] to terminate other significant independent grants." *Id.* And because those conditions "cannot be justified" on the same basis as the first type of condition, a different test is appropriate to assess their constitutionality: the coercion inquiry. *Id.* This latter type of condition was at issue in *Dole*, where a law withheld five percent of a state's federal highway funds unless the state raised its drinking age to 21. *Id.* The law "was not a restriction on how the highway funds . . . were to be used," so the *Dole* Court had to "ask[] whether the financial inducement offered by Congress was so coercive as to pass the point at which pressure turns into compulsion." *Id.* (internal quotation marks omitted) (quoting *Dole*, 483 U.S. at 211). In other words, determining that a condition does not "govern the use of the funds" triggers the coercion question (as our prior cases recognized in applying the coercion analysis); it does not answer that question. LSU's first argument thus fails to show that *NFIB* upended our understanding of what constitutes coercion.

The second of LSU's arguments does not establish an unequivocal change in the coercion inquiry either. Section 2000d–7's waiver condition is not new or surprising in the same way Medicaid expansion was for the state plaintiffs in *NFIB*. For starters, *NFIB* did not hold that every new condition imposed on already existing funding streams is invalid. On the contrary, *NFIB* explained that *Dole* permitted exactly that kind of condition, so long as it is not coercive. *See id.* at 580 (noting that "no new money was offered to the States to raise their drinking ages" in *Dole*). Indeed, Congress "make[s] changes to federal spending programs all the time." Samuel R. Bagenstos, *The Anti-*

7

*Leveraging Principle and the Spending Clause After* NFIB, 101 GEO. L.J. 861, 888 (2013) (citing examples). The problem in *NFIB* was that Congress had conditioned all of a state's Medicaid funding on accepting significant obligations that created a new program entirely different than the original one the state had opted in to. The Chief Justice described the new conditions as "accomplish[ing] a shift in kind, not merely degree" such that although "Congress may have styled the expansion a mere alteration of existing Medicaid," it was actually "enlisting the States in a new health care program." *Id.* at 583–84. Section 2000d–7 does not do that. While it did add a new condition to federal funds fourteen years after Congress and President Nixon enacted Title IX, the condition does not resemble the creation of a brand-new legislative program.

For another thing, section 2000d–7 has been on the books for over thirty years, all the while LSU has continued to accept federal funding. *Cf. Pace*, 403 F.3d at 279 (explaining that, for waiver purposes, "actual acceptance of clearly conditioned funds is generally voluntary"). By contrast, the *NFIB* state plaintiffs challenged the Affordable Care Act the day it became law. 567 U.S. at 540. "The fact that the State has long accepted . . . dollars notwithstanding the challenged conditions may be an additional relevant factor in the contract-like analysis the Court has in mind for assessing the constitutionality of Spending Clause legislation." *Miss. Comm'n on Envtl. Quality v. E.P.A.*, 790 F.3d 138, 179 (D.C. Cir. 2015) (per curiam). For these reasons, LSU cannot demonstrate that *NFIB*'s principle against "surprising," postenactment spending conditions clearly applies with equal force to section 2000d–7.

We therefore conclude that *NFIB* does not unequivocally alter *Dole*'s conditional-spending analysis. LSU does not cite, nor could we find, any case holding that *NFIB* marks such a transformation of Spending Clause principles. And the longstanding Title IX funding arrangement is not on all fours factually

with the Medicaid expansion *NFIB* addressed. The threat of LSU losing what amounts to just under 10% of its funding is more like the "relatively mild encouragement" of a state losing 5% of its highway funding (less than 0.5% of South Dakota's budget) than the "gun to the head" of a state losing all of its Medicaid funding (over 20% of the average state's budget). *See NFIB*, 567 U.S. at 580–82.

As a result, we remain bound by our precedent: LSU has waived Eleventh Amendment immunity by accepting federal funds. *Pederson*, 213 F.3d at 876. Congress did not coerce it to do so. *Pace*, 403 F.3d at 287. LSU is free to avoid Title IX obligations by declining federal funds without threatening other state agencies' funding. *Id.*

\* \* \*

The district court's denial of LSU's motion to dismiss for lack of jurisdiction is AFFIRMED.

# BILL OF COSTS

**NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion*, See** Fed. R. App. P. & 5th Cir. R. 39. **Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.**

Stephen Gruver, et al.    v.    Louisiana Board of Supervisors    No. 19-30670

The Clerk is requested to tax the following costs against: Louisiana Board of Supervisors for the Louisiana State University Agricultural & Mechanical College

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee | | | | | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | 7 | 78 | 0.15 | 81.9 | 7 | 78 | .15 | 81.90 |
| Appellant's Reply Brief | | | | | | | | |
| Other: | | | | | | | | |
| | | | Total $ | 81.9 | | | Costs are taxed in the amount of $ | 81.90 |

Costs are hereby taxed in the amount of $ 81.90 this 26th day of May, 2020.

LYLE W. CAYCE, CLERK

State of Michigan
County of Grand Traverse

By _____ Deputy Clerk

I Jonathon N. Fazzola, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 21st day of May, 2020.

/s/ Jonathon N. Fazzola
**(Signature)**

*SEE REVERSE SIDE FOR RULES GOVERNING TAXATION OF COSTS

Attorney for Appellees, Stephen & Rae Ann Gruver