UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STEPHEN M. GRUVER AND                                   CIVIL ACTION
RAE ANN GRUVER, individually and
on behalf of MAXWELL R. GRUVER,
deceased                                                18-772-SDD-EWD

VERSUS

STATE OF LOUISIANA THROUGH THE
BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL
COLLEGE, et al.

# RULING

This matter is before the Court on the *Motion to Dismiss Second Amended Complaint Pursuant to Rule 12(b)(6)*[1] filed by Defendant, Luke St. Germain ("St. Germain") and the *Motion to Dismiss for Failure to State a Claim*[2] by Defendant, Philip Clark ("Clark") (or collectively "Defendants").  Plaintiffs, Stephen M. Gruver and Rae Ann Gruver ("Plaintiffs"), individually and on behalf of their deceased son Maxwell R. Gruver ("Max"), filed *Oppositions*[3] to both motions.  Because some of the same relief is requested by St. Germain and Clark, the Court will address these motions simultaneously. For the following reasons, both *Motions* will be denied.

## I.    FACTUAL BACKGROUND

This suit arises out of the tragic death of Maxwell R. Gruver, a student formerly

---

[1] Rec. Doc. No. 220.
[2] Rec. Doc. No. 221.
[3] Rec. Doc. Nos. 222 & 223.
Document Number: 64353                                                        1

enrolled at LSU, who died in September of 2017 following a fraternity-related hazing incident.[4] On September 13, 2017, several fraternity members of Phi Delta Theta Fraternity ("Phi Delt") summoned pledges, including Max, to the Phi Delt fraternity house on LSU's campus to participate in a hazing ritual known as "Bible Study."[5] "The Bible Study ritual, like many other fraternity rituals, involved the provision and compelled excessive consumption of alcohol by pledges, all of whom were under the lawful drinking age in the State of Louisiana[.]"[6] This ritual "was a test of the pledges' knowledge of fraternity history and the Greek alphabet. Pledges were singled out to answer questions, and if they answered incorrectly, they were compelled to take a pull – a three to five second chug – directly from a bottle of Diesel, 190-proof alcohol."[7] However, "Max was singled out for particularly harsh treatment by the fraternity members. While most pledges were compelled to take three or four pulls during Bible Study, Max was ordered to take at least 10 to 12 pulls."[8] Plaintiffs alleged that:

> By 11:30 p.m., Max was incapacitated and in visible need of emergency medical or other responsible care. Yet, fraternity members left Max, unconscious, on a couch. Hours passed. At around 9:00 a.m. on September 14, 2017, fraternity members found Max unresponsive. Again, emergency assistance was not called, and any other responsible care was withheld. Fraternity members summoned fraternity pledges to the fraternity house and told the pledges to take Max to the hospital and to lie and tell hospital staff they had found Max in his dorm room. Max was pronounced dead at the hospital. His blood alcohol content was 0.495 when measured at his autopsy one-and-a-half days later.[9]

The following allegations are asserted against St. Germain and Clark in the

---

[4] For a full factual background in this matter, see Rec. Doc. No. 116.
[5] Rec. Doc. No. 214, ¶ 4.
[6] *Id.* at ¶ 4.
[7] *Id.* at ¶ 60.
[8] *Id.* at ¶ 5.
[9] *Id.* at ¶ 6.

*Second Amended Complaint.* For the relevant time period, St. Germain is alleged to have been a student of LSU, a member of Phi Delt, and an executive board member of Louisiana Beta, serving as the Treasurer of Louisiana Beta, in the Fall of 2017.[10] Clark served with St. Germain as the Chapter Pledge Educator of Phi Delt, Louisiana Beta.[11] Plaintiffs have alleged that various acts and omissions by St. Germain and Clark contributed to the cause of Max's death. Specifically, Plaintiffs allege that, two days before the Bible Study of September 13, 2017, St. Germain, Clark, and the other executive board members met to discuss the extreme and dangerous manner in which fraternity member Matthew Naquin ("Naquin") was handling the pledges.[12] The board members, including St. Germain and Clark, agreed to address the issue at a chapter meeting later that day, which included the discussion of possibly imposing penalties on Naquin for this type of conduct. Yet, no penalties were ever imposed.[13] At this chapter meeting, Naquin was allegedly warned about his conduct with pledges both by the board members and then individually by Clark, who was particularly alarmed at Naquin's behavior and concerned for the pledges' safety; yet, Naquin allegedly advised that "he would do what he wanted."[14]

