## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

STEPHEN M. GRUVER AND                                    CIVIL ACTION
RAE ANN GRUVER, individually and
on behalf of MAXWELL R. GRUVER,
deceased

                                                         18-772-SDD-EWD

VERSUS

STATE OF LOUISIANA THROUGH THE
BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL
COLLEGE, et al.

## <u>RULING</u>

This matter is before the Court on the cross-motions for summary judgment filed by two Parties in this case.  Defendant, Allstate Insurance of Canada, Inc. ("Allstate Canada") filed a *Motion for Summary Judgment*,[1] to which Plaintiffs, Stephen M. Gruver and Rae Ann Gruver ("Plaintiffs"), individually and on behalf of their deceased son Maxwell R. Gruver ("Max"), filed an *Opposition*.[2]  Plaintiffs filed a *Motion for Partial Summary Judgment*[3] against Allstate Canada; Allstate Canada has filed no response or opposition.  For the following reasons, Allstate Canada's motion is denied, and Plaintiffs' motion is granted.

---

[1] Rec. Doc. 286.
[2] Rec. Doc. 292.
[3] Rec. Doc. 288.

## I.    BACKGROUND FACTS[4]

A 2017 college hazing incident at Louisiana State University ("LSU") resulted in the death of Max Gruver. In August 2018, Plaintiffs brought this action against Ryan Isto ("Isto") and several other defendants. Isto is insured under a homeowner's policy (the "Policy") issued to his parents by Allstate Canada.[5] This Policy includes "Family Liability" coverage, insuring claims made against the insured for legal liability "arising out of [an insured's] personal actions anywhere in the world."[6] In this Policy, Allstate Canada also stated that it "will defend any suit against [an insured] alleging bodily injury property damage and seeking compensatory damages, even if it is groundless, false or fraudulent."[7]

Prior to naming Allstate Canada as a Defendant in the action, Plaintiffs entered into a *Gasquet* agreement with Isto and State Farm through a Policy which insured Isto. This released Isto and State Farm from personal liability, leaving Isto as a "nominal defendant" for the purposes of pursuing recovery from Allstate Canada as an additional or excess insurer.[8] On June 23, 2020, Plaintiffs filed a *Second Amended Complaint*, adding Allstate Canada as a defendant pursuant to the Louisiana Direct Action Statute,

---

[4] The facts of this case were discussed at length by the Court in various prior rulings; thus, the Court adopts by reference the factual background in those rulings. *See* Rec. Docs. 116, 241, 265, & 270.

[5] Plaintiffs raise an issue regarding Allstate Canada's conflicting representations of which policy applies in this matter, the "VIP Tenant Policy," or the "Elite Homeowner Policy." *See* Rec. Doc. 292, p. 9. Plaintiffs admit the issue of which is the correct policy is immaterial to the cross-motions before the Court because the relevant language policies is identical, and the Court declines to address same. *Id.*

[6] Rec. Doc. No. 236-2, p. 12.

[7] *Id.*

[8] A "*Gasquet*" release takes its name from *Gasquet v. Commercial Union Ins. Co.*, 391 So.2d 466 (La.App. 4 Cir.1980), writ denied 396 So.2d 921 (La.1981). "[B]y executing a *Gasquet* release in a settlement agreement, a plaintiff (1) releases the primary insurer entirely, and (2) releases the insured 'from all claims which might be recovered from [the insured] directly,' reserving claims against the insured 'only to the extent that collectible coverage' is afforded by an excess insurance policy. *RSUI Indem. Co. v. American States Ins. Co.*, 127 F.Supp.3d 649, 657 (E.D. La. 2015)(quoting *Gasquet*, 391 So.2d at 470–71 "Procedurally, after a *Gasquet* release is executed the insured remains in the lawsuit as a 'nominal' defendant while the plaintiff pursues recovery from the excess insurer." *Id.*

as an insurer of Isto. The *Second Amended Complaint* alleges that Allstate Canada is a foreign corporation, incorporated under the laws of Canada, and having its principal place of business in Canada.

Allstate Canada previously filed a *Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2)*,[9] asserting that it did not have sufficient minimum contacts with the State of Louisiana to subject it to personal jurisdiction in this Court. The Court denied Allstate Canada's *Motion to Dismiss*, finding that this Court has jurisdiction over Allstate Canada based on the Duty to Defend clause in the insurance policy.[10]  The Parties now cross-move for summary judgment.

## II.    LAW & ANALYSIS

### A.  Summary Judgment Standard

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact.[12]  A court must deny the motion for summary judgment if the movant fails to meet this burden.[13]

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[14] This requires more than mere allegations or denials of the adverse party's pleadings.

---

[9] Rec. Doc. No. 236.
[10] Rec. Doc. 270.
[11] Fed. R. Civ. P. 56.
[12] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).
[13] *Id.*
[14] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) (quotations omitted).

Instead, the nonmovant must submit "significant probative evidence" in support of his claim.[15] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[16]

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.[17] The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.[18] Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party.[19]

"In Louisiana, an insurance policy must be construed in accordance with the general rules of interpretation of contracts under the Louisiana Civil Code."[20] On a summary judgment motion, the insured bears the burden of proving that an incident giving rise to a claim is covered within the policy's terms.[21] The insurer, however, bears the burden of proving that an exclusionary clause within the policy applies.[22]

This case involves cross-motions for summary judgment. As one federal district court stated: "Concurrent resolution of cross-motions for summary judgment can present a formidable task."[23] "Cross-motions [for summary judgment] must be considered separately and should not be interpreted necessarily to mean that judgment should be

---

[15] *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).
[16] *Anderson*, 477 U.S. at 249 (citations omitted).
[17] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).
[18] *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).
[19] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).
[20] *Evanston Insurance Co. v. Riceland Petroleum Co.*, 369 F.Supp.3d 673, 679 (W.D. La. 2019)(citing *Coleman v. School Board of Richland Parish*, 418 F.3d 511, 516 (5th Cir. 2005)).
[21] *Id.* (citing *Coleman*, 369 F.Supp.3d at 517-18).
[22] *Id.* (citing *Doerr v. Mobil Oil Corp.*, No. 2000-0947 (La. 12/19/00), 774 So.2d 119, 124).
[23] *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F.Supp.2d 230, 235 (M.D.Pa.2004); *see also* 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 (3d ed.1998).

entered on one of them[.]"[24] This is because "each party, as a movant for summary judgment, bears the burden of establishing that no genuine dispute of material fact exists and that the movant is entitled to a judgment as a matter of law."[25]

> The fact that one party fails to satisfy that burden on his own Rule 56 motion does not automatically indicate that the opposing party has satisfied its burden and should be granted summary judgment on the other motion. The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard. Both motions must be denied if the court finds that there is a genuine dispute of material fact. But if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment.[26]

With these standards in mind, the Court turns to each individual motion.

### B. Local Rule Requirements

As Plaintiffs note, Allstate Canada failed to comply with the Local Rules of the Middle District of Louisiana in submitting its Statement of Undisputed Facts. Local Rule 56(f) provides:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. **An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion**. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. **The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts**. (emphasis added).

Regarding Plaintiffs' *Motion for Partial Summary Judgment*, Allstate Canada likewise failed to comply with: (1) Local Rule 7(f) of the Middle District of Louisiana, which requires that memoranda in opposition to a motion be filed within twenty-one (21) days

---

[24] 10A Mary Kay Kane, Federal Practice and Procedure (Wright & Miller) § 2720 (4th ed. 2022).
[25] *Id.*
[26] *Id.*

after service of the motion, and (2) Local Rule 56 (c), which requires an opposing party to:

> submit with its opposition a separate, short, and concise statement of material facts. **The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule**. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule.

As to Allstate Canada 's motion, another section of this Court explained in *Braud v. Wal-Mart Stores, Inc.* that "case law recognizes that the Court can still consider record evidence to determine if there is a factual dispute."[27]  To the extent Allstate Canada directed the Court, in its memorandum in support of its motion, to specific, summary judgment evidence to support an offered fact, the Court will consider same.  However, for purposes of Plaintiffs' motion, Allstate Canada has entirely failed to oppose Plaintiffs' motion or to offer countervailing summary judgment evidence to demonstrate genuine disputes of fact; thus, for purposes of Plaintiffs' motion, Plaintiffs' offered statements of undisputed fact are deemed admitted.