Plaintiffs also allege that St. Germain, Clark, and other board members knew of another fraternity member's dangerous conduct with the pledges, specifically co-defendant herein Sean Paul Gott ("Gott"); yet, despite St. Germain's, Clark's, and the other executive board members' positions of authority and obligations to "enforce, and

---

[10] Rec. Doc. No. 214, ¶ 36.
[11] *Id.* at ¶ 33.
[12] *Id.* at ¶ 64.
[13] *Id.* at ¶ 69.
[14] *Id.* at ¶ 70.

uphold Phi Delt's … purported prohibitions on hazing, misuse and abuse of alcohol, and other related misconduct,"[15] St. Germain, Clark, and the other board members "knowingly and recklessly permitted" Naquin and Gott "to participate in and direct a significant portion of the Bible Study" hazing ritual on September 13, 2017.[16] Plaintiffs maintain these acts and failures to act by St. Germain, Clark, and the other board members resulted in and contributed to Max's death.

On August 16, 2018, Plaintiffs filed their original *Complaint*.[17] On October 15, 2019, Plaintiffs filed a *First Amended Complaint*, which added St. Germain and Clark as Defendants. On June 23, 2020, Plaintiffs filed a *Second Amended Complaint* adding Allstate Insurance Company of Canada as a Defendant.[18] The claims and allegations against St. Germain and Clark are the same as in the *First Amended Complaint*.[19] The claims against St. Germain are for wrongful death, survival action, and negligence under Louisiana Law. The claims asserted against Clark are for wrongful death and survival action.

## II.    MOTION TO DISMISS UNDER RULE 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[20] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[21] "To

---

[15] *Id.* at ¶ 65.
[16] *Id.* at ¶¶ 72-73.
[17] Rec. Doc. 1.
[18] Rec. Doc. 214.
[19] Rec. Doc. No. 221-1 p. 3; Rec. Doc. No. 214.
[20] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[21] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[22] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[23] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[24] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[26] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[27] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[28]

Both St. Germain and Clark move for dismissal, arguing Plaintiffs' Louisiana state law claims against them are prescribed. St. Germain moves alternatively under 12(b)(6)

---

[22] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[23] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).
[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[25] *Twombly*, 550 U.S. at 570.
[26] *Iqbal*, 556 U.S. at 678.
[27] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[28] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

to dismiss claims brought against him in his individual and official capacities as an officer of Phi Delt. Plaintiffs oppose both motions.

### A. Prescription/Relation Back

Defendants St. Germain and Clark make essentially the same argument regarding prescription. They contend that the wrongful death and survival actions are subject to a prescriptive period of one year following Max's death; consequently, because these Defendants were added to the suit more than two years after Max's death, they are prescribed.[29] Further, Defendants contend any attempt to argue that the *Amended Complaints* relate back to the original under Rule 15(c) of the Federal Rules of Civil Procedure also fails because, under Rule 15(c)(1)(C), an amended complaint bringing in a new party must be filed "within the period provided by Rule 4(m)" and "the party to be brought in (i) received such notice of the action that it will not be prejudiced in defending on the merits."[30] Defendants note that the time set forth in Rule 4(m) is 90 days, and, because the *Amended Complaint* was filed "some 14 months later,"[31] Rule 15 provides no relief and Plaintiffs cannot "carry their burden of showing that their claims are not prescribed."[32]

Plaintiffs counter that Louisiana law controls the prescription period applicable to the wrongful death and survival claims, and the prescriptive period for these types of claims is a period of liberative prescription of one year.[33] But, these claims are subject to interruption, and "interruption of prescription against one joint tortfeasor is effective

---

[29] Rec. Doc. No. 220-1, p. 7; Rec. Doc. No. 221.
[30] *Id.* (citing FED. R. CIV. P. 15(C)).
[31] *Id.* at p. 8.
[32] *Id.* at pp. 7-8.
[33] Rec. Doc. No. 222, p. 7.