### C.  Allstate Canada's Motion - Facts

In describing the events on the evening of September 13, 2017 that led to Max's

---

[27] No. 3:17-CV-320-JWD-EWD, 2019 WL 3364320 at *4 (M.D. La. July 25, 2019)(citing *Smith v. Brenoettsy*, 158 F.3d 908, 910 (5th Cir. 1998)(holding, where plaintiff failed to oppose the motion for summary judgment, that facts in "Statement of Undisputed Facts" were admitted, "except to the extent that the 'facts' in the 'Statement of Undisputed Facts' are contradicted by 'facts' in other materials attached to his motion for summary judgment." (citation omitted)); *Porter v. Dauthier*, No. 14-41, 2015 WL 5611647 at *8, *13 (M.D. La. Sept. 23, 2015) (deGravelles, J.)(relying on *Smith* and holding, when Plaintiff's opposition left "no doubt about his disagreement with either the basis or import of each of Plaintiff's undisputed facts," that Plaintiff would have forty-eight hours from the issuance of the ruling to comply with the Local Rule, and ultimately denying the motion for summary judgment)).

death, Allstate Canada cites to several allegations in Plaintiffs' original *Complaint*. On that night, Max and other fraternity pledges were summoned to the Phi Delta Theta ("Phi Delt") Fraternity for a "lineup."[28] The pledges were forced to partake in a hazing ritual known as "Bible Study," where they answered questions about the fraternity.[29] If a pledge answered incorrectly, he was compelled to take a three to five second "chug" of 190-proof liquor.[30] After participating in this ritual, Max died of alcohol poisoning on September 14, 2017; his autopsy disclosed a blood alcohol level of 0.495.[31]

At the time of the incident, Isto was an LSU student and a member of Phi Delt fraternity.[32] During his deposition, Isto testified that he was criminally prosecuted by the East Baton Rouge Parish District Attorney's office for hazing, to which he pled "no contest."[33] Isto began attending LSU in the fall of 2016.[34] He testified that his understanding of fraternities was that they were places to meet people and to drink.[35] He joined Phi Delt fraternity in the fall of 2016.[36] He described the culture of Phi Delta Theta as "built around hazing."[37] In the fall of 2017, Isto was a sophomore and an active member of Phi Delt fraternity.[38] He continued the tradition of hazing he had experienced as a pledge, explaining that he wanted pledges to undergo the same type of hazing.[39]

Isto admitted that the purpose of his participation in the "lineup" and "Bible Study"

---

[28] Rec. Doc. 1, ¶ 4.
[29] *Id.* The terms "lineup" and "Bible Study" appear to be used interchangeably and refer to the same event that occurred on September 13, 2017.
[30] *Id.*
[31] *Id.* at ¶ 6.
[32] *Id.* at ¶ 33.
[33] Rec. Doc. 286-4, Isto Depo, 10:4-14; Rec. Doc. 286-5, Isto Depo, 100:18-23.
[34] Rec. Doc. 286-4, Isto Depo, 18:22-23.
[35] *Id.* at 21:6-11.
[36] *Id.* at 23:7-9.
[37] Rec. Doc. 286-6, Isto Depo, 181:15-19.
[38] Rec. Doc. 286-4, Isto Depo, 32:13-17.
[39] Rec. Doc. 286-4, Isto Depo, 62:17-25; Rec. Doc. 286-5, Isto Depo, 164:2-20.

was to haze the pledges.[40]  Isto arrived at the house at approximately 10:20 p.m. for Bible Study.[41]  He went upstairs where the "lineup" was already taking place. The pledges were standing in a dark hallway with their noses against the wall.[42] Loud music was playing, strobe lights were on, and the pledges were drinking.[43] The pledges were ordered to assume the "wall sit" position where they would press their backs against one wall and brace their legs against the other. Members of the fraternity would then walk across the pledge's legs with the express purpose of inflicting pain.[44]

Isto admitted to handling the bottles of alcohol that were given to the pledges.[45] One brand of liquor being consumed was Diesel, a 190-proof grain alcohol,[46] and Isto brought a bottle of Captain Morgan rum that the pledges were required to drink.[47] Isto admitted that pledges were "forced" or "required" to consume the alcohol; that he participated in this hazing; that he knew it was illegal; and that he knew someone could be killed or harmed as a result.[48] Isto further admitted that, after the conclusion of the "Bible Study," Max appeared to be the most intoxicated of the participating pledges.[49]

Allstate Canada contends its Policy excludes coverage for bodily injury caused by the intentional and/or criminal actions of its insureds.  It also excludes coverage for bodily injury caused by the physical, psychological or emotional abuse or harassment occasioned by an insured person as well as any bodily injury that arises from an insured

---

[40] Rec. Doc. 286-4, Isto Depo, 67:10-68:1.
[41] *Id.* at 69:1-4.
[42] *Id.* at 69-73.
[43] *Id.* at 69:16, 71:22-25.
[44] Rec. Doc. 286-5, Isto Depo, 92:12-94:18.
[45] Rec. Doc. 286-4, Isto Depo, 73:15-20.
[46] Rec. Doc. 286-4, Isto Depo, 74:3-11; Rec. Doc. 286-6, Isto Depo, 207:12-21.
[47] Rec. Doc. 286-4, Isto Depo, 77:15-22..
[48] *Id.* at 60:14-25, 63:5-19.
[49] Rec. Doc. 286-5, Isto Depo, 96:11-24.

person's failure to prevent such physical, psychological or emotional abuse from occurring.[50]

Plaintiffs filed an *Opposition* accompanied by an *Opposing Statement of Material Facts*,[51] denying or qualifying most of the purported facts offered by Allstate Canada. Plaintiffs take issue with Allstate Canada quoting allegations from the original *Complaint*, since the *Second Amended Complaint* controls.[52] Citing record evidence, Plaintiffs claim Isto never asked or told Max to drink alcohol during the Bible Study because he did not know Max well enough and did not feel comfortable asking him to drink.[53] Isto never gave Max alcohol on September 13-14, 2017, and he never told any of the other Phi Delt members at the September 13, 2017 Bible Study to make Max drink alcohol.[54] Isto observed the Greek alphabet phase of the Bible Study, but he did not direct Max to drink alcohol during that phase, or any other time during Bible Study.[55] Plaintiffs also contend Isto did not admit to requiring Max to do wall sits or wear a garbage bag during Bible Study. Isto specifically denied directing the pledges to assume the position of a wall sit, and he testified that he did not know who tied the garbage bag around Max's neck or why a garbage bag was tied around Max's neck.[56]

Plaintiffs also challenge Allstate Canada's evidence that Isto acknowledged that

---

[50] Rec. Doc. 286-7, Policy, p. 6.

[51] Rec. Doc. 292-2.

[52] Rec. Doc. 292, p. 13 fn. 2 ("For example, the Gruvers no longer allege that Isto, *inter alia*, "[p]articipated in, gave material support to, authorized, encouraged, and permitted the hazing and misconduct that harmed and imperiled Max." See Rec. Doc. No. 286-3 at 2 (citing Rec. Doc. No .1, ¶33(a)). The Gruvers now allege that Isto "participated in, gave material support to, authorized, encouraged, permitted **and/or failed to prohibit or stop** the hazing and misconduct that harmed and imperiled Max." *See* Rec. Doc. No. 214 at 17 ¶79(a) (emphasis added).").

[53] Rec. Doc. 288-11, Isto Depo. at 82:15-83:8, 210:11-14; *see also* Rec. Doc. 288-9, Forde Depo at 93:18-94:4.

[54] Rec. Doc. 288-11, Isto Depo at 210:15-20.

[55] *Id.* at 82:15-83:8, 98:2-9, 210:11-14.

[56] Rec. Doc. 292-4, Isto Depo at 86:8-88:5, 89:10-23. The Greek alphabet phase, wall sits, and wearing garbage bags are explained in further detail, *infra.*

he knew his conduct in the "lineup" was illegal or that someone could get killed by this behavior.  Plaintiffs cite Isto's testimony, where he denied that he understood "that subjecting a student to unreasonable risk of harm by requiring him to consume toxic amounts of alcohol would be considered hazing?"[57] Plaintiffs further point out that the testimony cited by Allstate Canada, wherein Isto testified that he understood that what pledges were being forced to do in the "lineup" was illegal and could result in someone being harmed or killed, was not asked about the night of September 13, 2017, but about a pledge event that took place before September 13, 2017.[58]  Plaintiffs submit that Allstate Canada's "statements of fact" that the Allstate Canada Policy excluded coverage for Isto's conduct should be stricken as legal conclusions.[59]

Allstate Canada did not submit a reply statement of material facts specifically addressing the offered facts in Plaintiffs' controverting statement.  As to Allstate Canada's motion, the Court finds that there are genuinely disputed material facts.

### D.  Facts Deemed Admitted for Plaintiff's Motion

As discussed above, Allstate Canada failed to respond to Plaintiffs' motion; it did not file a memorandum in opposition controverting Plaintiffs' legal arguments, and it did not file a Statement of Disputed Facts as required by the Local Rules.  Allstate Canada's memorandum in support of its *Motion for Summary Judgment* does not serve as an opposition to Plaintiff's properly supported *Motion for Partial Summary Judgment*.  The following facts are unopposed and, thus, deemed admitted.

---

[57] *Id.* at 31:16-20.
[58] *Id.* at 55:12-63:17
[59] Rec Doc. 292-2, pp. 7-11.