Document Number: 64353                                                                                          6

against all tortfeasors."[34]  Plaintiffs acknowledge that they must allege (and ultimately prove) joint tortfeasor status,[35] and there must ultimately be liability of a timely sued tortfeasor.[36]  Because Plaintiffs have specifically alleged that St. Germain and Clark are joint tortfeasors with other defendants named in the original *Complaint*, interruption as to one tortfeasor applies to all tortfeasors alleged to be jointly and severally liable, and Defendants' relation back argument is inapplicable here.

La. C.C. art. 2324(C) provides that "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors."  However, before it can be determined whether prescription was interrupted as to the claims at issue, the Court must first determine if the claims at issue are subject to interruption. In *Watkins v. Exxon Mobil*, the Louisiana supreme court addressed whether the one-year period for instituting a survival action is prescriptive or peremptive,[37] and the court concluded that both a survival action and a wrongful death claim are governed by a one-year period of liberative prescription.[38] Since both claims are subject to liberative prescription, the claims are subject to interruption of prescription.

Next, the Court must determine if/when prescription was interrupted. In *McKenzie v. Imperial Fire*, a Louisiana state appellate court addressed a case wherein the plaintiff filed a petition for damages for personal injuries,[39] and, almost two years later, the plaintiff amended her petition adding an additional defendant.[40] The court determined that if there

---

[34] *Id.* at p. 8; La. Civ. Code art. 2324(C).
[35] *See Lajaunie v. Colony Ins. Co.,* 1999-1771 (La.App. 1 Cir. 9/22/00), 767 So.2d 933, 935; *see also* Rec. Doc. No. 223 p. 5.
[36] *Miller v. Mancuso*, 388 Fed. Appx. 389, 391 (5th Cir. 2010).
[37] *Watkins v. Exxon Mobil Corp.*, No. 2013-CC-1545, (La. 5/7/14), 145 So. 3d 237, 238.
[38] *Id.* at 243–44.
[39] *McKenzie v. Imperial Fire and Cas. Ins. Co.*, 2012-1648 (La.App. 1 Cir. 7/30/13), 122 So. 3d 42, 45.
[40] *Id.* at 45.

was a timely filed suit interrupting prescription against a joint tortfeasor, such interruption was applied to all joint tortfeasors.[41] Additionally, relying on Louisiana Civil Code article 3463, the court held that the interruption of prescription remains in effect if the suit is still pending when the amended petition is filed.[42] Therefore, as long as the case is pending, interruption continues,[43] and, under 2324(C), the interruption is effective against all joint tortfeasors.[44]

Finally, the Court must determine whether the allegations plead the basis for a joint and solidary obligation. "Joint and solidary tortfeasor liability exists when a plaintiff can show that each actor 'had a substantial role in bringing about the results' of their actions."[45] Further, "the fact that the allegations made against the original defendants were the same as those made against the newly added defendants" can be sufficient to establish a joint tortfeasor relationship.[46]

Plaintiffs rely on two cases that are particularly applicable here. In *Ford v. Murphy Oil*, the federal court for the Eastern District of Louisiana held that joint and several liability may be imposed on "'persons whose separate wrongful actions, not done in concert, contribute in unknown proportions … to cause indivisible injury.'"[47] The *Ford* court explained that the "basis for joint tortfeasor status contemplates independent acts which unite to cause a single injury;" thus, "'separate acts' or 'separate wrongs' of the

---

[41] *Id.* at 48.
[42] *Id.* at 49; La. Civ. Code art. 3463.
[43] *Id.*
[44] *Id.*
[45] *Maronge v. Hunt Petroleum Co.,* No. CV 08-4959, 2009 WL 10680058, at *3 (E.D. La. Apr. 29, 2009) (*quoting Lawrence v. St. Bernard Police Dep't*, No. 99–3494, 2002 WL 31496374, at *4 (E.D. La. Nov. 6, 2002)).
[46] *Id.*
[47] *Ford v. Murphy Oil U.S.A., Inc.,* 750 F. Supp. 766, 772 (E.D. La. 1990)(quoting *Thompson v. Johns–Manville Sales Corp.*, 714 F.2d 581 (5 Cir.1983) (citing *Hillburn v. Johnson*, 240 So.2d 767 (La.App. 2 Cir.1970)); *see also Brooks v. Roussel*, 384 So.2d 576 (La.App. 4 Cir.1980))).

defendants are not functionally or conceptually separate and independent."[48] In *Duplechain v. Clausing Machine Tools,* a Louisiana state appellate court reinforced the well-settled law that "joint tortfeasors are deemed solidary obligors, even though their concurrent negligence results from different acts or breaches of different obligations."[49] Further, even where "neither the original nor amended petitions explicitly allege solidary liability," if the "facts claimed, and the prayer for relief, treat all of the defendants as joint tortfeasors," Louisiana law will view them as such.[50] Thus, the alleged conduct by the joint tortfeasors in this case does not have to be the same; it is sufficient that Plaintiffs allege that their conduct, although different, contributed to causing the ultimate injury – Max's death.