1. <u>Hazing Incident and Death of Max Gruver</u>

In the fall of 2017, Max was in his first semester as an undergraduate student at LSU in Baton Rouge, Louisiana,[60] when he pledged the Louisiana Beta Chapter of Phi Delta Theta Fraternity.[61]  On September 13, 2017, Phi Delt members called and/or texted Max and the other Phi Delt pledges and told them to be at the Phi Delt fraternity house at 23 Dalrymple Drive, Baton Rouge, Louisiana, at 10:00 p.m. sharp.[62]

After they arrived, Phi Delt members took away the pledges' cell phones, took the pledges upstairs, and lined them up and down the second-floor hallway facing the wall.[63] Max was positioned near the middle of the hallway and the middle of the line.[64] The hallway lights were off, loud music was playing, and strobe lights were on.[65] Phi Delt members then subjected the pledges to a ritual known within the fraternity as a "line-up" or "Bible Study."[66] During Bible Study, fraternity members asked the pledges questions, and if the pledges answered the questions incorrectly, they were told to take a "pull" – or drink – from a bottle of alcohol for as long as the members told them to drink.[67] On the night of September 13, 2017, the primary alcohol the pledges were told to drink was Diesel, a 190-proof grain alcohol, also known as Everclear.[68] The Diesel had been purchased for Phi Delt's tailgates by Phi Delt members.[69]

---

[60] Rec. Doc. 288-6.
[61] Rec. Doc. 288-7, Pennison Depo at 25:2-4; Rec. Doc. 288-8, Kirkpatrick Depo at 65:3-8.
[62] Rec. Doc. 288-9, Forde Depo at 67:10-22; Rec. Doc. 288-10, Rabalais Depo at 13:24-14:3, 40:12-41:2.
[63] Rec. Doc. 288-9, Forde Depo at 71:10-72:3, 73:3-5, 74:8-14; Rec. Doc. 288-10, Rabalais Depo at 14:11-15:6.
[64] Rec. Doc. 288-10, Rabalais Depo at 15:7-13.
[65] Rec. Doc. 288-9, Forde Depo at 74:8-16; Rec. Doc. 288-10, Rabalais Depo at 15:14-17.
[66] Rec. Doc. 288-9, Forde Depo at 75:14-22; Rec. Doc. 288-11, Isto Depo at 66:2-9; Rec. Doc. 288-7, Pennison Depo at 152:20-153:3.
[67] Rec. Doc. 288-10, Rabalais Depo at 15:18-24; Rec. Doc. 288-9, Forde Depo at  83:3-84:23.
[68] Rec. Doc. 288-10, Rabalais Depo at 15:25-16:12; Rec. Doc. 288-11, Isto Depo at 73:25-74:11, 76:9-13.
[69] Rec. Doc. 288-9, Forde Depo at 76:24-77:2; Rec. Doc. 288-11, Isto Depo at 76:14-17.

Isto was one of the Phi Delt members present for Bible Study on September 13, 2017.[70] Isto had pledged Phi Delt the previous year, in the fall of 2016.[71] Isto and his fellow pledges were hazed by Phi Delt members in the fall of 2016.[72] The hazing included line-ups, where the pledges were forced by Phi Delt members to answer questions and consume alcohol when they answered those questions incorrectly.[73] Isto was forced to consume Diesel on two occasions when he was a Phi Delt pledge, including once during a lineup.[74] Isto understood at the time that the hazing he was enduring as a pledge was a tradition that had been passed down from prior pledge classes.[75] When Isto was a pledge, while it was technically true that he could opt out and say, "I don't want to drink alcohol," doing so would result in a consequence for the rest of his pledge brothers who would have to drink more alcohol on an individual basis.[76] Although hazing was an awful experience to go through, Isto believed at the time that there were benefits to it.[77] Those benefits for Isto included free alcohol, gaining membership into Phi Delt, and making friends with a lot of the older members who hazed him.[78] Isto "got to know a lot of the active[] [Phi Delt] members from being hazed by them," and "[a] lot of them became [his] friends after."[79]

Isto participated in hazing in the fall of 2017 to get to know the pledges and hang

---

[70] Rec. Doc. 288-11, Isto Depo at 64:25-65:7, 69:7-74:6; Rec. Doc. 288-9, Forde Depo at 75:7-10, 93:13-94:1.
[71] Rec. Doc. 288-11, Isto Depo at 23:7-9.
[72] *Id.* at 67:21-68:8, 171:12-172:13; Rec. Doc. 288-12, Castillo Decl. at ¶¶ 5-26.
[73] Rec. Doc. 288-12, Castillo Decl. at ¶¶ 6-11.
[74] Rec. Doc. 288-11, Isto Depo at 74:17-22, 180:6-181:14.
[75] *Id.* at 182:5-9.
[76] *Id.* at 170:25-171:6.
[77] *Id.* at 209:14-17.
[78] *Id.* at 62:17-25, 209:9-21.
[79] *Id.* at 68:18-20.

out with them.[80]  Isto testified that he "was hazed, and then [he] participated to get to know people in the fraternity."[81]  Isto was one of the Phi Delt members who handed bottles of alcohol to pledges to consume during the September 13, 2017 Bible Study.[82] Isto mostly gave drinks to pledges that he knew from previous interactions at fraternity events.[83]  Isto never asked or told Max to drink alcohol during Bible Study because he did not know him well enough, and he did not feel comfortable asking him to drink.[84]  Isto never gave Max alcohol on September 13-14, 2017.[85]  Isto never told any of the other Phi Delt members at the September 13, 2017 Bible Study to make Max drink alcohol.[86]

At some point, Isto became personally uncomfortable with what was transpiring during Bible Study on September 13, 2017.[87] The intensity of the Bible Study reminded Isto of his pledge class's "Hell Week," which was the last week of pledgeship for his pledge class.[88] Isto was shocked by some of what was occurring during the September 13, 2017 Bible Study because, compared to his experience as a Phi Delt pledge, it seemed to be happening earlier in the pledge process than it did for his pledge class.[89] Nevertheless, Isto did not intervene to stop or temper what took place in the September 13, 2017 Bible Study.[90]

During the last phase of the September 13, 2017 Bible Study, pledges were asked

---

[80] *Id.* at 67:21-68:1, 182:3-4, 208:20-209:13.
[81] *Id.* at 182:3-4.
[82] *Id.* at 73:15-24.
[83] *Id.* at 77:9-78:20.
[84] *Id.* at 82:15-83:8, 210:11-14; Rec. Doc. 288-9, Forde Depo at 93:18-94:4.
[85] *Id.*
[86] Rec. Doc. 288-11, Isto Depo at 210:15-20.
[87] *Id.* at 83:9-12.
[88] *Id.* at 83:16-84:4.
[89] *Id.* at 140:24-141:23.
[90] *Id.* at 88:9-13.

to recite the Greek alphabet.[91] Max was singled out by some Phi Delt members during the Greek alphabet phase of Bible Study.[92] During this phase, Max was forced to take more and longer pulls of Diesel than any other pledge.[93] One Phi Delt member, Matthew Naquin ("Naquin"), directed Max to drink each time he answered a question incorrectly, and he asked Max more questions than he asked the other pledges.[94] During the Greek alphabet phase, Naquin made Max take pulls of Diesel that were often five seconds or longer.[95] Isto observed the Greek alphabet phase of the Bible Study, but he did not direct Max to drink alcohol during that phase or any other time during Bible Study.[96]

Bible Study ended around 12:30 a.m. on September 14, 2017.[97]  Max was the most visibly intoxicated pledge when Bible Study ended.[98] Witnesses observed Max slurring his words after Bible Study,[99] and some fraternity members helped Max down the stairs to the first floor of the fraternity house.[100] Max was laid down on a couch, where he became unconscious[101] around 12:34 a.m. as evidenced by the text of a Phi Delt pledge that notified the pledge class via the pledges' "Phi Delt 2017 Pledge Blass" GroupMe thread that Max was "passed out."[102] Isto was still at the Phi Delt fraternity house when Max became unconscious.[103] A group of Phi Delt members gathered around Max when

---

[91] Rec. Doc. 288-10, Rabalais Depo at 67:24-68:19.
[92] *Id.* at 19:5-12, 90:11-23.
[93] *Id.* at 19:13-20:2, 68:20-69:1.
[94] Rec. Doc. 288-11, Isto Depo at 96:21– 97:23; Rec. Doc. 288-10, Rabalais Depo at 90:16-23.
[95] Rec. Doc. 288-10, Rabalais Depo at 20:3-12.
[96] Rec. Doc. 288-11, Isto Depo at 82:15-83:8, 98:2-9, 210:11-14.
[97] Rec. Doc. 288-10, Rabalais Depo at 45:5-9.
[98] Rec. Doc. 288-11, Isto Depo at 96:11-20.
[99] Rec. Doc. 288-10, Rabalais Depo at 23:1-16; Rec. Doc. 288-8, Kirkpatrick Depo at 91:17-22.
[100] Rec. Doc. 288-12, Castillo Decl. at ¶ 42.
[101] Rec. Doc. 288-8, Kirkpatrick Depo at 169:20-24; Rec. Doc. 288-12, Castillo Decl. at ¶ 43.
[102] Rec. Doc. 288-13, Phi Delt 2017 Pledge Blass GroupMe (Screenshot Format)(Dep. Exhibit 1011) at LSU003886; Rec. Doc. 288-14, Phi Delt 2017 Pledge Blass Group Me (Spreadsheet Format)(Dep. Exhibit 1013) at 40; *see also* Rec. Doc. 288-15, Cerise Depo at 75:2-25, 77:1-10, 87:12-23, 102:1-103:11; Rec. Doc. 288-10, Rabalais Depo at 34:2-22.
[103] Rec. Doc. 288-11, Isto Depo at 99:10-12.