The Court finds that Plaintiffs have sufficiently alleged facts that, if proven, would demonstrate that St. Germain and Clark are joint tortfeasors with the originally named co-Defendants.[51] As such, under Louisiana law, the timely filed suit against the original Defendants also interrupted prescription as to St. Germain and Clark later named in the *Amended Complaints.*[52] The motions to dismiss based on prescription shall be DENIED.

---

[48] *Ford*, 750 F. Supp. at 772.
[49] *Duplechain v. Clausing Mach. Tools*, 420 So. 2d 720, 722 (La. App. 4th Cir. 1982)(citing *Thomas v. W & W Clarklift, Inc.*, 375 So.2d 375 (La.1979); *Cavalier v. City of New Orleans*, 273 So.2d 303 (La.App. 4th Cir. 1973); *Pearson v. Hartford Accident and Indemnity Co.*, 281 So.2d 724 (La.1973)).
[50] *Duplechain,* 420 So. 2d at 722.
[51] Moreover, federal courts require a notice pleading standard, which is a more relaxed standard than Louisiana's fact pleading standard. FED. R. CIV. P. 8(a)(2); see Wheat, 984 So. 2d at 776. Taking that into consideration with federal 12(b)(6) standards, the Court must accept the well-pleaded facts as true, and Plaintiffs have plausibly alleged a joint and solidary obligation among the original and recently added Defendants.
[52] The relation back argument is, therefore, inapplicable.

### B. Individual Capacity Claim against St. Germain

St. Germain moves alternatively to dismiss the individual claims asserted against him, stating: "plaintiffs have not pled the elements of an individual capacity claim, much less facts that would support such a claim."[53] St. Germain further contends there are no allegations pled regarding his personal or individual involvement with the hazing incident; rather, Plaintiffs only allege liability that is "strictly derivative of his position as an officer of the organization."[54] Additionally, St. Germain maintains Plaintiffs have offered only legal conclusions and labels in asserting that he "failed to act" or "knew or should have known," which are not "facts" supporting individual liability.

In opposition to this argument, Plaintiffs rely heavily on the Louisiana Third Circuit Court of Appeals decision in *Nizamutdinova v. Kappa Sigma Fraternity* to support their argument that an executive officer's leadership position in a fraternity chapter can impose personal/individual liability.[55] The Court agrees that the facts of *Nizamutdinova* are similar to those alleged herein, and the court's reasoning and analysis are persuasive.

*Nizamutdinova* involved allegations that pledge members at a college fraternity were hazed in a variety of ways for approximately a week.[56] By the end of the week, pledges were called throughout the night to be designated drivers for intoxicated pledges.[57] One of the designated drivers from the fraternity fell asleep at the wheel and collided with another vehicle, killing the driver of that vehicle.[58] The deceased's mother brought a wrongful death and survival action against the fraternity's board members in

---

[53] Rec. Doc. No. 220-1, p. 11.
[54] *Id.* at p. 10.
[55] 18-886 (La.App. 3 Cir. 10/2/19), 280 So.3d 1003.
[56] *Id.* at 1008.
[57] *Id.*
[58] *Id.* at 1009.

their individual and official capacities.[59] The defendants challenged the allegations of personal liability, and the court had to determine "whether the amended petition sets forth any facts under which [Louisiana] law could recognize that the Individual Defendants owed Plaintiff a duty to protect against the harm sustained."[60]