he was passed out on the couch,[104] and someone in that group asked if they should do something, like call an ambulance.[105] Another member of the group checked Max's pulse and breathing.[106] No one called an ambulance or 911 for Max.[107]

Isto drove himself home after Bible Study.[108] Isto testified that he thought there was going to be a pledge or someone checking on Max or taking care of him, but he admitted that he did not "recall anything that happened with that."[109] Isto testified that it never occurred to him that night that Max was going to need medical attention.[110]

The next morning, on September 14, 2017, a decision was made to take Max to the hospital.[111] At that point, Max had been unconscious for approximately ten-and-a-half hours.[112] Max arrived at the Emergency Department of Our Lady of the Lake Regional Medical Center at approximately 11:01 a.m. on September 14, 2017.[113] Emergency Department provider notes state:

> Patient was immediately brough via wheelchair into the critical care room where he was placed in a stretcher and CPR was started after we were unable to palpate a pulse. He had no spontaneous respirations and was covered in dark brown emesis. Bag-valve mask ventilation was begun and a large amount of emesis was suctioned from his oropharynx. I attempted to intubate with a mac but was unable to visualize his airway and was needed to continue suctioning large amounts of emesis from his upper airway and vallecula. I was able to intubate him using the glide scope without further complications. He remained in asystole throughout the code. O2 sat rose to 100% after intubation and throughout code. A large amount of emesis was suctioned from the ET tube. He was treated with code

---

[104] Rec. Doc. 288-12, Castillo Decl. at ¶ 44.

[105] *Id.* at ¶ 45.

[106] *Id.* at ¶ 46.

[107] Rec. Doc. 288-7, Pennison Depo at 77:11-17.

[108] Rec. Doc. 288-11, Isto Depo at 98:19-22.

[109] *Id.* at 99:19-22, 178:9-25.

[110] *Id.* at 100:10-17.

[111] Rec. Doc. 288-7, Pennison Depo at 74:20-24.

[112] *Id.* at 76:18-22; Rec. Doc. 288-13, Phi Delt 2017 Pledge Blass GroupMe (Screenshot Format) (Dep. Exhibit 1011) at LSU003886; Rec. Doc. 288-14, Phi Delt 2017 Pledge Blass Group Me (Spreadsheet Format) (Dep. Exhibit 1013) at 40.

[113] Rec. Doc. 288-16, Records from Our Lady of the Lake Regional Medical Center at GRUVER001614.

> medications as found in nursing note. Lab work revealed was significant for profound lactic and metabolic acidosis. Ethanol levels were greater than 460 after being diluted 2 to 1. He was declared dead after resuscitative efforts were deemed futile.[114]

Max was declared dead at 11:37 a.m. on September 14, 2017.[115] On October 23, 2017, the East Baton Rouge Parish Coroner, William "Beau" Clark, M.D., issued a report concluding that the cause of Max's death was "Acute ethanol intoxication with aspiration."[116]

## 2. Isto's No Contest Plea to Hazing Charge

At the time of the incident, La. R.S. 17:1801 prohibited "[h]azing in any form, or the use of any method of initiation into fraternity organizations in any educational institution supported wholly or in part by public funds, which is likely to cause bodily danger or physical punishment to any student or other person attending any such institution."[117] On March 15, 2018, the Grand Jury of the Parish of East Baton Rouge charged Isto with the "offense of Hazing violating Louisiana Revised Statutes 17:1801."[118] On September 6, 2018, Isto entered into a plea agreement with the State of Louisiana in the matter captioned, State of Louisiana v. Ryan Isto, No. 12-17-0104, Sec. VII, 19th Judicial District Court, Parish of East Baton Rouge.[119] Through the plea agreement, Isto pleaded no contest to one count of Hazing in violation of La. R.S. 17:1801.[120] Isto and the State of Louisiana stipulated to the following facts:

> On or about September 13, 2017, Ryan Isto, an active member in Phi Delta Theta Fraternity at Louisiana State University, knowingly and intentionally hazed incoming members of Phi Delta Theta Fraternity at Louisiana State

---

[114] *Id*.
[115] *Id*. at GRUVER001620; Rec. Doc. 288-5, Certification of Death for Maxwell R. Gruver.
[116] Rec. Doc. 288-17, Report of the Coroner.
[117] La. R.S. 17:1801.
[118] Rec. Doc. 288-18, Indictment.
[119] Rec. Doc. 288-19, Isto Plea Agreement.
[120] *Id*. at ¶ 1; Rec. Doc. 288-11, Isto Depo at 10:4-14.

University at the Phi Delta Theta house located at 23 Dalrymple Drive. Specifically Ryan Isto participated in a "Bible Study" hazing event where incoming members were placed in a line, asked questions, and made to drink grain alcohol. Ryan Isto asked questions and ordered some incoming members to drink hard alcohol at this event, which was likely to cause bodily danger to the incoming members of Phi Delta Theta who were also students at Louisiana State University.[121]

### 3.  Isto's Parents and University History

Isto's parents are Mark Isto and Ann Isto.[122] Isto's parents live in Oakville, Ontario, Canada.[123] After graduating from high school, Isto began attending LSU in the fall of 2016 when he was 17 years old.[124] On September 13-14, 2017, Isto was enrolled in and actually attending LSU as an undergraduate student.[125] During the time he was enrolled at LSU, Isto was under the age of 21.[126] In the spring of 2018, Isto transferred from LSU to Montana Technological University ("MTU").[127] From the fall of 2016 through the spring of 2022, when he was enrolled in and actually attending LSU and MTU, Isto was dependent upon his parents, Mark and Ann Isto, for support and maintenance.[128]

### 4.  The Allstate Canada Policy

Allstate Canada issued a homeowners insurance Policy to Mark and Ann Isto bearing policy number 151409848 in Canada.[129] Max Gruver's death took place during the term of the Allstate Canada Policy, which was in effect from May 1, 2017 to May 1,

---

[121] Rec. Doc. 288-19, Isto Plea Agreement at ¶ 8.
[122] Rec. Doc. 288-11, Isto Depo at 18:13-15; Rec. Doc. 288-20, Isto Decl. at ¶ 4.
[123] Rec. Doc. 288-11, Isto Depo at 18:16-17.
[124] Id. at 18:22-23; Rec. Doc. 288-20, Isto Decl. at ¶ 6.
[125] Rec. Doc. 288-20, Isto Decl. at ¶ 7.
[126] Id. at ¶ 8.
[127] Rec. Doc. 288-11, Isto Depo at 7:12-19, 18:24-19:2, 211:6-8.
[128] Rec. Doc. 288-20, Isto Decl. at ¶ 10.
[129] Rec. Doc. 288-21, Affidavit of Michael Ross, ¶¶ 14, 17; Rec. Doc. 288-22, Certified Copy of Allstate Canada Policy; Rec. Doc. 236-1, Allstate Canada's Memorandum in Support of Motion of Allstate Insurance Company of Canada, Inc. for Lack of Personal Jurisdiction, p. 3 ("Mover issued a homeowner's policy number 151409848 to Mark and Ann Isto of 1432 Stoneybrook Trail Oakville, Ontario, Canada, as listed Insureds."); Rec. Doc. 275, p. 2, ¶ III, Allstate Canada's Answer to Second Amended Complaint (admitting that "a policy of insurance was issued by Allstate")).

2018, including on September 13-14, 2017.[130]  Mark and Ann Isto are Named Insureds under the Allstate Canada Policy.[131]

The Policy provides that "a student who is enrolled in and actually attends a school, college or university and who is dependent upon the Named Insured or his or spouse for support and maintenance is also insured even if temporarily residing away from the principal residence stated on the Declaration page."[132] Under the Allstate Canada Policy, "You" and "Your" "refers to the Insured."[133] The Allstate Canada Policy defines "Bodily Injury," in pertinent part, as "bodily injury or death."[134] The Allstate Canada Policy defines "Legal Liability" as "responsibility which courts recognize and enforce between persons who sue one another."[135] One of the "Liability Coverages" in the Allstate Canada Policy is "COVERAGE X – Family Liability."[136] The COVERAGE X – Family Liability section of the Allstate Canada Policy states, in pertinent part, the following:

---

[130] Rec. Doc. 288-23, Allstate Canada's Offer to Renew to Mark & Ann Isto, Policy No. 151409848.
[131] *Id*.; Rec. Doc. 288-21, Affidavit of Michael Ross, ¶¶ 14, 16.
[132] Rec. Doc. 288-22, Certified Copy of Allstate Canada Policy, Section I, Definitions, "Insured."
[133] *Id*.
[134] *Id*.
[135] *Id*. at Section II – Liability Coverages, "Legal Liability."
[136] *Id*.

**COVERAGE X – Family Liability**

We will pay all sums which you become legally liable to pay as compensatory damages because of unintentional Bodily Injury or Property Damage.

The amount of insurance is the maximum amount that we will pay, under one or more Sections of Coverage X, for all compensatory damages in respect of one accident or occurrence.

You are insured for claims made against you arising from:

1. **Personal Liability** – Legal Liability arising out of your personal actions anywhere in the world.