Although the deceased was not affiliated with the fraternity, the court found that the harm was "a harm for which the various anti-hazing provisions were drafted and enacted to prevent."[61] The court applied Civil Code art. 2315 which states that "every man [is] to repair the damage caused by his fault,"[62] and stated that a breach of the duty to "protect against the risk involved makes the offender" negligent.[63] The alleged duty was "to not engage in, encourage, authorize, or substantially support hazing activities" and to prevent risks associated with that duty, including sleep deprivation activities.[64] The court further held that individuals should not be able to escape liability solely because they are a member of a fraternity.[65] The *Nizamutdinova* court quoted the Louisiana supreme court's decision in *Buster Hughes, Inc. v. Bernard*,[66] holding that "'[t]he law is settled'" that an agent who breaches a duty owed to another, whether or not the act that result in injury was "'committed by or for the corporation,'" is personally liable to the injured third person regardless if liability "'might also attach to the corporation.'"[67]

The reasoning and analysis in *Nizamutdinova* are applicable to the facts alleged herein. Plaintiffs have alleged that the duty of the individual Defendants arose when they

---

[59] *Id.* at 1005-06.
[60] *Id.* at 1010.
[61] *Id.* at 1011.
[62] *Id.* (quoting La. Civ. Code art. 2315).
[63] *Id.* (quoting *Morris v. Orleans Par. Sch. Bd.*, 553 So.2d 427, 429 (La.1989)).
[64] *Id.* at 1011.
[65] *Id.* at 1012.
[66] 318 So.2d 9, 12 (La.1975).
[67] *Nizamutdinova*, 280 So.3d at 1012 (quoting *Buster Hughes*, 318 So.2d at 12).

voluntary undertook the responsibilities of board members, which included the duty to enforce risk prevention policies.[68] Plaintiffs allege that St. Germain and other board members permitted and tacitly authorized the Bible Study hazing, which arguably breached their duties and contributed to cause the harm that came to Max.[69] Moreover, the hazing incident that led to Max's death happened in the fraternity house, and it is alleged specifically - not just generally - that the board members, including St. Germain, knew of the potential and likely harm that could occur to Max if they breached their duty as board members to enforce non-hazing rules.  Plaintiffs further allege St. Germain and the board members failed protect Max, a known vulnerable target, from fraternity members the board allegedly knew were behaving dangerously and intended to target Max with more extreme treatment:[70]

> 62. During Bible Study, fraternity members targeted Max because, upon information and belief, he had previously arrived late to pledge activities and/or because he had complained to the pledge master of his pledge class about a hazing incident in which Phi Delt and Louisiana Beta Member Hudson Kirkpatrick ("Kirkpatrick") made Max use a friend's car to pick up Kirkpatrick and two friends, who Max was led by Kirkpatrick to believe were Phi Delt members, and to then buy them approximately $60 worth of cigarettes.
>
> 63. The week prior to Bible Study, Naquin had suggested to the fraternity members that they cut Max from the pledging process altogether.[71]

The Court finds that Plaintiffs have adequately and plausibly alleged state law tort claims against St. Germain and the other individual Defendants in their individual capacities.  St. Germain's alternative motion to dismiss individual liability claims is DENIED.

---

[68] Rec. Doc. No. 214, pp. 50-51.
[69] *Id.* at ¶ 221; *see also* Rec. Doc. No. 222 p. 14-15.
[70] *See* Rec. Doc. No. 222, p. 13.
[71] Rec. Doc. No. 214, ¶¶ 62 & 63.

### C. Official Capacity Claims against St. Germain

St. Germain moves to dismiss official capacity claims asserted against him in his capacity as a board member. However, Plaintiffs conceded they have not alleged official capacity claims against St. Germain:

> Plaintiffs do not assert "official capacity" claims against Defendant St. Germain in his capacity as an officer of Louisiana Beta. Plaintiffs have not alleged that Defendant St. Germain is a public official. Nor have Plaintiffs named Defendant St. Germain as a Defendant as an alternative means of pleading a cause of action against a governmental entity.[72]

Accordingly, this motion is DENIED as moot.

### III. CONCLUSION

For the reasons set forth above, the *Motion to Dismiss Second Amended Complaint Pursuant to Rule 12(b)(6)*[73] filed by St. Germain and the *Motion to Dismiss for Failure to State a Claim*[74] filed by Clark are hereby DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 4th day of January, 2021.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[72] Rec. Doc. No. 222, p. 16 (citation omitted).
[73] Rec. Doc. No. 220.
[74] Rec. Doc. No. 221.