   You are not insured for claims made against you arising from:

   (a) the ownership, use or operation of any motorized vehicle, trailer, or watercraft, except those insured in this policy;

   (b) damage to property you own, use, occupy or lease;

   (c) damage to property in your care, custody or control;

   (d) damage to personal property or fixtures as a result of work performed by you or anyone on your behalf;

   (e) Bodily Injury to you or to any person residing in your household other than a residence employee.

On or around December 17, 2019, Michael Ross ("Ross"), an Insurance Adjuster for Allstate Canada, sent a letter to Isto, c/o Isto's attorney, Michael A. Fiser.[137] Ross confirmed "receipt of the civil action a Statement of Claim issued against you by the Plaintiffs Gruver et al."[138] Ross advised that Allstate Canada had "concluded that there is no coverage available to you under your VIP Homeowner's Policy that would require Allstate Canada  to either defend you or indemnify you with respect to allegations made against you in the Statement of Claim."[139] Ross further advised that Allstate Canada was "denying coverage" to Isto "for this incident under Policy No. 151409848."[140]

In his letter, Ross cited three "Policy exclusion[s]" as the basis for Allstate Canada's conclusion that "there is no coverage available to you under your VIP

---

[137] Rec. Doc. 288-24, 12/17/19 Letter from M. Ross to R. Isto; Rec. Doc. 288-25, Plaintiffs' Requests for Admission to Allstate Canada at Request for Admission No. 12 and Exhibit B; Allstate Canada's Answer to Request for Admission No. 12; Rec. Doc. 288-21, Affidavit of Michael Ross at ¶ 2.
[138] Rec. Doc. 288-24, 12/17/19 Letter from M. Ross to R. Isto, p. 1.
[139] *Id.*
[140] *Id.*

Homeowner's Policy that would require Allstate Canada to either defend you or indemnify you with respect to allegations made against you in the Statement of Claim":[141]

> *"(9) Bodily Injury or Property Damage caused by any intentional or criminal acts or failure to act by:*
>
> *1. any person insured by this policy; or*
>
> *2. any other person at the direction of any person insured by this policy.*
>
> *(10) a) sexual, physical, psychological or emotional abuse, molestation or harassment, including corporal punishment by, at the direction of, or with the knowledge or any person insured by this policy; or*
>
> *(13) punitive or exemplary damages, meaning that part of any award by a court which is in excess of compensatory damages and is stated to be a punishment to you"*

The Policy exclusions cited by Ross are set forth in the Allstate Canada Policy.[142]

### 5. The Court's July 1, 2020 *Order* Dismissing Isto

On June 23, 2020, with leave of Court, Plaintiffs filed a *Second Amended Complaint* wherein they named Allstate Canada as a Defendant.[143] On July 1, 2020, this Court entered an *Order* partially dismissing Plaintiffs' claims against Isto, with prejudice.[144] In the July 1, 2020 *Order*, the Court ordered:

> 1. Plaintiffs' claims against Defendant Isto which may be recovered directly against Defendant Isto and/or State Farm Fire and Casualty Company, in its capacity as homeowner's insurer for Mark E. Isto and Ann M. Isto (Policy No. 26-BF-2410-6), only, are dismissed, with prejudice, and with each party to bear its own costs; and

---

[141] *Id.* at pp. 1-2.
[142] Rec. Doc. 288-22, Certified Copy of Allstate Canada Policy, Section II – Liability Coverages, "LOSS OR DAMAGE NOT INSURED (Applying to Section II)" (Rec. Doc. No. 236-2 at 13).
[143] Rec. Doc. 214, ¶ 30.
[144] Rec. Doc. 217.

2. This Order applies only to Plaintiffs' claims against Defendant Isto which may be recovered directly against Defendant Isto or State Farm, in its capacity as homeowner's insurer for Mark E. Isto and Ann M. Isto, only; and

3. Plaintiffs' claims against Defendant Isto remain active and pending to the to the extent collectible coverage is afforded under any other applicable policy of insurance, including the VIP Homeowner's Policy, Policy No. 151409848, issued by Allstate Insurance Company of Canada, Inc.; and

4. Defendant Isto shall remain in this action as a nominal Defendant to determine his legal liability for Plaintiffs' claims, if any, and to determine the liability, if any, of any other insurers that may provide coverage to, for, or on behalf of Defendant Isto related to Plaintiffs' claims against Defendant Isto; and

5. Plaintiffs' claims also remain active and pending against all other Defendants with whom Plaintiffs have not settled.[145]

On September 17, 2021, Allstate Canada answered the *Second Amended Complaint*.[146] Allstate Canada did not set forth affirmative defenses in its *Answer* other than averring "that this incident and/or incidences were in no way due to their fault but were due to the fault and/or negligence of petitioner, or others for whom your defendants are not responsible, all of which acts and/or omissions shall be shown at the trial of this matter."[147]

### 6. Plaintiffs' Liability Expert

Dr. Andrew I. Stolbach ("Dr. Solbach") was retained by counsel for the Gruvers as an expert witness in this case.[148] As part of his engagement, on July 28, 2022, Dr. Stolbach prepared a signed written report.[149] Dr. Stolbach's written report sets forth the opinions he will express in this case, as well as the basis and reasons for them.[150] On

---

[145] *Id.* at pp. 1-2.
[146] Rec. Doc. 275.
[147] *Id.* at p. 4, ¶ XV.
[148] Rec. Doc. 288-26, Stolbach Decl., ¶ 5.
[149] *Id.* at ¶ 6.
[150] *Id.* at Exhibit 1, Stolbach Written Report.

August 1, 2022, pursuant to Fed. R. Civ. P. 26(a)(2) and the Court's June 1, 2022 *Third Amended Scheduling Order*,[151] the Gruvers, by and through counsel, served their expert disclosures on all other counsel of record, including counsel for Isto and Allstate Canada.[152]  In their expert disclosures, the Gruvers identified Dr. Stolbach as a witness retained by them to provide expert testimony in this case.[153] The Gruvers attached a copy of Dr. Stolbach's written report to their disclosures.[154]  September 12, 2022 was the deadline for Isto and Allstate Canada to disclose the identities of their experts and produce those experts' resumes and reports.[155]  Neither Isto nor Allstate Canada disclosed any expert witnesses by the September 12, 2022 deadline.[156] Pursuant to the *Third Amended Scheduling Order*, discovery from experts had to be completed by October 14, 2022.[157]  Neither Isto nor Allstate Canada requested, noticed, or took the deposition of Dr. Stolbach.[158] Dr. Stolbach has adopted, verified, and reaffirmed all of the opinions set forth in his written report.[159] Based on the above, Dr. Stolbach's opinions are uncontradicted and unimpeached.

Although the preceding facts are deemed admitted for purposes of Plaintiffs' motion, the Court cannot grant summary judgment merely because the motion is unopposed.[160] Considering the facts deemed admitted, the Court must still determine whether a movant is entitled to judgment as a matter of law. The primary legal issues

---

[151] Rec. Doc. 285.
[152] Rec. Doc. 288-27, Fazzola Decl., ¶ 14.
[153] *Id.* at ¶ 15.
[154] *Id.* at ¶ 16.
[155] Rec. Doc. 285, p. 1.
[156] Rec. Doc. 288-27, Fazzola Decl., ¶ 17.
[157] Rec. Doc. 285, p. 2.
[158] Rec. Doc. 288-27, Fazzola Decl., ¶ 18.
[159] Rec. Doc. 288-26, Stolbach Decl., ¶ 8.
[160] Fed. R. Civ. Proc. 56(e)(3); *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3 (5th Cir. 1995).

presented by the Parties in these cross-motions are: (1) whether the law of Canada or Louisiana applies to the Allstate Canada Insurance Policy at issue, and (2) under the appliable law, whether coverage exclusions apply based on Isto's conduct.  Because the legal issues and arguments are the same for both Parties' motions, the Court will address them simultaneously.  As stated repeatedly, Allstate Canada has not responded to any legal arguments or jurisprudence offered by Plaintiffs nor has it contradicted the Plaintiffs' statement of undisputed facts.

### E.  Plaintiffs' Experts

Plaintiffs have offered two experts to oppose Allstate Canada's motion and support their own motion.  Plaintiffs correctly note as follows:

> The Fifth Circuit has held that where … "a party opposing summary judgment fails to present evidence sufficient to make an issue of an expert's conclusions – such as contrary opinion evidence or evidence tending to undermine the expert's credibility – and when 'the trier of fact would not be at liberty to disregard arbitrarily the unequivocal, uncontradicted and unimpeached testimony of an expert witness,' expert testimony may form the basis of summary judgment. *Watson v. Allstate Tex. Lloyd's*, 224 Fed. Appx. 335, 342 (5th Cir. 2007) (quoting *Webster v. Offshore Food Service, Inc.*, 434 F.2d 1191, 1193-94 (5th Cir. 1970)); *see also Dean v. Chrysler Corp*. 1994 U.S. App. LEXIS 42225, at *17 (5th Cir. 1994) ("Although opinion testimony is usually evaluated by the factfinder as to credibility of the expert and the weight it should be given, if the only issue is one of the kind on which expert testimony must be presented, and nothing is presented to challenge the affidavit of the expert, summary judgment may be proper.") (citations and quotations omitted).[161]

As mentioned above, Allstate Canada never deposed either of Plaintiffs' experts, never filed *Daubert* challenges, and never offered competing evidence to contradict Plaintiffs' experts' opinions at any time, in any manner.  Allstate Canada did not move to file a reply to Plaintiffs' opposition to its own motion, and Allstate Canada failed entirely to oppose or

---

[161] Rec. Doc. 288-1, p. 20 n. 6.

respond to Plaintiffs' motion.  Accordingly, the Court finds that Plaintiffs' experts' opinion testimony may, here, form the basis for a summary judgment in Plaintiffs' favor.

**F.  Coverage Under the Policy**

1.  Canadian Law Applies to the Interpretation of the Policy

In support of its motion, Allstate Canada quotes the entirety of La R.S. 14:40.8, Louisiana's current Criminal Hazing Statute, then claims that Isto's conduct on September 13, 2017 meets the definitions of the two purported exclusions:  criminal conduct and encouraging the physical, psychological, and/or emotional abuse and harassment of Max and other pledges. Then, without any discussion or explanation, Allstate Canada cites a string of cases wherein Louisiana state courts have applied Louisiana law and upheld the intentional and criminal act exclusion in insurance policies. In doing so, Allstate Canada successfully argued that the law of Canada, not Louisiana, applies to this Policy issued in Canada, and the Court so ruled.[162]   While the Court ruled against Allstate Canada, finding that this Court had personal jurisdiction over Allstate Canada, the Court accepted as undisputed that the law of Canada applied to the Policy at issue: "Allstate Canada also argues that Louisiana's interest is lessened because Canadian law governs interpretation of the Policy. It seems to be undisputed that the Policy issued by Allstate Canada is governed by Canadian law."[163]

Plaintiffs oppose Allstate Canada 's motion and support their own motion, arguing that Allstate Canada is judicially estopped[164] from changing its prior position that

---

[162] Rec. Doc. 270.

[163] *Id.* at p. 9 (citing Rec. Doc. 236-1, p. 11; Rec. Doc. 238, pp.18-19).

[164] The Court agrees that Allstate Canada's conduct meets the test for the application of judicial estoppel. *See* Rec. Doc. 292, p. 17 ("Judicial estoppel is an equitable doctrine that 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.' *Owens v. W. & S. Life. Ins. Co.*, 717 F. App'x 412, 417 (5th Cir. 2018) (citing *Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014). The doctrine 'prevent[s] litigants from playing fast and

Canadian law applies to the Policy.[165]   Further, Plaintiffs contend that the Policy was issued in Canada and does not contain a choice-of-law provision; thus, under Louisiana law, Canadian law governs the interpretation of the Policy. Applicable jurisprudence favors Plaintiffs' position.[166]

It is true that Louisiana courts "generally choose the law of the state in which the insurance policy in question was issued to govern the interpretation of the terms of the policy."[167] Under Louisiana Civil Code article 3515, "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."[168] Whether applying Louisiana or Canadian law, the interpretation of the exclusions seems to favor coverage by the insurer, so using one body of law over another should not cause harm to the victim. However, some useful factors in determining which law governs are:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties;
> (2) the nature, type, and purpose of the contract; and
> (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other."[169]

It is common in insurance cases for the place of the incident to be different than

---

loose with the courts, and protects the integrity of the judicial process.' *Id.* (citations and internal quotations omitted). 'Two elements are necessary for judicial estoppel: (1) the estopped party's position must be clearly inconsistent with its previous one, and (2) that party must have convinced the court to accept that previous position.' *Id.* (citations and internal quotations omitted).")  However, the Court also finds, as a matter of law, that Canadian law applies to the Policy in question.

[165] Rec. Doc. 292, p. 17
[166] *Id.* at p. 10.
[167] *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999).
[168] La. Civ. Code Art. 3515.
[169] La. Civ. Code Art. 3537 cmt. C; *see also Abraham v. State Farm Mut. Auto. Ins. Co.*, 465 F.3d 609, 612 (5th Cir. 2006).

the law controlling the insurance policy. For example, in *Abraham v. State Farm*, Mississippi law applied when an accident occurred in Baton Rouge between an uninsured driver with Georgia ties and another driver whose car was registered and garaged in Mississippi.[170] The Mississippi driver's insurance policy was also negotiated in Mississippi.[171] In *Rohr v. Allstate*, a Louisiana policy was cancelled and a Mississippi one sought by a motorist.[172] The court determined that Mississippi law would apply as the relevant policy at the time of the accident was a Mississippi policy, even though the accident occurred in Louisiana and the motorist (*Rohr*) had ties to the state (*Rohr* previously held a policy in the state).[173]

The Policy at issue was formed and issued in Canada. Isto's only connection to Louisiana is the incident and his attendance at LSU. Similar to the facts in *Rohr* and *Abraham*, the Parties' ties to Canada are arguably stronger than their ties to Louisiana. The main Policy holders (Isto's parents) are domiciled in Canada. The Gruvers reside outside of Louisiana. Additionally, Allstate Canada conceded previously that Canadian law would govern the Policy, admitting that the business of the insurer was meant to be governed by Canadian law.[174]

Louisiana courts generally take the place where an insurance policy was written as a strong indicator of which law should apply. Although the above cases involve automobile insurance, the same principles apply to a "roaming" policy like the one at issue, which insures from damages caused "anywhere in the world." As set forth above,

---

[170] *Abraham*, 465 F.3d at 613.
[171] *Id.*
[172] *Rohr v. Allstate Ins. Co.,* No. 06-30970, 2007 WL 3120131 at *3-4 (5th Cir. Oct. 25, 2007).
[173] *Id.*
[174] Rec. Doc. No. 236-1, p. 4.

the Isto Policy covers Isto for damages he causes (subject to exceptions) wherever he resides.   Accordingly, the Court finds that Canadian law applies to the interpretation of the Isto Policy.

      2.   <u>General Coverage Provisions</u>

The focus of Allstate Canada's motion is on the applicability of the exclusions. Allstate Canada presents scant discussion about whether the general terms and definitions in the policy are met for general coverage purposes.   Ultimately, Allstate Canada rejects the notion that Isto's conduct was negligent, arguing that "one cannot accidently, or negligently, haze another person."[175]   Allstate Canada offers no legal authority for this conclusion.   It also never provides the Court with any Canadian jurisprudence or authority to support its motion.

In support of Plaintiffs' position, they submit the Declaration of Erik S. Knutsen ("Knutsen") to assist the Court in determining and applying Canadian law.[176] "Courts frequently accept affidavits from foreign-law experts to guide their analyses of foreign law."[177]   Indeed, "Fed. R. Civ. Proc. 44.1 specifically provides that the Court "may consider any relevant material or source" to determine a foreign law issue. The purpose of Rule 44.1 is to provide flexible means for resolving such issues."[178]

---

[175] Rec. Doc. 286-3, p. 10.

[176] Rec. Doc. 288-2, Knutsen Decl.

[177] *Caterpillar Financial Services Corporation v. IZTACCIHUATL 2501*, 510 F.Supp.3d 404, 410 (E.D. La. 2020)(citing *e.g.*, *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 546–47 (5th Cir. 2012) (considering affidavits from experts on Iraqi law); *Authenment v. Ingram Barge Co.*, 878 F. Supp. 2d 672, 682 (E.D. La. 2012) (Milazzo, J.) (considering affidavit of expert on English law)).

[178] *Id.* at 411 n. 32 (Fed. R. Civ. Proc. 44.1, cmt. (noting "the rule provides flexible procedures for presenting and utilizing material on issues of foreign law"); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2444 (3d ed. 2020 update) (noting that, after the adoption of Rule 44.1, "the trial court's freedom of inquiry no longer is encumbered by any restraint on its research or by the rules of admissibility"). If declarations attesting to a foreign law issue were insufficient, that would undermine the purpose of Rule 44.1—judicial efficiency. *See* McGee, 671 F.3d at 546 (accepting affidavits as proof of foreign law)).

Knutsen is a tenured full professor at Queen's University Faculty of Law in Ontario, Canada, and an expert in Canadian insurance law.[179]   Plaintiffs argue that Knutsen's Declaration provides clear proof of the relevant Canadian legal principles that govern the interpretation of the Policy under Canadian law."   Knutsen opines that a Canadian court applying controlling Canadian law to the undisputed facts of this case would find: (1) that Isto is an "insured" under the Policy; (2) that Max's death constitutes an unintentional "Bodily Injury" covered by the Policy; and (3) that Allstate Canada owes a duty to indemnify Isto for "all sums which [he] become[s] legally liable to pay as compensatory damages because of" the unintentional "Bodily Injury" at issue in this case (the death of Max), subject to any applicable coverage exclusions[.][180]   Plaintiffs offer a lengthy discussion of Knutsen's legal opinions and conclusions, supported by attached Canadian jurisprudence, to demonstrate that they have met their burden of proving that Isto's conduct on September 13, 2017 is covered by the Policy.[181]

Plaintiffs also present Knutsen's conclusion that, "[u]nder Canadian law, comprehensive all-risks liability policies, like the Policy in this case, cover negligent and reckless conduct, including 'calculated risks.'"[182]  Knutsen concluded that this "is precisely the behaviour by Mr. Isto that the Gruvers assert against Isto on liability: negligent and reckless behaviour."[183]

Additionally, Plaintiffs offer the undisputed, unchallenged, and uncontroverted

---

[179] *Id.*; Rec. Doc. 292-1, Knutsen Supplemental Decl., ¶ 8.
[180] Rec. Doc. 288-2, Knutsen Decl., ¶¶ 78 (a)-(d).
[181] Rec. Doc. 288-1, pp. 15-18 (citations omitted).
[182] *Id.* at p. 18 (quoting Rec. Doc. 288-2, Knutsen Decl., ¶94 (citing *Canadian Indemnity Co. v. Walkem Machinery & Equipment Ltd*., [1976] 1 S.C.R. 309 at 317).
[183] *Id.* (quoting Rec. Doc. 288-2, Knutsen Decl., ¶94 (citing Second Am. Compl. (Rec. Doc. 214) at ¶¶89, 218-223)).  Plaintiffs also argue that Isto was negligent under Louisiana law.  *Id.* at pp. 12-13.  Because the Court finds that Canadian law applies to the interpretation of the Policy, the Court declines to discuss these arguments.

opinions from their medical causation expert in this case, Dr. Stolbach, who concluded, *inter alia*: (1) "Max died from 'acute ethanol intoxication with aspiration;'" (2) "[t]he treatment of alcohol intoxication is largely supportive and almost always successful. Mr. Gruver would have survived if he had received treatment sooner;"  (3) "had someone called 911 in the early morning hours of September 14, 2017, responding emergency medical service providers confronted with a patient in Mr. Gruver's condition more likely than not would have transported him to the hospital and supported his breathing with a bag-valve mask or by intubation (if medically indicated and they were credentialed for that procedure);"  and (4) Max's "treatment at Our Lady of the Lake Medical Center was reasonable and appropriate … Unfortunately, Mr. Gruver arrived too late to benefit from these interventions."[184]

 After reviewing Knutsen's Declarations and the Canadian jurisprudence attached and analyzed by Knutsen, the Court finds that Plaintiffs have demonstrated through their experts that Isto's conduct would be considered negligent under Canadian law.  Inasmuch as Allstate Canada never deposed, challenged, or controverted any of Knutsen's findings, and it did not offer its own expert to support different conclusions, the Court finds that general coverage exists under the unambiguous terms in the Policy after application of Canadian law.

The Court also agrees that Plaintiffs have alleged a claim for general negligence against Isto for his conduct on the night in question, and Dr. Stolbach's conclusions are likewise unchallenged and uncontroverted.  This conduct falls squarely within the general terms of the Policy.  The Court now turns to the purported exclusions claimed by Allstate

---

[184] Rec. Doc. 288-1, pp. 20-21 (citing SUMF, ¶¶ 103-108).

Canada.

### G. Do The Claimed Exclusions Apply?

Allstate Canada has based its summary judgment motion on two Policy exclusions: (1) an intentional or criminal act exclusion; and (2) an exclusion for claims arising out of sexual, physical, psychological or emotional abuse, molestation, or harassment.[185] Plaintiffs claim Allstate Canada cannot meet its summary judgment burden because it has waived all exclusion-based defenses, and it has not established with competent legal authority or admissible evidence that there are no genuinely disputed facts regarding Isto's legal liability.

1. <u>Waiver</u>

Plaintiffs claim Allstate Canada waived the right to raise any exclusions as affirmative defenses by failing to affirmatively plead them in its *Answer*.  Plaintiffs contend that, under Rule 8(c) of the Federal Rules of Civil Procedure, this court looks to the state law to determine what constitutes an affirmative defense, and under Louisiana law, an insurance policy exclusion must be pled specifically.[186]  Plaintiffs claim it is unfair to surprise them "with an unexpected defense" based on exclusions that were not properly raised in Allstate Canada's *Answer*.[187]  Plaintiffs concede that they obtained a copy of Allstate Canada's denial of coverage letter through Isto's counsel, not Allstate Canada, but Plaintiffs contend that does not excuse Allstate Canada's failure to comply with Rule 8(c).  They note that Allstate Canada never produced this letter in discovery or referenced any exclusions cited in the letter in any pleadings until it filed for summary judgment.[188]

---

[185] *See* Rec. Doc. 286-3, pp. 5-6.
[186] Rec. Doc. 292, pp. 19-20 (citations omitted).
[187] *Id.* at p. 20 (citation omitted)(internal quotation marks omitted).
[188] Rec. Doc. 288-1, p. 24, fn. 9.

Plaintiffs are correct that "Federal Rule of Civil Procedure 8(c) 'requires defendants to plead affirmative defenses with enough specificity or factual particularity to give the plaintiff fair notice of the defense that is being advanced.'"[189] Courts sitting in diversity look to substantive state law to determine what constitutes an affirmative defense.[190],[191] With a few minor exceptions, Louisiana law defines a policy exclusion as an affirmative defense that must be specifically pled or is waived.[192]  "However, failure to plead an affirmative defense under Rule 8(c), unlike under Louisiana law, does not automatically result in waiver.[193] Rather, Rule 8(c) allows the federal trial court discretion 'to determine whether the party against whom the unpleaded affirmative defense has been raised has suffered prejudice or unfair surprise.'"[194]

While the Court is not dismissive of Allstate Canada's failure to comply with Rule 8(c) in pleading the alleged Policy exclusions, Plaintiffs' counsel, Jonathan N. Fazzola ("Fazzola"), attested that he was made aware of Allstate Canada's denial of coverage letter by the Istos' counsel, who sent it to Fazzola via email on February 25, 2020.[195]  The Court finds that Plaintiffs have not suffered prejudice or unfair surprise.

---

[189] *Donahue v. Republic National Distributing Company, LLC*, 489 F.Supp.3d 455, 467 (E.D. La. 2020)(quoting *Aunt Sally's Praline Shop, Inc. v. United Fire & Cas. Co.*, 418 F. App'x 327, 330 (5th Cir. 2011)( explaining state law determines what constitutes an affirmative defense for purposes of Rule 8(c))).
[190] *Id.* (citing *Aunt Sally's*, 418 F. App'x at 330; *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014)).
[191] In the interest of clarity, under Louisiana's choice-of-law provisions, the Court determined that Canadian law applies to the interpretation of the terms of the insurance policy; however, Plaintiffs assert the Louisiana state law claim of negligence against Isto in federal district court.  Thus, the Federal Rules of Civil Procedure apply to the procedural aspects of this matter, and for purposes of determining whether an affirmative defense has been properly pled, FRCP 8(c) requires federal courts to apply the substantive law of the State of Louisiana on what constitutes an affirmative defense.
[192] *Id.* (citing *Aunt Sally's*, 418 F. App'x at 330).
[193] *Id.* (citing *Aunt Sally's*, 418 F. App'x at 330).
[194] *Id.* (citing *Aunt Sally's*, 418 F. App'x at 330).
[195] Rec. Doc. 288-27, ¶ 10.

2.  <u>Intentional or Criminal Acts or Failure to Act Exclusion</u>

The first exclusion Allstate Canada relies on excludes from coverage:

(9) Bodily Injury or Property Damage caused by any intentional or criminal acts or failure to act by:
1. any person insured by this policy; or
2. any other person at the direction of any person insured by this policy;[196]

Invoking Louisiana substantive law, Allstate Canada claims Louisiana courts have routinely interpreted and upheld this exclusion in previous cases.[197] Allstate Canada also relies upon the language in Louisiana's current statute criminalizing hazing, La. R.S. 14:40.8, in arguing that, "[u]nder Louisiana law, hazing is a crime"; La. R.S. 14:40.8 "defines 'hazing' as that term is defined under Louisiana law"; "[t]he facts as confirmed by Mr. Isto prove that he hazed Max"; and that "[b]ased on the foregoing facts, and the generally understood definition of hazing, it is clear Allstate's policy does not provide protection to individuals who engage in hazing rituals that harm others."[198]

Plaintiffs point out that the Louisiana Hazing Statue cited by Allstate Canada was not in effect at the time of Max's death; rather, La. R.S. 14.40.8 was enacted after, "and in response to," Max's death.[199] Thus, the definitions found in the current hazing statute cannot be the basis for applying the criminal conduct exclusion for a 2017 incident.

Further, because Louisiana law is irrelevant, Plaintiffs counter Allstate Canada's argument with the Declaration and Supplemental Declaration of Knutsen, who opines that

---

[196] *See* Rec. Doc. 288-22, Elite Homeowner Policy (Rec. Doc. No. 236-2), p. 7; Rec. Doc. 286-7, VIP Tenant Policy, p. 6.
[197] Rec. Doc. 286-3, p. 9.
[198] Rec. Doc. 286-3, pp. 6-9.
[199] Rec. Doc. 292, pp. 7-8 ("But La. R.S. 14:40.8 – also known as the 'Max Gruver Act' – was not enacted until May 31, 2018, and did not go into effect until August 1, 2018, nearly a year after Max's death. SAUMF ¶74. Thus, La. R.S. 14:40.8 is inapposite, and Allstate Canada's misplaced reliance on it undermines almost every argument in Allstate Canada's summary judgment motion.").

Canadian law compels a different result.  Knutsen explains that, for this exclusion to apply, Canadian law requires the insurer to prove that the insured committed an intentional tort that caused injury to the victim **with a subjective intent to bring about the resulting harm**.[200]  For an intentional failure to act, Canadian law requires an insurer to prove that the insured failed to act with a subject intent to cause harm through inaction.[201]  Further, Canadian courts require that, considering the phrase "intentional or criminal acts or failure to act," the words "intentional" and "criminal" modify both "act" and "failure to act."[202]  Finally, under Canadian law, a "criminal act" or "criminal failure to act" exclusion only applies when the insured's criminal act or criminal failure to act caused the bodily injury at issue.[203]

Thus, to successfully prove the application of this exclusion, Plaintiffs argue Allstate Canada must show that:

1. Isto intended to commit an intentional act against Max with the subjective intent to cause Max "Bodily Injury"; Isto in fact committed that intentional act or directed someone else to commit an intentional act against Max; and the intentional act caused Max's death; or
2. Isto intentionally failed to act with an intent to cause Max "Bodily Injury," or directed someone else to intentionally fail to act with the requisite intent, and that intentional failure to act caused Max's death; or
3. Isto committed or directed someone else to commit a criminal act that caused Max's death; or
4. Isto criminally failed to act, or directed someone else to criminally fail to act, and that failure caused Max's death.[204]

---

[200] Rec. Doc. 288-2, Knutsen Decl., ¶¶ 48-55; *Non-Marine Underwriters, Lloyd's of London v. Scalera,* [2000] 1 S.C.R. 551 (S.C.C.) at para. 92 (found in Rec. Doc. 288-2, pp. 61-96)(emphasis added).
[201] Rec. Doc. 288-2, Knutsen Decl., ¶ 109; *Scalera*, 2000 SCC 24 at para. 92.
[202] Rec. Doc. 288-2, Knutsen Decl., ¶¶ 56-60; *Durham Dist. Sch. Bd. v. Grodesky*, 2012 ONCA 270 (Court of Appeal for Ontario) at para. 9-10 (found in Rec. Doc. 288-2, pp. 98-101).
[203] Rec. Doc. 288-2, Knutsen Decl., ¶¶ 62-69; *Eichmanis v. Wawanesa Mut. Ins. Co.*, 2007 ONCA 92 (Court of Appeal for Ontario) at para. 22, 27 (found in Rec. Doc. 288-2, pp. 103-112).
[204] Rec. Doc. 292, pp. 22-23 (citing *Scalera*, 2000 SCC 24 at para. 92; *Grodesky*, 2012 ONCA 270 at para. 9-10; *Eichmanis*, 2007 ONCA 92 at para. 22, 27; *see also* Rec. Doc. 288-2, ¶¶ 98, 104-105, 109, 116-117, 122, 126).

Plaintiffs maintain that there is no record evidence to show that Isto committed an intentional act against Max, or directed anyone else to do so, with the intent to cause him injury or death. While Isto did not stop other Phi Delt members from aggressive behavior during the Bible study, there is no record evidence to demonstrate that he directed them to act in the manner they did towards Max. Likewise, Plaintiffs contend there is no evidence to show that Isto intentionally failed to act or directed others to fail to act with the subjective intent of causing injury or death to Max. Indeed, Plaintiffs submit (and have claimed only) that Isto's conduct was negligent, but there is no evidence to support a conclusion that Isto intended to harm Max through action or inaction, or in directing others to do the same, with the subjective intent of causing Max injury or death.

Rather, Plaintiffs contend, the uncontroverted facts in this case show that Isto "became personally uncomfortable with" and was "shocked" by some of what was occurring during Bible Study, testimony that undermines any notion that he subjectively intended to harm Max by acting or failing to act.[205] Additionally, although Plaintiffs claim that Isto failed to care for or summon medical help for Max, his testimony that it never occurred to him that Max would need medical treatment also undermines any subjective intent behind Isto's conduct.[206]

Plaintiffs further argue that, although Isto pled "no contest" to one count of violating Louisiana's hazing statute, it is undisputed that none of the stipulated acts committed by Isto to support his plea were directed at or caused Max's death.[207]    Further, it is

---

[205] Rec. Doc. 288-2, Knutsen Decl., ¶ 112.
[206] *Id.* at ¶ 113.
[207] *Id.* at ¶¶ 123-125.

undisputed that Isto was not charged with a crime based on any failure to act.[208]  Finally, Plaintiffs maintain that it is undisputed that Isto never gave Max alcohol during the lineup and never directed any other Phi Delt members to make Max drink alcohol; thus, there is no evidence that Max's death was caused by any intentional or criminal acts or failures to act by or at the direction of Isto.[209]

The Court finds that this exclusion does not apply under the undisputed facts of the case.  Applying Canadian law to the facts deemed admitted, a no contest plea to a hazing statute no longer in effect does not lead to the conclusion that Isto intentionally and directly hazed Max with the subjective intent of bringing him bodily injury or death. Hazing is not explicitly included in this exclusion as are other types of harm, like corporal punishment. Additionally, the commonly understood definition of hazing at the time of the incident is set forth in La. R.S. 17:1801, not La. R.S. 14:40.8, because as Plaintiffs explained, the current statute was not enacted at the time.[210] The statute to which Isto pled no contest referred to hazing that was likely to cause bodily danger or physical punishment.  The uncontroverted facts establish that Isto did not cause Max any physical damage as he did not force Max to drink or "sit on the wall." The record demonstrates that his focus was on other pledges.[211] The facts simply do not support finding an intentional act considering the applicable Canadian legal principles.

### 3.  Sexual, Physical, Psychological, or Emotional Abuse Exclusion

Allstate Canada's Policy excludes from coverage "sexual, physical, psychological

---

[208] *Id.* at ¶¶ 107-108.
[209] *Id.*
[210] Commonly prevailing meanings of words are used in insurance policies when words are ambiguous and not defined in the policy. There is no guidance as to the common meaning of these words in the insurance policy. La. Civ. Code. Art. 2047; *Breland v. Schilling*, 550 So. 2d 609, 610 (La. 1989).
[211] Rec. Doc. No. 288-2, ¶¶ 120-21; Rec. Doc. No. 288-3 ¶¶ 23-25, 35, 48-49

or emotional abuse, molestation or harassment, including corporal punishment by, at the direction of, or with the knowledge of any person insured by this policy."[212] Allstate Canada argues, based on the disputed facts it offered, that Isto's conduct meets the definitions of this exclusion.

Supported by Canadian jurisprudence and the opinion testimony of Knutsen, Plaintiffs argue that, "*except* for cases involving allegations of sexual assault or cases against parents or organizations for failing to stop ongoing behavior such as bullying or sexual abuse, an exclusion involving 'physical, psychological, or emotional abuse' only applies where, unlike here, the abusive behavior occurred over a period of time, as a practice or treatment of a person."[213]  According to Knutsen, this exclusion does not apply in cases involving a single instance of physical injury or death, as is the case here.[214] Plaintiffs submit that the undisputed facts do not support any conclusion that the conduct surrounding Max's death after the Bible Study are part of a pattern of practice or treatment that occurred over a period of time.  Thus, under Canadian law, Plaintiffs maintain that the "acts and/or failures to act that caused Max's death cannot, as a matter of law, trigger the 'abuse, molestation, harassment' exclusion in the Policy."[215]

The Court has reviewed Knutsen's Declarations and his analysis of the Canadian jurisprudence attached thereto.  Allstate Canada has submitted no Canadian law to the contrary.  The Court finds that Knutsen's legal analysis and conclusions regarding this

---

[212] Rec. Doc. No. 288-22.
[213] Rec. Doc. 288-1, p. 29 (citing *Co-operators Gen Ins Co v Kane*, 2017 BCSC 1720 (British Columbia Supreme Court) at para.78 ("abuse" in exclusion is an "unjust or corrupt practice" and "cruel and violent treatment of a person" as opposed to an injury, which is an "instance of being injured"); *Dube v BCCA Ins Cor*, 2012 BCSC 1958 (British Columbia Supreme Court) at para. 40 ("injury" and "abuse" have different meanings); *see also* Ex. 1, Knutsen Decl. ¶77 (citing foregoing cases)).
[214] *Id.*
[215] *Id.* at p. 30 (citing *Kane*, 2017 BCSC 1720 at para. 78; *Dube*, 2012 BCSC 1958 at para. 40; *see also* Ex. 1, Knutsen Decl. ¶¶127-129).

exclusion are reasonable and supported by legal authority.  Accordingly, this exclusion does not apply to deny coverage for Isto's conduct.

## III.    CONCLUSION

For the foregoing reasons, Allstate Canada's *Motion for Summary Judgment*,[216] is DENIED. Plaintiffs' *Motion for Partial Summary Judgment*[217] is GRANTED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this  2nd  day of February, 2023.

_Shelly D. Dick_

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[216] Rec. Doc. 286.
[217] Rec. Doc. 288.